UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ZOE HOLLIS, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

R & R RESTAURANTS, INC dba SASSY'S, an Oregon corporation; STACY MAYHOOD, an individual; IAN HANNIGAN, an individual; FRANK FAILLACE, an individual; and DOES 1 through 10, inclusive,

    Defendants.

Case No. 3:21-cv-00965-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Zoe Hollis brings this putative collective action against defendants R & R Restaurants, Inc. dba Sassy's, Stacy Mayhood, Ian Hannigan, Frank Faillace, and Does 1-10 (collectively "defendants"), alleging violations of the federal Fair Labor Standards Act ("FLSA"). Compl., ECF 1. The Complaint describes the collective action members as "all current and former exotic dancers who worked at Sassy's . . . at any time starting three (3) years before this Complaint was filed, up to the present." *Id.* ¶ 9. Plaintiff alleges four violations of the Fair Labor Standards Act ("FLSA"): failure to pay minimum wages (29 U.S.C. § 206), requiring illegal kickbacks (29 C.F.R. § 531.35), unlawfully taking tips (29 U.S.C. § 203), and

1 – OPINION AND ORDER

forced tip sharing (29 C.F.R. § 531.35). *See generally* Compl., ECF 1. This court has federal question jurisdiction over these claims. *See* 28 U.S.C. § 1331.

Plaintiff has moved for (1) conditional certification under 29 U.S.C. § 216(b) and (2) approval of a notice to putative collective action members. Mot., ECF 23. For the reasons discussed below, the court GRANTS plaintiff's motion for conditional certification. However, the court DENIES the implementation of plaintiff's proposed order (ECF 23-3) and use of the proposed notice (Martinez Decl., Ex. 1, ECF 23-2) and instead directs the parties to confer and finalize a notice and proposed order that is (1) in accordance with this opinion and (2) distributed by a mutually agreed-upon third-party claims administrator.[1]

In her motion, plaintiff also seeks equitable tolling of the FLSA's statute of limitations. Mot., ECF 23. Because the request for equitable tolling is a dispositive motion, it will be addressed in separate findings and recommendations. *See, e.g., Reddy v. Morrissey*, No. 3:18-CV-00938-YY, 2018 WL 4407248, at *1 n.1 (D. Or. Sept. 17, 2018) (citing cases).

---

[1] There is a general split of authority as to whether granting a motion for conditional certification is a motion that is solely within a magistrate judge's authority. "The weight of authority . . . conclude[es] that granting a motion for conditional certification is a nondispositive matter within a magistrate judge's authority to resolve." *Lescinsky v. Clark Cty. Sch. Dist.*, 539 F. Supp. 3d 1121, 1125 (D. Nev. 2021); *see also Geller v. Bowers*, No. CV 11-874, , at *1 n.1 (N.D. Cal. Apr. 13, 2012) (noting because they seek a preliminary determination, motions for conditional certification may be decided by a magistrate judge); *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 110 n.1 (S.D.N.Y. 2015) ("A United States [M]agistrate Judge has the authority to rule on a motion to authorize a collective action."); *Esparza v. C & J Energy Servs. Inc.*, No. 5:15-CV-850, 2016 WL 1737147, at *1 (W.D. Tex. May 2, 2016) ("A motion for conditional class certification is nondispositive."); *Dimery v. Universal Prot. Serv., LLC*, No. 6:15-cv-2064, 2016 WL 7666136, at *1 n.1 (M.D. Fla. Mar. 24, 2016) ("[A] motion for conditional certification under the Fair Labor Standards Act is a non-dispositive matter, and therefore appropriate for a magistrate to decide under 28 U.S.C. § 636(b)(1)(A)."). The court aligns with the "weight of authority" and accordingly issues this decision as an opinion and order.

I.  **Background Facts**

Defendants are operators, representatives, or managers at Sassy's, a club located in Portland, Oregon. Compl. ¶¶ 10-15, ECF 1. Plaintiff performed at Sassy's from approximately 2017 to February 2019. Hollis Decl. ¶ 3, ECF 23-1.

Plaintiff alleges defendants employed her and all other dancers at Sassy's as independent contractors. *Id.* ¶ 7. Defendants allegedly exercised a great deal of control over the dancers' performances. *Id.* ¶ 11. Plaintiff and her fellow dancers were required to perform stage dances as part of their work at the club. *Id.* ¶ 12. Defendants also required dancers to complete their entire shift on their scheduled work days; performers who wished to leave early during a shift were subject to discipline by club management. *Id.* ¶¶ 14-15.

In addition to enforcing these performance-related requirements, defendants also set a variety of procedures surrounding tipping and other fees. Defendants charged all entertainers, including dancers, a house fee to perform a shift. *Id.* ¶ 9. Lastly, defendants expected dancers to "tip out other employees[,] including DJs, bouncers, bar staff, and waitstaff." *Id.* ¶ 10.

II.  **Conditional Certification**

  A.  **Legal Standard**

The FLSA provides for a private right of action to enforce its provisions "by any one or more employees [on] behalf of [] themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Neither the FLSA, nor the Ninth Circuit, nor the Supreme Court has defined the term 'similarly situated.'" *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015). However, a majority of courts have adopted a two-step approach to evaluate whether potential plaintiffs are similarly situated. *Margulies v. Tri-Cty. Metro. Transp. Dist. of Oregon*, No. 3:13-CV-00475-PK, 2013 WL 5593040, at *15 (D. Or. Oct. 10, 2013); *Gessele v. Jack in the*

*Box, Inc.*, 2013 WL 1326538, at \*3-\*4 (D. Or. Apr.1, 2013); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (concluding that the district court did not err in adopting the two-step approach).

At this juncture, is it necessary to discuss only the first step, which requires the court to make an "initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'"[2] *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). This analysis involves "'nothing more than substantial allegations that the putative [collective] members were together the victims of a single decision, policy, or plan.'" *Id*. (quoting *Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1066 (D. Colo. 1996)). Accordingly, cases in this district have characterized this inquiry as a "less stringent standard than the requirements for certification under Rule 23" and "typically results in certification." *Dickerson v. Cable Commc'ns, Inc.*, 2013 WL 6178460, at \*2 n.5 (D. Or. Nov. 25, 2013); *Margulies*, 2013 WL 5593040, at \*15.

B.   Analysis

Defendants oppose conditional certification of the collective on four grounds. First, they argue that because plaintiff amended her complaint to include three individualized causes of action that are separate from her collective claims, she no longer shares "a common legal theory" with the collective. Opp. 7, ECF 24 (citing *White v. Rakhra Mushroom Farm Corp.*, No. CV 08-

---

[2] The second step of an FLSA collective certification, which is not implicated in this motion, typically occurs after the completion of discovery, when defendants often move to decertify the collective action. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004). At the second step, a court evaluates "several factors, including the specific employment conditions and duties of the individual plaintiffs, any defenses asserted by or available to the defendant which appear to be individual to each plaintiff, fairness and procedural considerations, and whether the plaintiffs made any required filings before instituting suit." *Morden v. T—Mobile USA, Inc.*, No. C05-2112 RSM, 2006 WL 2620320, at \*2 (W.D. Wash. Sept.12, 2006) (citing *Thiessen*, 267 F.3d at 1103).

198-SU, 2009 WL 971857, at *4 (D. Or. Apr. 8, 2009)). But the FLSA does not prevent plaintiffs from raising individualized claims that are separate from the claims of the collective. The case defendants offer—*Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703 (S.D. Tex. 2014)—does not support such a proposition. While the *Vanzzini* court did decertify a collective action, it did so because some of the opt-in members were not "similarly situated to anyone else in the class": they had different work duties, worked in different locations, and were subjected to different workplace and payment regulations. *Id.* at 722-23. The present case is inapposite: all of the members of the putative collective were allegedly subjected to the same workplace regulations and duties and payment scheme. *See* Hollis Decl. ¶¶ 6-16, ECF 23-1. Moreover, plaintiff's individualized causes of action can be maintained separately from the collective's claims; in other words, having individualized causes of action does not automatically nullify the existence of a collective.

Second, defendants allege plaintiff has failed to demonstrate that she "is similarly situated with the putative collective." *Id.* at 8. Specifically, they argue that plaintiff's only evidence demonstrating that she is "similarly situated with the putative collective is a sole, two-page, self-serving declaration of Plaintiff that [the performers] . . . were subjected to various allegedly unlawful practices." *Id.* However, an individualized inquiry as to whether a plaintiff is similarly situated with the rest of the collective is generally analyzed at the second step of the FLSA collective certification action, not the first. *See Morden v. T—Mobile USA, Inc.*, No. C05-2112 RSM, 2006 WL 2620320, at *2 (W.D. Wash. Sept.12, 2006) (noting that the second step evaluates "specific employment conditions and duties of the individual plaintiffs").

Third, defendants argue, using a bifurcated theory, that plaintiff may lack standing for her claims. Opp. 11, ECF 24. They first note that under the parties' independent contractor

5 – OPINION AND ORDER

agreement, plaintiff was responsible for reporting her earnings "to all federal, state, and local tax-collecting authorities." *Id.* at 10. Defendants posit that if plaintiff failed to report her tip-based earnings to the government, she would owe "back taxes that could easily exceed alleged minimum wages owed." Next, defendants suggest that if plaintiff was instead a wage-earning employee, her employer would have to make "all requisite withholdings due on that tip income . . . from the net wages to be paid to the employee." *Id.* They reason that after deducting "the withholdings due on that income" and the "withholdings due on the tip income," "there may be nothing left of the wages to be paid in the employees." *Id.* at 10-11. Defendants thus allege that "any income Plaintiff earned may likely be solely the property of" government tax collection agencies because most of her earnings would be remitted as withholdings due on her wages, and thus, only those agencies have standing to bring forth this action. *Id.* at 11.

    Defendants' standing argument is speculative and premature. Their conclusion presupposes, without any proffered evidence, that plaintiff either currently owes or will owe a significant amount of payments to tax collection authorities. Such a determination is generally made after further discovery and conditional certification. *See Rosario v. 11343 Penrose Inc.*, No. 2:20-CV-04715-SB-RAO, 2020 WL 8812460, at *5 (C.D. Cal. Oct. 26, 2020) ("[T]o the extent that Plaintiff's actual employment history is in dispute, the validity of her individual claim—specifically her standing to bring a claim at all—is not a question to be conclusively resolved at this time."). Moreover, the logic buttressing defendants' argument suggests that tax collection authorities have standing in virtually any action involving the potential for monetary damages, as those collection authorities would likely receive *some* amount of money from taxes due on an award. This court will not endorse such a broad view of standing, and in any event,

declines to evaluate a premature standing challenge based on speculation over plaintiff's finances.

Finally, defendants argue that plaintiff's FLSA claims are time-barred because they fall beyond the standard two-year statute of limitations. Opp. 18, ECF 14. This argument is unpersuasive for two interconnected reasons. First, as plaintiff notes, the FLSA allows for a three-year statute of limitations if the alleged violations were willful. 29 U.S.C. § 255(a), *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (defining a "willful" employer as one who "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute"). Second, courts may refrain from making a determination of willfulness until the summary judgment stage to allow "a fuller factual record" to be developed; put differently, it is "far more appropriate to determine the 'willfulness' issue at an adjudicating stage rather than at the certification stage." *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 WL 5188682, at *8 (N.D. Cal. Sept. 4, 2015); *see also Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 542 (N.D. Cal. 2007) ("[T]he court will not make a determination of willfulness at this early stage and declines to limit the scope of notice to officers employed in the last two years."). Otherwise stated, defendants' statute of limitations argument is also premature.

Thus, defendants' arguments do not dislodge a reasonable inference, formed from the allegations in plaintiff's complaint and declarations, that defendants potentially violated the FLSA. Accordingly, the court finds that plaintiff has satisfied her "minimal burden" of showing that performers that either are current performers at Sassy's or performed between June 2018 and June 2021 are similarly situated to the named plaintiff, and grants plaintiff's motion for conditional certification of the FLSA collective action. *Chastain v. Cam*, No. 3:13-CV-01802-SI, 2014 WL 3734368, at *7 (D. Or. July 28, 2014).

### III. Proposed Notice

Plaintiff has also submitted a proposed notice and a proposed order outlining the dissemination of the proposed notice to putative members. *See* Proposed Notice, ECF 23-2; Proposed Order, ECF 23-3. Defendants challenge the proposed notice and proposed order on four grounds: (1) the content of the message, (2) the methods of and entities responsible for notifying putative members, (3) the locations of any required posting, and (4) the length of the opt-in period. *See* Opp. 15-18, ECF 24. The court addresses each challenge in turn.

#### A. Content of Message

Defendants first allege that plaintiff's proposed notice is "improperly suggestive of potential financial gain rather than a matter of legal rights." Opp. 15, ECF 24. They specifically take issue with the following portions:

> In order to participate in the federal claims raised in this case, and obtain a portion of any judgment or settlement that may be entered on these claims in the dancers' favor, you must complete and return this consent form . . .
> . . .
> If you do not return the enclosed consent form by [DATE], 2021, you may not be considered part of this case and may not be able to receive a share of any settlement or judgment that the plaintiffs may obtain under the federal claims in this case.

Proposed Order 1-2, ECF 23-2. Defendants posit that the notice should only "alert the performers to contact Plaintiff's counsel should they believe that Defendants have indeed misclassified them as independent contractors." Opp. 16, ECF 24. Plaintiff responds by alleging that defendant merely seeks to "intimidate and confuse potential opt-in plaintiffs from pursuing their FLSA claims." Reply 10, ECF 27.

A notice of a collective action should, at a minimum, provide notice to putative members that "there will not necessarily be a favorable ruling in the case." *Chastain*, 2014 WL 3734368, at *9. The sentences that defendants identify as problematic do not disclose the potential of

8 – OPINION AND ORDER

adverse rulings, and should be edited to reflect such a possibility. While the court directs the parties to confer about mutually agreeable language, it offers the following language from the *Chastain* decision as a potential suggestion:

> Suggested Change: "If you do participate in this case, you will share in the benefits if there is a settlement or judgment, and you will also be bound by any favorable or adverse decisions or rulings in the case."

> Suggested Change: "If you do not return the enclosed consent form by [DATE], you will not receive any money or other benefits if there is a settlement or judgment, and you will not be covered by any favorable or adverse decisions or rulings in the case."

*Id.*

Defendants also take issue with plaintiff's descriptions of the claims and defenses, arguing that they are "phrased in a way that lends credence to Plaintiff's position." Opp. 16, ECF 24. As a general principle, putative members should receive detailed information on plaintiff's claims to make an informed decision as to whether to opt-in and be bound by those arguments. That principle does not necessarily extend to defendants' arguments, as putative members are not bound by *those* arguments if they join the collective action. In any event, plaintiff's proposed language makes clear that defendants deny plaintiff's allegations, and that should be sufficient for potential members to make an informed decision.

   **B.**   **Method of Notifying Putative Members**

Plaintiff proposes that notice of and forms to opt into the putative collective be sent "via email, text message, as well as U.S. Mail." Proposed Order at 1, ECF 23-3. To facilitate notifying putative members of this certified action, plaintiff requests defendants provide the names, last-known mailing address, all telephone numbers, email addresses, work locations, copies of driver's licenses, and dates of employment for all dancers "who have worked at Sassy's within the past three years." *Id.* Defendants oppose plaintiff's requests on three grounds. First,

9 – OPINION AND ORDER

they object to production of the "telephone numbers, work locations, and copies of driver's licenses" of former and current employees to plaintiff and plaintiff's counsel "as an unduly burdensome and overbroad dissemination of confidential personal information." Opp. 16, ECF 24. Second, they implicitly suggest that plaintiff be limited to mailing (via U.S. mail or e-mail) any notices, and third, they request that the "Court . . . facilitate the mailing of any notices, so that [recipients] do not become targets for spam mail and questionable legal advertising." *Id.*

As a general rule, putative collective members are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Plaintiff has also offered a variety of cases indicating that "[n]umerous district courts have sanctioned notice to potential FLSA opt[-]in plaintiffs via U.S. mail, email, and text message." Reply 5, ECF 24. However, defendants have raised significant concerns surrounding the request for text messages to notify putative members of this action. As defendants point out, courts in a variety of districts have declined to require notice via text message for reasons such as the intrusive nature of unsolicited text messages and potential costs for individuals who receive a lengthy text message while holding a limited phone coverage plan. *See, e.g.*, *Chetwood v. T-Mobile USA, Inc.*, No. C19-0458RSL, 2020 WL 1689730, at *4 (W.D. Wash. Apr. 7, 2020) ("Out of concerns for privacy, the Court declines to require production of telephone numbers at this time and will not order notice by text message."); *Miller v. JAH, LLC*, No. 5:16-CV-01543-AKK, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018) ("the court has serious reservations about sanctioning text messages as a way to reach the potential class . . . some individuals have limited phone plans, and unwarranted text messages may cause these individuals to incur monetary charges."). Plaintiff's response—that "email addresses and phone numbers are not so regularly

10 – OPINION AND ORDER

changed" when compared against physical addresses—does not undercut the serious concerns that defendants posit involving *text messages*. Reply 11, ECF 27. Thus, the court finds that while notice via email and U.S. mail is appropriate, issuing notice of the collective via text message is unwarranted due to concerns involving privacy, formality, and a performer's financial status.

The court recognizes, however, that the performers may not have provided their email addresses to defendants. If that is the case, plaintiff can bring this matter back to the court for reconsideration.

Defendants also requests that this court "facilitate the mailing of any notices." Opp. 16-17, ECF 24. Plaintiff does not respond to this request. *See generally* Reply, ECF 27. However, courts have authorized the use of claims administrators in FLSA actions "to protect the privacy of collective members." Reply 9, ECF 24; *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2015 WL 6152476, at *18 (N.D. Cal. Oct. 20, 2015), *class later decertified*, *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 591 (N.D. Cal. 2016); *see also Wren v. Rgis Inventory Specialists*, No. C-06-05778JCS, 2007 WL 4532218, at *9 (N.D. Cal. Dec. 19, 2007) (allowing information to only be provided to a third-party administrator "to protect the privacy of [] employees"). Thus, the court directs the parties to confer and mutually agree upon a third-party claims administrator; defendants will provide the personal information requested by plaintiff's counsel to that administrator.

### C.      Locations of Required Posting

Plaintiff also proposes that defendant post the notice and consent form on their social media accounts "weekly" and at Sassy's, "in conspicuous colors on a laminated board at least three (3) by five (5) feet in the dressing rooms . . . and the entrance for the majority of the

dancers." Proposed Order 1, ECF 23-3.  Defendants object to any public posting, arguing that such notice "is prejudicial to Sassy's reputation."  Opp. 17, ECF 24.

Generally speaking, "posting or publication are appropriate methods for providing notice when individual methods of service are unsuccessful or likely to be inadequate." *Pittman v. Westgate Planet Hollywood Las Vegas, LLC*, No. 209CV00878PMPGWF, 2009 WL 10693400, at *10 (D. Nev. Sept. 1, 2009).  Plaintiff argues "[i]t is important that dancers receive this notice and that [d]efendants not intimidate their dancers or hide from them the existence of the present action."  Reply 12, ECF 27.  But she fails to demonstrate how publishing information about the collective action on social media or at a public entrance would facilitate notice any more than the targeted U.S. mail and email messages approved above.  If, for example, plaintiff hopes to reach dancers who no longer perform at the club, there is no indication that information posted at Sassy's—whether outside a club entrance or inside a dressing room—would increase that probability.  Requiring defendants to post on their social media, meanwhile, would not only unfairly prejudice the business,[3] but also distribute the notice to persons who are not putative members—likely creating confusion and increasing the possibility that ineligible persons may seek to opt in.  *Pittman*, 2009 WL 10693400, at *10.  Thus, the court will not require defendants to post notice of this collective action on defendants' social media or outside any public entrance.

The court does, however, recognize the potential benefit of posting notice of this action in the performers' dressing rooms.  That private location balances plaintiff's aim to reach as many potential members as possible with the business's desire to be free from unfair prejudice during

---

[3] Requiring defendants to post notice of the collective action in public spaces may "give the impression that that the as-yet unproven allegations against Defendants are true." *Pittman*, 2009 WL 10693400, at *10 (citing *Owen v. W. Travel, Inc.*, No. C03-0659Z, 2003 WL 25961848, at *10 (W.D. Wash. Dec. 12, 2003)).

the pendency of this action. However, it is unnecessary and excessive to require that defendants put up a notice "in conspicuous colors on a laminated board at least three (3) by five (5) feet in the dressing rooms." Proposed Order 1, ECF 23-3. Instead, in each dressing room, defendants shall post notice of the collective action in accordance with the FLSA's guidelines surrounding copies of federal and state-mandated workplace posters. Those requirements are:

> Reproductions or facsimiles of such Federal or State posters shall constitute compliance with the posting requirements of section 8(c)(1) of the Act where such reproductions or facsimiles are at least 8½ inches by 14 inches, and the printing size is at least 10 pt. Whenever the size of the poster increases, the size of the print shall also increase accordingly. The caption or heading on the poster shall be in large type, generally not less than 36 pt.

29 C.F.R. § 1903.2(a)(3).

Plaintiffs posit that "[o]ther district courts have allowed notice [of a collective action] to be issued in a . . . dressing room, website, and entrances." Reply 12, ECF 27. Yet the cases that plaintiff offers for this proposition are not exactly a paragon of persuasiveness. The first three cases that plaintiff lists—*Aguilar*, *Rice*, and *Mora*—involved notices that were either unopposed or unchallenged by each respective defendant. *See* Marin Decl., Ex. 3, at 3-4, ECF 17-3 (the *Aguiar* court noting that conditional certification was "unopposed"); Marin Decl., Ex. 4, at 1, ECF 17-3 (the *Rice* court noting that "defendants did not respond to the motion"); Marin Decl., Ex. 7, at 1, ECF 17-3 (minutes in *Mora* reflecting that defendants "do not oppose Plaintiff's motion"). And the defendant in the fourth case, *Truehart*, failed to offer any explanation or authority to support its request that the notice should not be posted online or at a public entrance. *See* Opp. 6, ECF 28, *Truehart et al. v. Dartmouth Clubs, Inc. et al.*, 1:20-CV-10374-DJC (D. Mass. June 1, 2020). While plaintiff is correct in stating that each of the four respective courts "allowed notice to be issued in . . . a dressing room, website, and entrances," the placement of the notice was not significantly disputed in any of those cases. Reply 12, ECF 27.

13 – OPINION AND ORDER

In sum, the court refrains from requiring defendants to publish notice of this collective action on its social media or outside any public entrance to Sassy's. Defendants are ordered, however, to post notice of the collective action in each of the dressing rooms at Sassy's using paper and fonts that are compliant with the FLSA's guidelines for federal and state-mandated workplace posters.

### D. Length of the Opt-In Period

Plaintiff seeks a 90-day period for potential members to opt into the putative collective action. Proposed Order 1, ECF 23-3. Defendants argue that a 60-day period "is more appropriate and is regularly approved," but do not elaborate further on their request. Opp. 17, ECF 24. In setting the length of an opt-in period, the court must balance both "the goal of avoiding a multiplicity of duplicative suits" and "setting cutoff dates to expedite disposition of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

It is understandable, as plaintiff notes, that the nature of the profession forces dancers to "regularly move [physical] addresses." Reply 11, ECF 27. A longer opt-in period of 90 days would better facilitate the ability of these individuals to receive notice and join the putative collective action. And while defendants proffer a pair of cases where courts have ordered a 60-day period, those disputes involved jobs such as insurance claims administrators and restaurant workers—professions that bear little relationship to a putative collective action involving the performers in this case. Opp. 17, ECF 24. Plaintiff, on the other hand, has offered on-point cases where courts have allowed a 90-day opt-in period for putative collective actions brought by similar performers. *See* Reply 11, ECF 27. Thus, plaintiff's request for a 90-day opt-in period is granted.

**ORDER**

For the reasons discussed ABOVE, the court GRANTS IN PART[4] plaintiff's motion for conditional certification (ECF 23). The court DENIES the implementation of plaintiff's proposed order (ECF 23-3) and use of the proposed notice (Ex. 1, ECF 23-2) and instead directs the parties to confer and finalize a notice and proposed order that is (1) in accordance with this opinion and (2) distributed by a mutually agreed-upon third-party claims administrator.

IT IS SO ORDERED.

Dated May 2, 2022.

                                                                  /s/ Youlee Yim You
                                                                  Youlee Yim You
                                                                  United States Magistrate Judge

---

[4] As previously noted, the request for equitable tolling, which is non-dispositive, will be addressed in separate findings and recommendations.