Anthony D. Kuchulis, OSB No. 083891
akuchulis@littler.com
Joseph Q. Ridgeway, OSB No. 213011
jridgeway@littler.com
LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Telephone:     503.221.0309
Fax No.:        503.242.2457

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ZOE HOLLIS individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> vs.<br><br>R & R RESTAURANTS, INC dba SASSY'S, an Oregon corporation; STACY MAYHOOD, an individual; IAN HANNIGAN, an individual; FRANK FAILLACE, an individual; and DOES 2 through 10, inclusive,<br><br>    Defendants. | Case No. 3:21-cv-00965-YY<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Pursuant to Fed. R. Civ. P. 56<br><br>ORAL ARGUMENT REQUESTED |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**PAGE**

LR 7-1 CERTIFICATION ............................................................................................... 1

MOTION ...................................................................................................................... 1

MEMORANDUM ......................................................................................................... 1

I.     INTRODUCTION ............................................................................................ 1

II.    MATERIAL FACTS ........................................................................................ 3

    A.    Plaintiff Is a Talented Performer ........................................................... 3

    B.    Sassy's and Dante's are Live Performance Venues ............................... 4

    C.    Plaintiff's Performances at Sassy's ....................................................... 4

    D.    Plaintiff's Performances at Dante's ....................................................... 6

    E.    Plaintiff's Business ................................................................................ 7

III.   ARGUMENT .................................................................................................... 8

    A.    Summary Judgment Standard ................................................................ 8

    B.    Plaintiff Lacks Standing to Prosecute Their FLSA Wage and Hour Claims ......... 9

        1.    Requirements for Standing ....................................................... 9

        2.    Plaintiff Failed to Comply with the Tax Laws Regarding Their Income Earned from Their Performances at Sassy's .............. 10

        3.    Plaintiff Is Not an Injured Party and Thus Lacks Article III Standing to Bring Their FLSA Wage and Hour Claims ......... 14

        4.    Even if Plaintiff Could Establish Constitutional Standing, They Also Lack Prudential Standing Because the Court's Intervention Would Not Personally Benefit Them ....................................... 15

    C.    Plaintiff's Claims Fail Because Sassy's Properly Classified Them as a Highly Skilled Contract Performer .................................................. 17

        1.    First Factor: Sassy's Had No Control over Plaintiff's Performances ...... 18

        2.    Second Factor: Plaintiff's Skill Dictated Opportunities for Profit or Loss ....................................................................... 19

        3.    Third Factor: Plaintiff Invested Significant Time and Resources into Performances .................................................................... 20

        4.    Fourth Factor: Plaintiff Possesses Highly Developed Performance Skills .................................................................. 21

        5.    Fifth Factor: Plaintiff Contracted with Multiple Venues for Limited Periods of Time ......................................................... 22

**TABLE OF CONTENTS**
(CONTINUED)

6.     Sixth Factor: Performers Are No More Integral to Sassy's than Comparable Theaters, Clubs, and Numerous Other Live Performance Venues that Exclusively Rely on Contract Performers ...... 23

D.     Plaintiff's FLSA Wage and Hour Claims Are Time-Barred ............................. 24

E.     Plaintiff's Retaliation Claims Fail for Lack of an Employment Relationship ...................................................................................................... 25

IV.     CONCLUSION.................................................................................................... 29

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Aaron Private Clinic Mgmt. LLC v. Berry,*
   912 F.3d 1330 (11th Cir. 2019) ............................................. 17

*Ackler v. Cowlitz County,*
   7 F. App'x 543 (9th Cir. 2001) ............................................. 24

*Alvarez v. IBP, Inc.,*
   339 F.3d 894 (9th Cir. 2003) ............................................. 24

*Anderson v. Mt. Clemens Pottery Co.,*
   328 U.S. 680 (1946) ............................................. 13

*Arizonans for Off. Eng. v. Arizona,*
   520 U.S. 43 (1997) ............................................. 10

*Baird v. Cal. Faculty Ass'n,*
   34 F. App'x 303 (9th Cir. 2002) ............................................. 15

*Baumhover v. N. Bend Med. Ctr., Inc.,*
   CIV. 07-647-TC, 2008 WL 2874831 (D. Or. July 22, 2008) ............................................. 24

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
   637 F.3d 1047 (9th Cir. 2011) ............................................. 8

*Castillo-Hernandez v. Holder,*
   596 F. App'x 645 (10th Cir. Dec. 19, 2014) ............................................. 17

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ............................................. 8

*Chevron Corp. v. Donziger,*
   833 F.3d 74 (2d Cir. 2016) ............................................. 17

*City of Los Angeles v. Cnty. of Kern,*
   581 F.3d 841 (9th Cir. 2009) ............................................. 16

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ............................................. 9

*Clayton v. State of Or., by & through Dep't of State Police,*
   925 F2d 1469 (9th Cir 1991) ............................................. 24

# TABLE OF AUTHORITIES
### (CONTINUED)

*Cox v. Brookshire Grocery Co.,*
  919 F.2d 354 (5th Cir. 1990) ....................................................................... 24

*Donovan v. Simmons Petroleum Corp.,*
  725 F.2d 83 (10th Cir. 1983) ....................................................................... 13

*Fed. Air Marshals (FAM) FAM 1 v. United States,*
  84 Fed. Cl. 585 (Fed. Cir. 2008) ................................................................. 10

*Flores v. City of San Gabriel,*
  824 F.3d 890 (9th Cir. 2016) ....................................................................... 24

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,*
  204 F.3d 149 (4th Cir. 2000) (en banc ........................................................ 17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) ....................................................................................... 9

*Georgia v. Public.Resource.Org, Inc.,*
  140 S. Ct. 1498 (2020) ................................................................................. 11

*Gladstone, Realtors v. Village of Bellwood,*
  441 U.S. 91 (1979) ....................................................................................... 14

*Hilborn v. Prime Time Club, Inc.,*
  2012 WL 9187581 (E.D. Ark. July 12, 2012) .............................. 19, 21, 22

*Holst v. State Dep't of Conservation & Nat. Res.,*
  Nos.93-17234, 93-17260,1995 WL 317020 (9th Cir. May 24, 1995) .............. 3

*Ken-N.K., Inc. v. Vernon Twp.,*
  18 F. App'x 319 (6th Cir. Aug. 23, 2001) ................................................... 17

*Kirola v. City & Cnty. of San Francisco,*
  860 F.3d 1164 (9th Cir. 2017) ..................................................................... 17

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ................................................................. 9, 10, 14, 15

*Matson v. 7455, Inc.,*
  2000 WL 1132110 (D. Or. Jan. 14, 2000) .................................. 12, 18, 19

*McLaughlin v. Richland Shoe Co.,*
  486 U.S. 128 (1988) ..................................................................................... 24

# TABLE OF AUTHORITIES
### (CONTINUED)

*McMichael v. Napa County*,
    709 F.2d 1268 (9th Cir. 1983) .......................................................................... 15, 16

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006) ................................................................................ 8

*Nash v. Lathrop*,
    6 N.E. 559 (Mass. 1886) ...................................................................................... 11

*Nat'l Council for Improved Health v. Shalala*,
    122 F.3d 878 (10th Cir. 1997) ............................................................................... 9

*Nelson v. Texas Sugars, Inc.*,
    838 F. App'x 39 (5th Cir. 2020) ........................................................... 19, 20, 22, 23

*Olsen v. City of Seattle*,
    165 F.3d 917, 1998 WL 814053 (9th Cir. 1998) ..................................................... 26

*Perez v. Oak Grove Cinemas, Inc.*,
    68 F. Supp. 3d 1234 (D. Or. 2014) ........................................................................ 18

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................. 16

*Real v. Driscoll Strawberry Assocs., Inc.*,
    603 F.2d 748 (9th Cir. 1979) ................................................................................ 18

*Roman v. Maietta Constr., Inc.*,
    147 F.3d 71 (1st Cir. 1998) .................................................................................... 3

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ......................................................................................... 14, 15

*State ex rel. Roberts v. Acropolis McLoughlin, Inc.*,
    150 Or. App. 180 (1997) ................................................................................ 19, 21, 22

*Steel Co. v. Citizens for Better Env't*,
    523 U.S. 83 (1998) ........................................................................................... 14, 17

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................................. 15

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ......................................................................................... 9, 14

# TABLE OF AUTHORITIES

(CONTINUED)

*The Wilderness Soc. v. Kane Cnty., Utah,*
  632 F.3d 1162 (10th Cir. 2011) ............................................................... 16

*Univ. Med. Ctr. of S. Nev. v. Shalala,*
  5 F. Supp. 2d 4 (D.D.C. 1998) .................................................................. 17

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982) ........................................................................... 9, 14

*Villiarimo v. Aloha Island Air Inc.,*
  281 F.3d 1054 (9th Cir. 2002) ................................................................... 8

*Warth v. Seldin,*
  422 U.S. 490 (1975) ................................................................ 9, 14, 16, 17

*Yeager v. Providence Health Sys. Or.,*
  195 Or. App. 134 (2004) ......................................................................... 26

*Zoslaw v. MCA Distributing Corp.,*
  693 F.2d 870 (9th Cir. 1982) ..................................................................... 8

*Zumerling v. Devine,*
  769 F.2d 745 (Fed. Cir. 1985) .................................................................. 10

**Statutes**

26 U.S.C. § 3102(c)(2), (3)(C) .................................................................. 11

26 U.S.C. § 6053(a) ............................................................................... 10

26 U.S.C. § 6652(b) ............................................................................... 11

26 U.S.C. §§ 3102(c) ......................................................................... 11, 16

29 U.S.C. § 203(m)(2)(B) ........................................................................ 17

29 U.S.C. § 206(a) ................................................................................ 17

29 U.S.C. § 215(a)(3) ......................................................................... 25, 26

29 U.S.C. § 255(a) ................................................................................ 24

ORS 659A.230 ..................................................................................... 25

ORS 659A.230(1) .................................................................................. 26

# TABLE OF AUTHORITIES
(CONTINUED)

**Regulations**

26 C.F.R. § 31.3102-3(a) ................................................................ 11, 16

26 C.F.R. § 31.3402(k)-1 ................................................................ 11

26 C.F.R. § 31.6053-1 ..................................................................... 10

26 C.F.R. § 31.6652(c)-1(b) ............................................................ 11

26 C.F.R § 31.6652(c)-1(a) ............................................................. 11

29 C.F.R. § 531.35 ......................................................................... 17

**Rules**

Fed. R. Civ. P. 56 ......................................................................... 1

Fed. R. Civ. P. 56(a) ..................................................................... 8

Fed. R. Civ. P. 56(e) ..................................................................... 10

Rev. Rul. 2012-18 ......................................................................... 10

LR 7-1 ......................................................................................... 1

LR 56-1 ....................................................................................... 1

## LR 7-1 CERTIFICATION

Counsel for Defendants R & R Restaurants, Inc. dba Sassy's ("Sassy's"), Stacy Mayhood, Ian Hannigan, and Frank Faillace ("Mr. Faillace") (collectively, "Defendants") certify that they made a good faith effort to confer with counsel for Plaintiff Zoe Hollis ("Plaintiff") on March 30, May 5, 27, and 31, and June 1, 2022 by email and May 5 and attempted again on June 2, 2022 by phone regarding the issues presented in this Motion, but the parties were unable to resolve this dispute.

## MOTION

Pursuant to Fed. R. Civ. P. 56 and LR 56-1, Defendants move for summary judgment and request dismissal of this action for the reasons discussed below.

## MEMORANDUM

## I.    INTRODUCTION

Plaintiff[1] is a highly talented and highly compensated performer that unjustly enriched themself by working under an independent contractor agreement with Sassy's, keeping all tips and service fees earned, and failing to pay—or even file—any taxes on that income. The material facts are not in dispute. Plaintiff performed and entertained at such a high level that they were a finalist in a competition which attracted the best talent in the region. Plaintiff performed at multiple live performance venues, some of which were semi-nude dance venues, like Sassy's, and some were theaters with a more diverse offering of shows, like Dante's. Plaintiff admits that Sassy's auditions many performers, but only hires those with the most talent. Plaintiff parlayed their talent into rich compensation, earning between $80 and $920 *per shift*. Though earnings on any given day could fluctuate, based on Plaintiff's testimony, Plaintiff may have made more than $100,000 per year.

---

[1] Plaintiff uses the pronouns they/them.

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

Plaintiff's personal drive, marketing, and talent accounted for how much they earned.

In addition to complete control over opportunities for profit or loss, Plaintiff also exercised control over their hair and dress (making substantial investments in the same), performance style, and routine. Plaintiff had sole control over when to perform, performed at multiple venues, and only performed at Sassy's for a relatively short duration. Plaintiff drank alcoholic beverages between performances, solicited private dances, independently set rates for those dances at a premium compared to others, and had discretion over whom to perform private dances for, or whether to perform at all. In short, Plaintiff met every criterion required of an independent contractor under the Ninth Circuit's economic realities test.

Plaintiff expressly consented to contract performances with Sassy's memorialized in an Independent Contractor Agreement ("Agreement"). True to the terms and spirit of the Agreement, Sassy's retained no right to control the manner or means of Plaintiff's performances outside of legal obligations and professional standards common to the industry. The Agreement also obligated Plaintiff to account for their earnings and report them on appropriate tax filings. Such contractor arrangements for performers at venues, such as theaters, concert halls, and clubs, are a common and well-recognized exception to the Fair Labor Standards Act ("FLSA").

In any event, Plaintiff's failure to account for, report, or pay *any* state or federal taxes on the substantial income received through tips and service fees deprives Plaintiff of standing to pursue their First, Second, Third, and Fourth Causes of Action under the FLSA (the "FLSA Wage and Hour Claims"). Based on their testimony, Plaintiff's outstanding and unreported taxable income far eclipses any potential recovery of minimum wage under the FLSA, making the government the true party in interest with respect to recovering any damages from these claims. This well-established principle makes logical sense and works to deprive bad actors who

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

perpetuate tax fraud an undue "windfall[2]" of additional pay after reaping the benefits of an independent contractor arrangement.

Furthermore, Plaintiff's FLSA Wage and Hour Claims are time-barred by the applicable two-year statute of limitations. Plaintiff did not perform at Sassy's during the applicable statutory period, and Plaintiff has no evidence to suggest that any alleged violation of the FLSA by Defendants occurred "willfully" as required to extend the statute for an additional year.

Finally, Plaintiff's Fifth, Sixth, and Seventh Causes of Action (the "Retaliation Claims") alleging retaliation against Mr. Faillace fail because Plaintiff was not an employee of Mr. Faillace with respect to his ownership of Glitz LLC dba Dante's ("Dante's").

## II.    MATERIAL FACTS

### A.    Plaintiff Is a Talented Performer.

Plaintiff's work and interest in live performances date back to college, where plaintiff managed a theater and produced plays. Declaration of Joseph Q. Ridgeway in Support of Defendants' Motion for Summary Judgment ("Ridgeway Dec."), Ex. D, at 16:12–17:10. Starting in 2016, Plaintiff began taking pole dancing lessons and taught "a lot" of pole dancing lessons to others. *Id.* at 85:13–86:5, 113:17–24. Plaintiff practiced pole dancing choreography on slow nights in live performance venues around Portland, and this practice improved their pole dancing skills. *Id.* at 86:16–25. Plaintiff also competed in pole dancing competitions, which judged performance, style, and the entertainment value of the competitors' skills. *Id.* at 115:25–116:18. In a crowded field with dozens of top performers competing, Plaintiff finished fifth in the 2017 Miss Exotic Oregon competition, a competition which included pole dancing skills. *Id.* at 115:25–116:24.

---

[2] *See, e.g., Holst v. State Dep't of Conservation & Nat. Res.*, Nos. 93-17234, 93-17260, 1995 WL 317020, at *1 (9th Cir. May 24, 1995) ("The instruction given to the jury, that Congress did not intend the FLSA to create a windfall for firefighters, is correct."); *Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 77 (1st Cir. 1998) (in FLSA litigation, "[p]laintiffs are entitled to be made whole, not to a windfall at the [defendant's] expense").

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

**B.      Sassy's and Dante's are Live Performance Venues.**

Sassy's and Dante's are live performance venues. *Id.* at 83:4–10. "Sassy's is an iconic small business entertainment venue in Portland" that "is based on food and drink sales" and "features female dance performances as entertainment for its patrons." ECF No. 26, at ¶¶ 3–4. Whereas Sassy's focuses on female dance performances, Dante's is a different venue owned and operated in part by Mr. Faillace, who is also a joint owner of Sassy's. Dante's hosts a wide variety of shows and acts; in Mr. Faillace's words, "Dante's is a live performance venue hosting a broad range of shows, including live music, karaoke with a live band, and cabaret shows, which include many unique acts such as fire performance, pole dances, DJs, circus acts, and burlesque." Declaration of Frank Faillace in Support of Defendants' Motion for Summary Judgment ("Faillace Dec."), ¶ 2. Both venues are at issue in this case, as Plaintiff primarily performed at Sassy's, but also twice at Dante's.

**C.      Plaintiff's Performances at Sassy's.**

Plaintiff auditioned to be a performer at Sassy's. Ridgeway Dec., Ex. D, at 94:17–18. Plaintiff chose their makeup, hair, and outfit before performing a set of three songs for the audition. *Id.* at 94:19–95:11. To impress at Sassy's "really hard" audition, Plaintiff climbed "the tallest pole in the building" at a height of 1.5 stories to "show off," a feat Plaintiff estimated only about 20% of performers can accomplish. *Id.* at 95:3–96:12, 113:22–24. Plaintiff took this audition seriously and flaunted their skills because Sassy's has a reputation for only hiring the most talented dancers. *Id.* at 114:17–24.

Plaintiff's audition won them the opportunity to contract as a performer with Sassy's. On June 7, 2017, Plaintiff signed the Agreement with Sassy's. *See* ECF 20-1. The Agreement provides that "[Plaintiff] is an independent contractor with respect to [Sassy's] and is not an employee of

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

[Sassy's]." *Id.* at 1. The Agreement further provides that "[Plaintiff] understands that [they] will receive no compensation from [Sassy's], but may retain any tips gained as a direct result of [their] performance. . . . [Sassy's] shall have no responsibility for paying payroll taxes of any kind, nor of withholding any taxes for any payment or tips earned by [Plaintiff]." *Id.* at 2.

As a performer at Sassy's, Plaintiff had full discretion and control over virtually every aspect of their performances. Plaintiff decided when to work by noting their availability for the upcoming week. *See* Ridgeway Dec., Ex. D, at 60:19 ("I was able to choose my availability."); *Id.* at 60:8–12 (full discretion to decide when and how often to perform). Plaintiff chose their makeup, hair style, wigs, and outfit, and estimated that they spent "about an hour, hour and a half" getting ready for each performance. *Id.* at 99:19–100:25. Plaintiff choreographed a dance routine based on years of experience and "based on how [they were] feeling on the day," and Sassy's had no control over Plaintiff's artistic expression on stage. *Id.* at 102:7–24.

Plaintiff had the ability to decide whether to solicit or perform private dances for customers. *Id.* at 110:2–9. Plaintiff could choose what music to perform to at Sassy's, and if Sassy's had a DJ working on a particular weekend, Plaintiff could instruct the DJ on their preferred music. *Id.* at 119:1–120:17. Plaintiff fully enjoyed the unique freedom of contract performing, which permitted drinking alcohol between performances. *Id.* at 126:2–17. Finally, Plaintiff was free to perform at other venues and hold other jobs while contracting with Sassy's, and actually did so by performing at Safari. *Id.* at 138:1–21; 191:19–25; *see also id.* at Ex. A, at 3. On March 3, 2019, Plaintiff ceased performing at Sassy's. *Id.* at Ex. A, at 2.

Plaintiff earned a lot of money performing at Sassy's, both from customer tips while on stage and private dances performed at Plaintiff's discretion. Plaintiff estimates earning between $80 to $400 <u>a night</u> while dancing on stage, and up to $520 <u>a night</u> in separate private dance fees.

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

*Id.* at Ex. D at 104:23–112:15. Plaintiff's high earnings from private dances stemmed, in part, from personal marketing efforts throughout the club. *Id.* at 110:7–111:10. Plaintiff also benefited from the flexibility of setting private dance prices at $40 per song—double what other, less sought-after dancers charged. *Id.* at 104:23–112:15. Plaintiff's shifts were approximately 6 hours long. *See Id.* at Ex. E (Plaintiff listed on Sassy's schedule as "Honey") As Plaintiff worked 138 shifts at Sassy's, earning between $80 to $920 a night, Plaintiff's most likely earned between $70,000 to $100,000 performing at Sassy's dating back three years prior to the filing of this action. *Id.* at Ex. F, at 2–8. In any event, even based on Plaintiff's most conservative estimates, at no point did Plaintiff fail to clear the applicable minimum wage.

Plaintiff did not report any earnings from tips or private dances to Sassy's, and Sassy's did not take any portion of Plaintiff's tips or private dance fees for any purpose. Sassy's, therefore, had no practical way of tracking Plaintiff's earnings, an arrangement Plaintiff benefited from.

Plaintiff's earnings enjoyed an additional windfall significant to this Motion—Plaintiff paid no taxes whatsoever for income received from performances at Sassy's. *Id.* at Ex. A, at 4. In fact, Plaintiff failed to file taxes at all during all material times. *Id.* at Ex. C, at 3–4. Furthermore, Plaintiff failed to maintain records of income received from their performances. *Id.* at 2. Plaintiff confirmed under oath that they did not pay taxes or track their income. *See id.* at Ex. D at 105:24–106:11, 112:25–13.

### D.    Plaintiff's Performances at Dante's.

Plaintiff performed at Dante's twice. *Id.* at 75:20–76:14, 79:21–23, 80:18–20; Faillace Dec., ¶¶ 2–3. Specifically, Plaintiff performed at Dante's Sinferno Cabaret event, which is a "sort of cabaret, or a mix of different performances . . . . [i]ncluding but not limited to . . . fire shows, burlesque performances, contortion, [and] juggling." Ridgeway Dec., Ex. D at 75:20–76:14.

Page 6 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff admitted that they were classified as an independent contractor at Dante's in part because they performed only "one-off events" there. *Id.* at 77:10–78:16. Dante's invited Plaintiff because of Plaintiff's superior pole dancing skills and experience, and Plaintiff's performances at Dante's were choreographed and competed with other performers in a variety of backgrounds. *Id.* at 86:6–87:7, 102:11–103:14.

Plaintiff's performances at Dante's ceased after bringing the FLSA Wage and Hour Claims against Sassy's alleging that they were misclassified as an independent contractor and failing to inform Mr. Faillace that they believed their work at Dante's to be independent contractor work. *See* Ridgeway Dec., Ex. D, 218:4–9; *id.* at Ex. H; ECF No. 26, at ¶ 11. This created concern for Mr. Faillace that Plaintiff may raise similar allegations regarding their independent contractor work at Dante's. *See* Ridgeway Dec., Ex. H; ECF No. 26, at ¶ 11. Thus, Dante's was forced to suspend Plaintiff's performances until it could confirm whether Plaintiff was indeed an independent contractor of Dante's. *See* Ridgeway Dec., Ex. H; ECF No. 26, at ¶ 11.

To date, Plaintiff still will not indicate whether those performances were contract based, changing positions on the matter several times during a single deposition. *Compare* Ridgeway Dec., Ex. D, at 77:10–14 (Q: "[W]ere you classified as an independent contractor or an employee [at Dante's]?" A: "Independent contractor."), *with id.* at 246:15–247:14 (Q: "[I]s it your intent to change your testimony [that you believe you were properly classified as an independent contractor at Dante's]?" A: "Yes.").

### E.  Plaintiff's Business.

In 2019, Plaintiff started a business called "PXSSYCONTROL LLC" to rent poles for pole dancing. *Id.* at 43:8:–44:19. In 2020, Plaintiff started a nonprofit called the Haymarket Pole Collective ("Haymarket") to promote safe workspaces for Oregon transgender sex workers and

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

sex workers of color as well as provide trainings to local businesses on the differences between independent contractors and employees. *Id.* at 45:5–47:20. Haymarket's website advertises that, because dancers are contractors, they should have access to resources, which the service strives to provide them. *See* Ridgeway Dec., at Ex. I.

## III.    ARGUMENT

### A.    Summary Judgment Standard.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it could affect the outcome of the suit under the governing substantive law." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). A party asserting that a material fact cannot be or is genuinely disputed must cite to the record or show that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce materials sufficient to prevent a motion for summary judgment. *See Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

Speculation and personal belief are not enough to show a genuine issue for trial. "To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

**B.      Plaintiff Lacks Standing to Prosecute Their FLSA Wage and Hour Claims.**

Defendant moves to dismiss Plaintiff's FLSA Wage and Hour Claims for lack of standing based on Plaintiff's failure to report or pay taxes for the substantial sums of money earned during the material times at issue.

**1.      Requirements for Standing.**

When filing a lawsuit in federal court, the plaintiff must demonstrate both Article III constitutional standing and prudential standing. Article III constitutional standing requires a plaintiff to show "(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "To satisfy Article III's case or controversy requirement, a litigant in federal court is required to establish *its own* injury in fact." *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 882 (10th Cir. 1997) (emphasis added). Prudential standing generally requires the plaintiff to "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

"'The party invoking federal jurisdiction bears the burden of establishing standing,' and '[e]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (first quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013), then quoting *Lujan v. Defs. of Wildlife*, 504 U.S.

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

555, 561 (1992)). Standing is required from an action's commencement and throughout its existence. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). "In response to a summary judgment motion . . . the plaintiff can no longer rest on . . . mere allegations [of standing], but must 'set forth' by affidavit or other evidence 'specific facts[.]'" *Lujan*, 504 U.S. at 561 (emphasis added) (quoting Fed. R. Civ. P. 56(e)).

### 2.    Plaintiff Failed to Comply with the Tax Laws Regarding Their Income Earned from Their Performances at Sassy's.

Plaintiff's FLSA Wage and Hour Claims attempt to enlist the Court to support their unambiguous fraud against both Sassy's and the government. In sum, Plaintiff seeks to unwind a legal contract to perform with all the benefits and privileges of a contractor, retain the estimated six-figure earnings received, avoid any tax exposure on that sum, and collect a windfall of thousands of dollars in alleged unpaid "minimum wages" and accompanying penalties.  *See generally* ECF No. 16. Plaintiff's pivot seeks to turn the FLSA on its. That was not the intent of the FLSA and it is not a proper use of the Court's authority here. *See, e.g.*, *Fed. Air Marshals (FAM) FAM 1 v. United States*, 84 Fed. Cl. 585, 596 (Fed. Cir. 2008) (under the FLSA, federal air marshals were "not entitled to a windfall of an additional payment at one and one-half times their regular rate for hours for which they have already been compensated" (citing *Zumerling v. Devine*, 769 F.2d 745 (Fed. Cir. 1985))).

Employees must report any tip income to employers. *See* 26 U.S.C. § 6053(a); 26 C.F.R. § 31.6053-1; IRS Rev. Rul. 2012-18.[3] Assuming that an employee complies with these reporting

---

[3] In particular, the Internal Revenue Code states that tipped employees "shall report all such tips in one or more written statements furnished to their employer on or before the 10th day following such month." 26 U.S.C. § 6053(a); *accord* 26 C.F.R. § 31.6053-1. Such "reports" can be in writing or submitted electronically. 26 U.S.C. § 6053(a).

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

requirements (and the Internal Revenue Code provides, as discussed below, for what happens if the employee does not), the employer is required to make all requisite withholdings due on that tip income not from the tips themselves, but rather *from the net wages to be paid to the employee* (after, of course, first deducting the withholdings due on the actual wages). *See* 26 U.S.C. §§ 3102(c); 3402(a)(l) and (k); 6053(a); 26 C.F.R. § 31.3102-3(a). As such, highly tipped employees such as bartenders and wait staff may receive a "zero" paycheck at the end of the applicable pay period. After deducting from the wages to be paid the withholdings due on that income, and then also deducting the withholdings due on the tip income earned by the employee, there may be nothing left of the wages to be paid to the employee.[4]

In other words, what would otherwise be paid as wages is instead remitted to the IRS and state and local taxing authorities as withholdings due on the wages themselves and on the tip income earned. Of course, not reporting tips does not relieve the employee from tax exposure on those sums. *See e.g.*, 26 U.S.C. § 6652(b); 26 C.F.R. § 31.3402(k)-1. Rather, when an employee fails to report tip income to the employer, the employee is required to identify that tip income to the IRS on a Form 4137 and pay the taxes due on such income. *See* 26 U.S.C. § 6652(b).[5]

In the United States, "[e]very citizen is presumed to know the law." *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1507 (2020) (quoting *Nash v. Lathrop*, 6 N.E. 559, 560 (Mass. 1886)). While these statutory and regulatory requirements are summarized in common

---

[4] In fact, the employee's wages can actually be in the "negative" in that the employee owes more in taxes due on tip income than wages that are otherwise available to be "paid." In that event, the employee can voluntarily pay the difference to the employer or, if not, the employer is then required to withhold the remaining taxes from the employee's next paycheck. *See, e.g.*, 26 C.F.R. § 31.3402(k)-1; 26 U.S.C. § 3102(c)(2), (3)(C). This can set up a virtual perpetual situation where the employee continues to get a "zero" paycheck as a result of these "roll-over" withholding requirements.

[5] Failure to have reported all tip income to one's employer also subjects the employee to a 50% tax penalty (*see* 26 U.S.C. § 6652(b); 26 C.F.R § 31.6652(c)-1(a)) unless the employee establishes to the satisfaction of the IRS that the failure to report "was due to reasonable cause and not due to willful neglect." 26 C.F.R. § 31.6652(c)-1(b).

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

vernacular and readily accessible on the IRS's website,[6] one does not need a fulsome knowledge of tax law to understand the axiom that all workers—regardless of their classification as employees or independent contractors—are required to pay taxes on the income they earn. Plaintiff can neither legally nor factually claim ignorance of this fundamental requirement of American life.

Plaintiff admitted they "received compensation for [their] live performances at Sassy's through tips from customers." Ridgeway Dec., Ex. A, at 3. Plaintiff also admitted through written discovery and oral testimony that they paid no taxes and reported no income during all material times, despite making around $100,000 or more in taxable earnings. *Id.* at Ex. B, at 2, 4–5; *id.* at Ex. D at 105:24–106:11, 112:25–113:2. In sum, Plaintiff's status as a tax fraud is well established.

In the event of an employment decision in this action, Sassy's would be obligated to withhold from any wages due to Plaintiff all taxes owed on their income derived from their performances—including the discretionary tips Plaintiff admitted they received, did not keep records of, and did not pay taxes on. *See, e.g., Matson v. 7455, Inc.*, No. CV 98-788-HA, 2000 WL 1132110, at *5 (D. Or. Jan. 14, 2000) (granting summary judgment in favor of defendant exotic dance club against exotic dancer's FLSA misclassification claims where court found exotic dancer was an independent contractor and noting that "the plaintiff did not maintain records distinguishing her tips from the fixed fees, and she now claims that she has no method of separating the tips from the mandatory fees. **With such a deficient record, the plaintiff cannot specify an amount by which she was allegedly undercompensated, and she has no factual basis upon which to assert**

---

[6]  *See,* e.g., Topic No. 761 Tips – Withholding and Reporting, IRS.Gov. (Jun 24, 2020), https://www.irs.gov/taxtopics/tc761; Tips on Tips, IRS.Gov (Mar. 2022), https://www.irs.gov/pub/irs-pdf/p3148.pdf; IRS Publication 531, IRS.Gov (Dec. 2021), https://www.irs.gov/pub/irs-pdf/p531.pdf. In fact, the IRS has provided a form titled "Employee's Report of Tips to Employer," i.e., Form 4070, for ease of employee reporting and recordkeeping, Form 4070, IRS.Gov, https://www.irs.gov/pub/irs-access/f4070_accessible.pdf, and will provide a one year supply of these forms. How to Keep a Daily Tip Record, Publication 531 (2019), Reporting Tip Income, IRS.Gov (Dec. 20, 2021),
https://www.irs.gov/publications/p531#:~:text=To%20get%20Form%204070%2DA,at%20IRS.gov%2FPub1244.

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

**an F.L.S.A. claim**. . . . An employee carries the initial burden of proving that '[s]he has in fact performed work for which she was improperly compensated and . . . [producing] sufficient evidence to show the amount and the extent of that work as a matter of just and reasonable inference.' Although this is a very minimal burden, the plaintiff has presented absolutely no evidence that she was wrongfully compensated." (emphasis added) (quoting *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85 (10th Cir. 1983) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)))).

With nightly income from their performances at Sassy's ranging from $80 to $920 per shift (up to $150 an hour) and minimum wage in the Portland metropolitan area set at $11.25 from June 25, 2018 to June 30, 2018 and $12.00 from July 1, 2018 to March 3, 2019,[7] Plaintiff could have *easily* been such a highly tipped employee that they would have received a "zero" paycheck and would not have been entitled to have received, or be entitled to receive here upon the determination of an employment relationship, any wages. Even Plaintiff's lowest estimate of $80 in income per night exceeds the applicable minimum wage. Regardless, the issue is not Defendants' burden to carry. Plaintiff alone has the burden of establishing standing to seek and obtain the payment of wages in circumstances where: (1) they never disclosed the true tip income they earned; (2) they do not have any tax returns or related documents that would demonstrate that they have indeed paid taxes on the true tip income they admitted they earned; and (3) they admitted under oath to neither reporting their income derived from their performances at Sassy's to the applicable taxing authorities nor paying taxes on that income.

Thus, for the reasons discussed below, Defendants are entitled to summary judgment on Plaintiff's FLSA Wage and Hour Claims because Plaintiff has failed to demonstrate an injury in

---

[7] *See* Minimum wage increase schedule, Oregon Bureau of Labor & Industries, https://www.oregon.gov/boli/workers/Pages/minimum-wage-schedule.aspx .

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

fact and therefore lacks standing.  Indeed, by failing to report their tips and pay taxes on that income, any monies that might theoretically be found to be due to Plaintiff would have been, and would be here, the property of the IRS, the Oregon Department of Revenue, and/or the Revenue Division of the City of Portland—not Plaintiff.

> ### 3.    Plaintiff Is Not an Injured Party and Thus Lacks Article III Standing to Bring Their FLSA Wage and Hour Claims.

The requirement of establishing an injury in fact is the "'[f]irst and foremost' of standing's three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). This requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Driehaus*, 573 U.S. at 158 (quoting *Warth*, 422 U.S. at 498). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). Simply claiming a violation of a statutory right will not do; "a plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341.

Notably, "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in *a personal and individual way*.'" *Id.* at 339 (emphasis added) (quoting *Lujan*, 504 U.S. at 560 n.1); *see also Valley Forge Christian Coll.*, 454 U.S. at 472 ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979))). "Particularization is necessary to establish injury in fact, but it is not sufficient," rather, it "must also be 'concrete.'"

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

*Spokeo, Inc.*, 578 U.S. at 339. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist"—it must be "'real', and not 'abstract.'" *Id.* at 340.

Plaintiff has introduced no evidence of a concrete and particularized injury in fact that *they* suffered. To be sure, Plaintiff asserts statutory rights under the wage and hour laws of the FLSA, but an injury in fact is not "automatically satisfi[ed] . . . whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 341; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."). Rather, Plaintiff "must set forth by affidavit or other evidence specific facts" which demonstrate an actual (or threatened), particularized, and concrete injury. *Lujan*, 504 U.S. at 561 (internal quotation marks omitted); *see also Baird v. Cal. Faculty Ass'n*, 34 F. App'x 303, 303 (9th Cir. 2002) (noting plaintiffs must provide evidence "showing they have suffered an 'injury in fact'"). This is a burden Plaintiff cannot overcome as they cannot set forth evidence that demonstrates: (1) that they paid all due taxes on the tip income they received; (2) that said requisite taxes did not exceed the minimum wages to which they claim entitlement here such that there would be actual minimum wages left for Plaintiff to recover; and (3) that they, and not the IRS or companion state or local agency, is entitled to possession of those wages. If there is any injury here at all (which Defendants vehemently deny), it would be to the IRS and state and local taxing authorities—not Plaintiff.

>    **4.      Even if Plaintiff Could Establish Constitutional Standing, They Also Lack Prudential Standing Because the Court's Intervention Would Not Personally Benefit Them.**

"[T]he plaintiff must assert his own rights and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" *McMichael v. Napa County*, 709 F.2d 1268, 1270 (9th Cir.

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

1983) (quoting *Warth*, 422 U.S. at 499); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) ("One of these prudential limits on standing is that a litigant must normally assert his own legal interests rather than those of third parties."). While a party's injury-in-fact may suffice for Article III standing, "it is insufficient to establish prudential standing." *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 848 (9th Cir. 2009). Prudential limitations prevent courts from considering "legal problems that may be real but yet are too removed and abstract to warrant judicial consideration." *McMichael*, 709 F.2d at 1271; *see also The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1171 (10th Cir. 2011) ("A party may suffer a cognizable injury but still not possess a right to relief.").

Plaintiff brings four wage and hour claims under the FLSA which, assuming arguendo that Plaintiff's allegations are true, do not constitute a cognizable injury to *Plaintiff*. Succinctly, Plaintiff cannot establish a right to personal relief as they lack an independent property right to the wages to which they claim entitlement.

As explained above, any wages that may be found to be owed to Plaintiff would instead be the property of the federal, state, and/or local governments; they are not Plaintiff's for the taking. Simply put, the taxes due on the income Plaintiff received (see 26 U.S.C. §§ 3102(c); 3402(a)(l) and (k); 6053(a); and 26 C.F.R. § 31.3102-3(a)) almost certainly exceed the minimum wages to which they now claim entitlement, considering Plaintiff's estimation of their earnings at Sassy's. Plaintiff's failure to pay taxes makes carrying this burden impossible, and any "wage" earnings sought for recovery must be remitted to the proper authorities to pay back taxes.

Put another way, a decision in Plaintiff's favor on the employee-contractor classification issue would provide Plaintiff no relief—*i.e.*, no redressability—on their FLSA Wage and Hour Claims. Most succinctly stated, "[t]he fundamental question underlying the redressability

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

requirement 'has always been the same: whether a plaintiff "personally would benefit in a tangible way from the court's intervention."'" *Univ. Med. Ctr. of S. Nev. v. Shalala*, 5 F. Supp. 2d 4, 7 (D.D.C. 1998), *aff'd on other grounds*, 173 F.3d 438 (D.C. Cir. 1999) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 n.5 (1998) (quoting *Warth*, 422 U.S. at 508)).[8]

### C.    Plaintiff's Claims Fail Because Sassy's Properly Classified Them as a Highly Skilled Contract Performer.

Plaintiff's FLSA claims are contingent upon an employment relationship. *See* 29 U.S.C. § 203(m)(2)(B) ("An *employer* may not keep tips received by its *employees* for any purposes, including allowing managers or supervisors to keep any portion of *employees'* tips, regardless of whether or not the *employer* takes a tip credit." (emphasis added)); 29 U.S.C. § 206(a) ("Every *employer* shall pay to each of his *employees* who in any workweek is engaged in commerce . . . wages at the following rates . . . ." (emphasis added)); 29 C.F.R. § 531.35 ("Whether in cash or in facilities, 'wages' cannot be considered to have been paid by the *employer* and received by the *employee* unless they are paid finally and unconditionally or 'free and clear.' The wage requirements of the Act will not be met where the *employee* 'kicks-back' directly or indirectly to the *employer* or to another person for the *employer's* benefit the whole or part of the wage delivered to the *employee*." (emphasis added)).

In the Ninth Circuit, the determination of a worker's status as either an employee or an independent contractor is made by analyzing the economic realities test's six factors, which are:

1.  the degree of the alleged employer's right to control the manner in which the work is to be performed;

---

[8] The United States Courts of Appeals are uniform: redressability requires that *the plaintiff* benefit in some tangible way. *See Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1338 (11th Cir. 2019) (noting the same); *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1175 (9th Cir. 2017) (finding redressability because the plaintiff would benefit from the court's intervention); *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) ("The redressability requirement focuses on whether a plaintiff 'personally would benefit in a tangible way from the court's intervention.'" (quoting *Warth*, 422 U.S. at 508)); *Castillo-Hernandez v. Holder*, 596 F. App'x 645, 649 (10th Cir. Dec. 19, 2014) (same); *Ken-N.K., Inc. v. Vernon Twp.*, 18 F. App'x 319, 326 (6th Cir. Aug. 23, 2001) (same); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000) (en banc) (same).

Page 17 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

2. the alleged employee's opportunity for profit or loss depending upon his managerial skill;

3. the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;

4. whether the service rendered requires a special skill;

5. the degree of permanence of the working relationship; and

6. whether the service rendered is an integral part of the alleged employer's business.

*Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). Analysis of these fact-based factors confirms Plaintiff's statement on their Haymarket Pole Collective website that they were an independent contractor of Sassy's, as Plaintiff agreed to when they executed the Agreement[9]. *See* Ridgeway Dec., Ex. G, at 2 (explaining that Plaintiff "contracted in Oregon at Sassy's"); *see also Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d 1234, 1242 (D. Or. 2014) (in using economic realities test, "[c]ourts consider the facts as a whole").

### 1. First Factor: Sassy's Had No Control over Plaintiff's Performances.

First, Sassy's had virtually no right to control the matter in which Plaintiff could perform at Sassy's. Plaintiff chose (1) when they performed (Ridgeway Dec., Ex. D, at 60:8–19); (2) their hairstyle, outfit, and makeup (*id.* at 99:19–100:25); (3) their dance routine (*id.* at 102:7–24); (4) whether to solicit or perform private dances for customers (*id.* at 110:2–9); (5) what music they performed to (*id.* at 119:1–120:17); (6) whether to drink alcohol during their shifts (*id.* at 126:2–17); and (7) whether to perform at other venues or hold other jobs while they were contracted with

---

[9] *Matson*, 2000 WL 1132110, at *4 ("The written agreement that was signed by the plaintiff three different times during her tenure at Jiggles is the most telling indicator of her status as an independent contractor. This agreement expressly articulated that the plaintiff was 'an individual contractor [who was] solely responsible for payment of [her] federal, state, and social security taxes and state industrial accident insurance' and that she did hereby 'relieve 7455 Inc. DBA Jiggles from any or all responsibility for payment of said taxes on [her] behalf.'")

Page 18 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

Sassy's (*id.* at 138:1–21; 191:19–25). *See also Nelson v. Texas Sugars, Inc.*, 838 F. App'x 39, 42 (5th Cir. 2020) (affirming jury verdict that exotic dance performers were not employees where "the dancers set their own schedule, worked for other clubs, chose their costume and routine, decided where to perform (onstage or offstage), kept all the money that they earned, and even chose how much to charge customers for dances").

### 2. Second Factor: Plaintiff's Skill Dictated Opportunities for Profit or Loss.

Second, Sassy's performers' income varied, as "being entertaining [and] having energy is important for performing at clubs" and "impact[s] directly how much money someone makes." Ridgeway Dec., Ex. D, at 113:14–16; 117:19–24. Because Sassy's performers "are compensated based on direct client contributions during live stage performances and fees charged for individual performances" rather than a set fee or hourly wage by Sassy's, the performers assume the risk of profit or loss through the energy, skill, and practice that is put into their performances. ECF No. 26, at ¶ 5; *see also Matson*, 2000 WL 1132110, at *4 (granting summary judgment in favor of defendant exotic dance club against exotic dancer's FLSA misclassification claims where court found exotic dancer was an independent contractor in part because "the plaintiff was paid exclusively through fees and tips for table dances, income which was largely dependent on the plaintiff's own skill to attract customers and not on any salary or hourly wage set by the defendants. Through this method of compensation, the plaintiff was in control of her opportunity for profit"); *Hilborn v. Prime Time Club, Inc.*, No. 4:11CV00197 BSM, 2012 WL 9187581, at *1 (E.D. Ark. July 12, 2012) (ruling on summary judgment that exotic dance performers were not employees under FLSA in part because they "experienced certain risks of profit or loss beyond that which normal employees experience"); *State ex rel. Roberts v. Acropolis McLoughlin, Inc.*, 150 Or. App. 180, 191 (1997) (affirming trial court's decision that performers at Portland live performance

Page 19 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

venue were not employees in part because performers' "tips were 80 percent dependent on their ability to entertain, which included their dancing and personal skills and their ability to use makeup and costumes").

Plaintiff testified at length regarding opportunities for profit or loss, based on the business decisions Plaintiff made each night and the efforts expended on performances, entertaining, and soliciting private dances. As an initial matter, Plaintiff would not have had the opportunity to perform at Sassy's at all without a well-honed routine and highly sought-after dance skills. Also, Plaintiff testified that they had complete control over when and how enthusiastically to solicit private dances, which constituted the bulk of nightly income. Ridgeway Dec, Ex. D, at 104:23–112:15. Further, Plaintiff had the option of performing on high customer volume nights, with the best opportunities for profits, or performing on low key nights and day shifts, when profits would be less. *Id.* at 60:16–19, 104:23–105:9. In short, Plaintiff had the opportunity to make, and did make, numerous decisions every week regarding performances, marketing, and scheduling, which had a direct and significant impact on profit or loss. Indeed, the swing in profits, based on the circumstances, had a range of $80 to $920 a shift—which means that Plaintiff's decisions led to over a tenfold variation in profits on a nightly basis.

### 3. Third Factor: Plaintiff Invested Significant Time and Resources into Performances.

Third, Plaintiff invested hundreds of dollars in makeup, outfits, and wigs required for their performances and spent anywhere from 60 to 90 minutes each night preparing for their performances. *See* Ridgeway Dec., Ex. D, at 99:19–100:11. Additionally, Plaintiff invested in their own skills to improve their performances through practice and received and provided pole dancing instruction. *See id.* at 85:13–86:5, 86:16–25, 113:17–24; *see also Nelson*, 838 F. App'x at 42 (affirming jury verdict that exotic dance performers were not employees where "the dancers

Page 20 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

provided their own costumes and makeup" and noting that "although the Club made significant investments in, *inter alia*, advertising, décor, food, and alcohol, the jury could have concluded that those investments were not essential for the dancers to perform their work and thus the relative investments of the Club and the dancers were not necessarily comparable"); *Acropolis*, 150 Or. App. at 191 (affirming trial court's decision that performers at Portland live performance venue were not employees in part because "[d]ancers provided their own equipment including costumes, makeup and music. The stage that Acropolis provided was not equipment but the situs of the performance").

### 4. Fourth Factor: Plaintiff Possesses Highly Developed Performance Skills.

Fourth, performances at Sassy's require special skills: elite pole dancing, and among the best-of-the-best, Plaintiff sat atop a league of their own. Plaintiff testified that Sassy's auditions were "really hard" such that the majority of people that audition for Sassy's never receive the opportunity to perform there. Ridgeway Dec., Ex. D, at 95:3–97:6. To win a place on the stage at Sassy's, Plaintiff took no chances, and opened by performing a dance move only about 20% of performers can accomplish: climbing "the tallest pole in the building" at a height of 1.5 stories. *Id.* at 95:3–96:12, 113:22–24. Although Plaintiff honed their craft through hours of practice, performed a feat in their audition that most performers cannot, and made it to the finals in the 2017 Miss Exotic Oregon competition, Plaintiff testified that "[e]verybody at Sassy's was a better pole dancer than [them]" due to the difficulty of the auditions. *Id.* at 86:22–25, 95:3–96:12, 113:22–24, 114:17–24, 115:25–116:24; *see also Hilborn*, 2012 WL 9187581, at *1 (ruling on summary judgment that exotic dance performers were not employees under FLSA in part because they "possessed and exhibited special skills with respect to their activities at the nightclub albeit none of the skills exhibited required a certification").

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

Plaintiff also demonstrated elite skill by placing in the finals for dancers in the industry, out of a crowded field of many that sought the prize. Any suggestion that Plaintiff's special skills, which Plaintiff shared with other dancers through informal mentorship, were not special and deserving of the stage would show clear bias towards someone seeking a windfall under the FLSA based on common prejudices and stereotypes of Sassy's business model. In any event, Plaintiff defeats this argument through exhaustive testimony putting to rest any suggestion that performers at Sassy's do not possess elite dance talent in a very competitive market. Plaintiff further proved this point by performing during a variety of acts at Dante's Sinferno Cabaret event, demonstrating definitively that Plaintiff's performance skills are on par with any other type of unique performance, including bands, magicians, fire dancers, and more.

> ### 5.    Fifth Factor: Plaintiff Contracted with Multiple Venues for Limited Periods of Time.

Fifth, Plaintiff's work at Sassy's was impermanent. Every week, Plaintiff could decide whether they wanted to work simply by indicating their availability. Ridgeway Dec., Ex. D, at 60:8–19. Plaintiff was also able to perform at other venues, and they took advantage of that freedom by performing at Safari during the time they were a performer at Sassy's. *Id.* at 138:1–21; 191:19–25; *see also Nelson*, 838 F. App'x at 42 (affirming jury verdict that exotic dance performers were not employees where "the dancers had no set schedule and could pick their hours"); *Hilborn*, 2012 WL 9187581, at *1 (ruling on summary judgment that exotic dance performers were not employees under FLSA in part because they "did not exhibit a degree of permanence representative of employer-employee relationships, instead, enjoying the freedom to work for others, including Prime Time's competitors"); *Acropolis*, 150 Or. App. at 190 (affirming trial court's decision that performers at Portland live performance venue were not employees in part because "dancers typically danced at The Acropolis intermittently, for brief periods, and

Page 22 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

simultaneously worked for other clubs"). Plaintiff's brief stint with Sassy's is comparable with many other performers who vary their venues, but occasionally have "residencies" where they perform at one venue for a period of time. So too, here—Plaintiff performed at Sassy's when desirable, and ceased performances when that was no longer the case.

> **6.      Sixth Factor: Performers Are No More Integral to Sassy's than Comparable Theaters, Clubs, and Numerous Other Live Performance Venues that Exclusively Rely on Contract Performers.**

Sixth, performers are not integral to Sassy's business, or at least not any more so than any other live performance venue that equally uses a variety of talented and sought-after acts to populate and excite customers at event spaces. Similar to many live performance venues, "Sassy's business is based on food and drink sales" and "Sassy's does not receive or retain any portion of the contributions or fees earned by performers." ECF No. 26, at ¶¶ 4–5. Rather performers provide "entertainment for [Sassy's] patrons." *Id.* at ¶ 4. While the absence of performers would turn Sassy's into a bar rather than a live performance venue, Sassy's bottom line is dependent upon food and drink sales, not income derived from live performances. *See id.* at ¶¶ 4–5; *see also Nelson*, 838 F. App'x at 42 (affirming jury verdict that exotic dance performers were not employees even though the performers argued that the sixth factor weighed in their favor because, "without the dancers, the Club would just be a bar, this fact does not change our analysis. Nor would a determination that the relative investments factor is neutral. This is so because no one factor is determinative." (citations omitted)).

As Plaintiff was a highly specialized performer at a highly selective venue, each factor of the economic realities test shows that Sassy's properly classified Plaintiff as an independent contract performer—a classification that Plaintiff agreed to at the time and one that they only contest now in hope of a late windfall.

Page 23 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

D.        **Plaintiff's FLSA Wage and Hour Claims Are Time-Barred.**

A plaintiff's wage and hour claims under the FLSA "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "An employer's violation of the FLSA is 'willful' when it is 'on notice of its FLSA requirements, yet [takes] no affirmative action to assure compliance with them.'" *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016) (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003)); *see also Ackler v. Cowlitz County*, 7 F. App'x 543, 545 (9th Cir. 2001) ("Courts may find willfulness only where the employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988))). Courts "will not presume that conduct was willful in the absence of evidence." *Alvarez*, 339 F.3d at 909 (citing *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990)).

Plaintiff filed this action more than two years after last performing at Sassy's on March 3, 2019. *See* Ridgeway Dec., at ¶ 2; ECF No. 1. Therefore, Plaintiff's FLSA Wage and Hour Claims are barred unless Plaintiff proves that Defendants acted "willfully."  Willfulness requires a showing that Defendants were "on notice of [their] FLSA requirements, yet [took] no affirmative action to assure compliance with them." *Flores*, 824 F.3d at 906 (quoting *Alvarez*, 339 F.3d at 909); *see also Baumhover v. N. Bend Med. Ctr., Inc.*, CIV. 07-647-TC, 2008 WL 2874831, at *4 (D. Or. July 22, 2008) (finding no triable issue on the plaintiff's willful overtime FLSA claim because the plaintiff failed to "point[] the court to evidence in the record indicating a 'willful' FLSA violation"); *Clayton v. State of Or., By & Through Dep't of Police*, 88-6223-BE, 1990 WL 32088, at *8 (D. Or. Jan 4, 1990), *aff'd sub nom. Clayton v. State of Or., by & through Dep't of*

Page 24 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

*State Police*, 925 F2d 1469 (9th Cir 1991) (finding that the defendant's conduct was not willful because "the evidence show[ed] only that the [defendant] should have known that it was unsure whether or not it was violating the FLSA" and the defendant "did not show a reckless disregard for whether or not its conduct was prohibited," as such "conduct [fell] in the grey area between reasonable good faith action and willfulness").

After almost a year of discovery, Plaintiff has no evidence whatsoever that Defendants acted willfully in contracting Plaintiff's live performances at Sassy's. Plaintiff produced no documents suggesting willfulness, could not testify regarding facts supporting willfulness, and otherwise has no support for such a claim. Ridgeway Dec., ¶ 6; *id.* at Ex. D, at 143:9–15, 245:19–246:14. Indeed, based on the undisputed material facts outlined herein, no FLSA violation took place at all. It stands to reason that, if Defendants did not violate the FLSA, then obviously they did not violate the FLSA "willfully." In any event, Plaintiff's claims are well outside the applicable statute of limitations and are barred on that basis.

### E.    Plaintiff's Retaliation Claims Fail for Lack of an Employment Relationship.

Plaintiff's Retaliation Claims against Mr. Faillace are brought under the FLSA, Oregon state law, and Oregon public policy. *See* ECF No. 16. These claims are based on the allegation that Mr. Faillace took Plaintiff off the schedule at Dante's where Plaintiff was classified as an independent contractor because Plaintiff filed this action. *See id.* at ¶¶ 80, 133, 138, & 145. Because Plaintiff was not an employee of Mr. Faillace or Dante's as it relates to Dante's, the Retaliation Claims fail as a matter of law.

Retaliation claims under the FLSA and ORS 659A.230 require an employment relationship, which again is determined via an analysis of the six-factor economic realities test promulgated by the Ninth Circuit in *Real. See* 29 U.S.C. § 215(a)(3) (providing that it is unlawful

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

to "to discharge or in any other manner discriminate against any *employee* because such *employee* has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." (emphasis added)); ORS § 659A.230(1) ("It is an unlawful employment practice for an *employer* to discharge, demote, suspend or in any manner discriminate or retaliate against an *employee* with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the *employee* . . . has in good faith brought a civil proceeding against an employer." (emphasis added)).

The same is true regarding Plaintiff's claim of retaliation in violation of public policy, which is treated as a claim for common law wrongful discharge in Oregon. *See Yeager v. Providence Health Sys. Or.*, 195 Or. App. 134, 141–43 (2004) ("Moreover, we have addressed previously the public policy at work in allowing retaliation claims for good faith invocation of a statutory right, whether or not that right actually exists. . . . We conclude, then, that a complaint that includes an allegation that the plaintiff was discharged in retaliation for invoking her rights . . . states a claim for common-law wrongful discharge."); *Olsen v. City of Seattle*, 165 F.3d 917, 1998 WL 814053, at *1 (9th Cir. 1998) ("Because we conclude that the appellants are independent contractors, . . . we need not address the appellants' claim under the anti-retaliation provision of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), or their claim that they were terminated in violation of public policy.").

The analysis of Plaintiff's work at Dante's under the economic realities test follows that of their work at Sassy's, but the outcome is even more indicative of contractor status. Dante's is the epitome of a classic and well-established live performance venue, which hosts a variety of acts based on the performers' skill, talent, and ability to drive attendance and alcohol sales for the venue. Under the first factor of the economic realities test—and just like Sassy's—neither Mr.

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

Faillace nor Dante's controlled the way performances at Sinferno Cabaret are rendered. *See* Faillace Dec., ¶ 3 ("Dante's invites only the most skilled and talented performers to perform at Sinferno Cabaret and allows the performers to perform how they wish, as it is their art on display, after all."). The same was true for Plaintiff, who testified that they expended considerable time preparing and working on the choreography for their two pole dancing performances at Dante's, performances that "were completely within their artistic control." *Id.* at ¶ 6; Ridgeway Dec., Ex. D, at 102:11–103:6.

Second, and same as Sassy's, the better Plaintiff's performances at Dante's Sinferno Cabaret were, the more likely they were to make more in tips from the audience. *See* Faillace Dec., ¶ 4 ("Performers also earn tips directly from the audience, with the best, most skilled, and most talented performers earning the most in tip money.").

Third, and same as Sassy's, Plaintiff invested hundreds of dollars in makeup, outfits, and wigs required for their performances. *See* Ridgeway Dec., Ex. D, at 99:19–100:11. Of course, Plaintiff need not hire employees to help them perform a pole dance for less than five minutes on a stage provided by Dante's. Faillace Dec., ¶ 4.

Fourth, and same as Sassy's, Plaintiff special skills as an artist are what opened the doors for performances at yet another elite local venue. Plaintiff testified that pole dancing requires safety, creativity, and choreography from hours of practice. Ridgeway Dec., Ex. D at 86:6–18. As Plaintiff practiced and performed, their pole-dancing skills improved over time, and eventually they were able to climb to the top of the 1.5 story pole during their performances and reach the finals of the Miss Exotic Oregon pole dancing competition. *Id.* at 86:22–25, 94:17–96:12, 115:25–116:24. Ultimately, Plaintiff's practice and improvement in pole dancing led to an invitation to perform at Dante's Sinferno, which "invites only the most skilled and talented performers to

Page 27 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

perform." *Id.* at 87:1–7; Faillace Dec., ¶¶ 3 & 6. For their performances at Dante's, Plaintiff spent "a bunch of time planning what the [pole dancing] routine would be." Ridgeway Dec., Ex. D at 102:11–103:6.

Regarding the fifth factor, like Sassy's, Dante's is a live performance venue which benefits from a variety of top-talent acts, but maintains a primary business model of bar sales to fuel revenue. Of course, those bar sales would suffer if the selected contract performers did not entertain customers, but so would the entertainer's reputation or opportunity for further contract work at other venues. This goes to the sixth factor as well, that is, whether Plaintiff's performances are an integral part of Dante's business. In short, the live performance industry, in all its machinations, requires that performers' and venues' success become intertwined—when both prosper, then business is good, but when only one prospers, business is generally bad. Thus, the performances of a famous DJ at a Las Vegas nightclub, are only as integral to that nightclub as the success of the DJ—and vice versa. The DJ will not likely succeed without a venue that will offer a fair opportunity for visibility and a broad audience. That said, a DJ cannot be said to be reliant on the stage and speakers of the venue any more than the venue is reliant on the reputation and talent of the DJ to fuel sales of alcohol and door fees.

In short, Plaintiff's work at Dante's offers the perfect comparator of exactly how their skills translated not just to high talent dance moves for a certain venue, but rather high talent dance moves for *many venues*, including venues like Dante's that do not solely highlight pole dancing talent. The economic realities, therefore, are that Plaintiff appropriately performed both at Dante's *and Sassy's* as an independent contractor—not as an employee—and therefore Plaintiff's Retaliation Claims—just like their FLSA Wage and Hour Claims—should be dismissed on summary judgment.

Page 28 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

IV.    **CONCLUSION**

Plaintiff seeks to turn a lucrative performance streak at Sassy's and Dante's—where Plaintiff likely earned more than six figures over a short period of time—into a windfall of epic proportions, skimming tens of thousands more in retirement for the trouble of having the opportunity to perform their art their way. Wage and hour laws, like the FLSA, aim to protect the vulnerable and punish employers that take shortcuts and exploit loopholes. This, however, is the opposite of that. Plaintiff attempts to use this Court to turn the purpose of the FLSA on its head to cap an already successful career as a live performer with an unjustified windfall.

But Plaintiff's arguments and angles hit a hard stop when several basic facts and legal principles are understood. The system does not reward tax fraud. Highly skilled performers should have the freedom to contract with different live performance venues on their own terms and not be pigeonholed into employment relationships that make little sense under the circumstances. And people who are in business for themselves, build their skills, and buy the equipment and materials necessary for their act should have the benefits and accountability of any other business contractor. Plaintiff's lawsuit cynically hopes that the nature of Defendants' industry, and the lay reputation of exotic dance performers, will short-circuit any thoughtful analysis of the facts. They filed this action in the hopes that courts reactively apply a prejudice to the industry. They hope that preconceived notions of what a true "performer" is or is not—in the spirit of "Hamlet" or "Hamilton"—will prevail, and in so doing, blatantly attempt to unfairly degrade what a "dancer" must be to the Court.

The facts tell a completely different story, and the difference is nonexistent. Dancers should be presumed to have the sophistication of any other businessperson or performer—because they do, as Plaintiff has shown. Dancers and clubs should be provided the same privileges as any other

Page 29 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

live performance venue, that is, the privilege to contract without fear of reprisal. Defendants ask

for nothing more than a legal decision affirming that (1) everyone is accountable for paying taxes;

(2) skilled performers come in many varieties; and (3) exotic performance venues, and other types

of performance venues, are equal before the law. The Court should dismiss this action.


Dated:      June 2, 2022                LITTLER MENDELSON, P.C.


                                        /s/ Joseph Q. Ridgeway
                                        Anthony D. Kuchulis, OSB No. 083891
                                        akuchulis@littler.com
                                        Joseph Q. Ridgeway, OSB No. 213011
                                        jridgeway@littler.com

                                        Attorneys for Defendants


Page 30 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT