Anthony D. Kuchulis, Bar No. 083891
akuchulis@littler.com
Joseph Q. Ridgeway, Bar No. 213011
jridgeway@littler.com
LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Telephone:    503.221.0309
Fax No.:        503.242.2457

Attorneys for Defendants/Counterclaimants

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ZOE HOLLIS, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>       vs.<br><br>R & R RESTAURANTS, INC dba SASSY'S, an Oregon corporation, STACY MAYHOOD, an individual; IAN HANNIGAN, an individual; FRANK FAILLACE, an individual; and DOES 2 through 10, inclusive,<br><br>             Defendants. | Case No. 3:21-cv-00965-YY<br><br>PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST AMENDED ANSWER AND COUNTERCLAIMS |

Defendants/Counterclaimants R & R Restaurants, Inc. d/b/a Sassy's ("Sassy's"), Stacy Mayhood ("Mayhood"), Ian Hannigan ("Hannigan"), and Frank Faillace ("Faillace") (collectively, "Defendants/Counterclaimants"), submit the following First Amended Answer and Counterclaims in response to Plaintiff/Counterclaim-Defendant's First Amended Complaint for Damages:

Page 1- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
            AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 1 of 29

1.

The allegations in paragraph 1 are legal conclusions, which require no response.

2.

Defendants/Counterclaimants admit that Plaintiff/Counterclaim-Defendant contracted with and occasionally performed at Sassy's, located at 927 SE Morrison Street, Portland, Oregon 97214 in 2018 and 2019. Except as admitted, Defendants/Counterclaimants deny the allegations in paragraphs 2 and 3.

3.

Plaintiff/Counterclaim-Defendant's contract work as a performing artist is not within the scope of the laws cited in paragraphs 4, 5, 6, or 7 and on that basis, Defendants/Counterclaimants deny the same.

4.

Defendants/Counterclaimants admit that Plaintiff/Counterclaim-Defendant was an individual adult resident of the State of Oregon and that they worked as an independent contractor when performing occasionally at Sassy's. The remaining allegations contained in paragraph 8 are legal conclusions, which require no response.

5.

Defendants/Counterclaimants admit that Sassy's is located at 927 SE Morrison Street, Portland, Oregon, 97214. The remaining allegations contained in paragraph 9 are legal conclusions, which require no response.

6.

The allegations contained in paragraph 10 are legal conclusions, which require no response.

Page 2- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
      AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

7.

Defendants/Counterclaimants admit that Mayhood assists with managing the bar and facilities at Sassy's and has an ownership interest in the same.  Mayhood's job duties are consistent with those of any manager of a live entertainment venue.  Neither Mayhood, nor any other Defendant/Counterclaimant or agent of any other Defendant/Counterclaimant, controlled the manner or means of Plaintiff/Counterclaim-Defendant, or any other performers', contract work. Except as expressly admitted, Defendants/Counterclaimants deny the allegations in paragraphs 11 and 12.

8.

Defendants/Counterclaimants admit that Hannigan assists with managing the bar and facilities at Sassy's and has an ownership interest in the same.  Hannigan's job duties are consistent with those of any manager of a live entertainment venue.  Neither Hannigan, nor any other Defendant/Counterclaimant or agent of any other Defendant/Counterclaimant, controlled the manner or means of Plaintiff/Counterclaim-Defendant, or any other performers', contract work. Except as expressly admitted, Defendants/Counterclaimants deny the allegations in paragraphs 13 and 14.

9.

Defendants/Counterclaimants admit that Faillace assists with managing the bar and facilities at Sassy's and has an ownership interest in the same.  Faillace's job duties are consistent with those of any manager of a live entertainment venue.  Neither Faillace, nor any other Defendant/Counterclaimant or agent of any other Defendant/Counterclaimant, controlled the manner or means of Plaintiff/Counterclaim-Defendant, or any other performers', contract work.

Page 3- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
        AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 3 of 29

Except as expressly admitted, Defendants/Counterclaimants deny the allegations in paragraphs 15 and 16.

10.

To the extent that the allegation against "DOES 2-10" in paragraphs 17 and 18 is legally permissible, then Defendants/Counterclaimants deny any allegations of unspecified improper conduct by unidentified Defendants/Counterclaimants.

11.

The allegations in paragraphs 19 and 20 are legal conclusions, which require no response.

12.

Defendants/Counterclaimants admit that during the relevant time period, all performers at Sassy's worked as independent contractors pursuant to express arm's-length agreements negotiated between each relevant party regarding the same. Defendants/Counterclaimants deny any factual allegations, and do not respond to legal conclusions, in paragraphs 21, 22, 23, 24, and 25.

13.

Defendants/Counterclaimants admit the allegations in paragraphs 26, 27, 28, and 29.

14.

The allegation in paragraph 30 is a legal conclusion, which requires no response.

15.

Defendants/Counterclaimants admit that during the relevant time period, all performers at Sassy's worked as independent contractors pursuant to express arm's-length agreements negotiated between each party regarding the same. Except as expressly admitted,

Page 4- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
      AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

Defendants/Counterclaimants deny any other factual allegations, and do not respond to legal conclusions, in paragraph 31.

16.

Defendants/Counterclaimants deny the allegations in paragraph 32.

17.

As to paragraph 33, Defendants/Counterclaimants admit that during the relevant time period, Plaintiff/Counterclaim-Defendant occasionally performed at Sassy's.

18.

Plaintiff/Counterclaim-Defendant's work duties are outlined in their Independent Contractor Agreement, attached hereto as **Exhibit 1**, the terms of which speak for themselves. Plaintiff/Counterclaim-Defendant's performances at Sassy's were occasional and infrequent. Except as expressly admitted, Defendants/Counterclaimants deny the remaining allegations and subjective abstract descriptions of Plaintiff/Counterclaim-Defendant's work in paragraphs 34, 35, 36, and 37.

19.

Defendants/Counterclaimants did not exercise control over the manner or means of its independent contractors' work, including Plaintiff/Counterclaim-Defendant's work, and therefore deny all contrary allegations in paragraphs 38, 39, 40, 41, 42, 43, 44, and 45.

20.

As to the allegations in paragraph 46, Plaintiff/Counterclaim-Defendant's compensation was set pursuant to their Independent Contractor Agreement, attached hereto as **Exhibit 1**, the terms of which speak for themselves.

Page 5- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
        AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 5 of 29

21.

Defendants/Counterclaimants deny the allegations in paragraph 47.

22.

Defendants/Counterclaimants deny any factual allegations, and do not respond to the legal conclusions, in paragraph 48.

23.

Defendants/Counterclaimants deny the allegation in paragraph 49.

24.

Defendants/Counterclaimants admit they assumed all the reasonable and necessary aspects of operating a live entertainment venue featuring live performances from artists, including advertising, maintenance, infrastructure, and ensuring a safe and secure experience for its performers and customers.  Except as admitted, Defendants/Counterclaimants deny the allegations in paragraphs 50, 51, and 52.

25.

Defendants/Counterclaimants deny the allegation in paragraph 53.

26.

With respect to the allegations in paragraphs 54 and 55, Defendants/Counterclaimants admit that Sassy's is a live entertainment venue.  Other abstract and subjective characterizations of Defendants/Counterclaimants' business model are matters of opinion that can neither be admitted nor denied.

27.

With respect to paragraph 56, Defendants/Counterclaimants admit that, as is consistent with other live performance venues, performers are not always required to have managerial skills.

Page 6- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
        AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

**EXHIBIT A
Page 6 of 29**

28.

Defendants/Counterclaimants deny the allegations in paragraphs 57, 58, 59, and 60.

29.

Defendants/Counterclaimants deny any obligation to pay Plaintiff/Counterclaim-Defendant except as agreed to in the Independent Contractor Agreement, attached hereto as **Exhibit 1**.  Defendants/Counterclaimants deny, or are without sufficient knowledge to answer, the remaining allegations in paragraph 61.

30.

Each performer at Sassy's has an individual independent contract agreement, and the terms of their contract work were governed by each individual independent contractor agreement. Sassy's did not control the means or methods of how the performers completed their work.  Except as expressly admitted, Defendants/Counterclaimants deny the allegations, and do not respond to the legal conclusions, in paragraphs 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, and 79.

31.

Defendants/Counterclaimants admit they informed Plaintiff/Counterclaim-Defendant they could no longer perform at Dante's on or around July 19, 2021.  Defendants/Counterclaimants deny the remaining factual allegations, and do not respond to the legal conclusions, in Paragraph 80.

32.

Each performer at Sassy's has an individual independent contract agreement, and the terms of their contract work were governed by each individual independent contractor agreement. Sassy's did not control the means or methods of how the performers completed their work.  Except

Page 7- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
    AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

as expressly admitted, Defendants/Counterclaimants deny the allegations, and do not respond to the legal conclusions, in paragraphs 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, and 131.

33.

No response of Defendants/Counterclaimants is required to paragraph 132.

34.

Defendants/Counterclaimants admit they informed Plaintiff/Counterclaim-Defendant they could no longer perform at Dante's on or around July 19, 2021.  Defendants/Counterclaimants deny the remaining factual allegations in paragraph 133.

35.

Defendants/Counterclaimants deny the factual allegations, and do not respond to the legal conclusions, in paragraphs 134, 135, and 136.

36.

No response of Defendants/Counterclaimants is required to paragraph 137.

37.

Defendants/Counterclaimants admit they informed Plaintiff/Counterclaim-Defendant they could no longer perform at Dante's on or around July 19, 2021.  Defendants/Counterclaimants deny the remaining factual allegations in paragraph 138.

38.

Defendants/Counterclaimants deny the factual allegations, and do not respond to the legal conclusions, in paragraphs 139, 140, 141, 142, and 143.

Page 8- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 8 of 29

39.

No response of Defendants/Counterclaimants is required to paragraph 144.

40.

Defendants/Counterclaimants admit they informed Plaintiff/Counterclaim-Defendant they could no longer perform at Dante's on or around July 19, 2021. Defendants/Counterclaimants deny the remaining factual allegations in paragraph 145.

41.

Defendants/Counterclaimants deny the factual allegations, and do not respond to the legal conclusions, in paragraphs 146, 147, 148, 149, and 150.

42.

Except as expressly admitted, Defendants/Counterclaimants deny the remainder of Plaintiff/Counterclaim-Defendant's First Amended Complaint in whole thereof. By way of further answer to Plaintiff/Counterclaim-Defendant's First Amended Complaint, but without assuming Plaintiff/Counterclaim-Defendant's burden of proof, Defendants/Counterclaimants offer the following affirmative and additional defenses and counterclaims.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

43.

Plaintiff/Counterclaim-Defendant and the FLSA Collective Members fail to state a claim for which relief can be granted against Defendants/Counterclaimants.

## SECOND AFFIRMATIVE DEFENSE

### (Equitable Estoppel)

44.

Page 9- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 9 of 29

Plaintiff/Counterclaim-Defendant's claims are barred by the doctrine of equitable estoppel because Plaintiff/Counterclaim-Defendant represented that they were an independent contractor by entering into the Independent Contractor Agreement (*see* **Exhibit 1**) with the intent to initiate a civil action under the Fair Labor Standards Act for damages and penalties due to allegedly being misclassified as an independent contractor. Defendants/Counterclaimants were ignorant of Plaintiff/Counterclaim-Defendant's true intention, were induced into entering into the Independent Contractor Agreement with Plaintiff/Counterclaim-Defendant, and reasonably relied on the Independent Contractor Agreement in all commercial dealings with Plaintiff/Counterclaim-Defendant.

## THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands/Bad Faith)

45.

Plaintiff/Counterclaim-Defendant's claims and damages are barred or limited due to their unclean hands in agreeing to enter into an Independent Contractor Agreement only to initiate this civil action thereafter in an attempt to obtain damages and penalties based on their claim that they were actually an employee, not an independent contractor as they agreed to in writing.

## FOURTH AFFIRMATIVE DEFENSE

### (Good Faith/Legitimate Business Interests)

46.

Defendants/Counterclaimants' actions, with respect to the allegations contained in Plaintiff/Counterclaim-Defendant's First Amended Complaint, were undertaken in good faith and justified by legitimate business motives, purposes, and reasons with the absence of intent to injure

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

Plaintiff/Counterclaim-Defendant or the FLSA Collective Members, and constituted lawful, proper, and justified activities.

## FIFTH AFFIRMATIVE DEFENSE

### (Plaintiff/Counterclaim-Defendant's Own Conduct)

47.

Plaintiff/Counterclaim-Defendant's own deliberate, willful, and/or negligent actions proximately caused or contributed to some or all of the wage omissions alleged, as they voluntarily entered into the Independent Contractor Agreement (see **Exhibit 1**) on their own accord. To the extent, if any, that Plaintiff/Counterclaim-Defendant suffered damages, Plaintiff/Counterclaim-Defendant's own actions proximately caused such damages.

## SIXTH AFFIRMATIVE DEFENSE

### (Breach of Contract)

48.

Plaintiff/Counterclaim-Defendant entered into the Independent Contract Agreement with Defendants/Counterclaimants, the recitals of which provide in part that Plaintiff/Counterclaim-Defendant "is an independent contractor with respect to [Sassy's] and is not an employee of [Sassy's]." *See* **Exhibit 1** at 1.

49.

Plaintiff/Counterclaim-Defendant also agreed to Section 4 of the Independent Contract Agreement, which provides that Plaintiff/Counterclaim-Defendant "understands that [ ][they] will receive no compensation from [Sassy's], but may retain any tips gained as a direct result of [ ][their] performance. [Plaintiff/Counterclaim-Defendant] understands that employment benefits are not provided under the terms of this Agreement and that all costs for health care insurance,

Page 11- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309    **EXHIBIT A**
**Page 11 of 29**

worker's compensation insurance, and pension benefits will be [the] responsibility of [Plaintiff/Counterclaim-Defendant. Sassy's] shall have no responsibility for paying payroll taxes of any kind, nor of withholding any taxes for any payment or tips earned by [Plaintiff/Counterclaim-Defendant]." *See* **Exhibit 1** at 2.

50.

By entering into the Independent Contractor Agreement (see **Exhibit 1**), working as an independent contractor for Defendants/Counterclaimants, retaining the tips they earned while working as an independent contractor for Defendants/Counterclaimants, and subsequently bringing this civil action for damages and penalties under the guise that they were an employee of Defendants/Counterclaimants and not an independent contractor, Plaintiff/Counterclaim-Defendant breached the Independent Contractor Agreement.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Independent Contractor Status)**

51.

Plaintiff/Counterclaim-Defendant's First Amended Complaint and each claim for relief therein are barred because neither Plaintiff/Counterclaim-Defendant nor the FLSA Collective Members were employees of Defendants/Counterclaimants, but rather, were independent contractors at all times relevant to this action.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Laches)**

52.

Plaintiff/Counterclaim-Defendant is barred by the doctrine of laches from pursuing any of the remedies sought in their First Amended Complaint because Plaintiff/Counterclaim-Defendant,

Page 12- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon 97201
Tel: 503.221.0309

having notice of the facts constituting the basis of the alleged causes of action, nevertheless delayed institution of this lawsuit, and such delay has worked to the disadvantage and prejudice of Defendants/Counterclaimants.

## NINTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

53.

Plaintiff/Counterclaim-Defendant and the FLSA Collective Members lack standing as independent contractors and as willful deliberate participants to the contracts which they signed to bring the claims asserted in this action against Defendants/Counterclaimants.

## TENTH AFFIRMATIVE DEFENSE

### (Statutes of Limitation)

54.

The claims of Plaintiff/Counterclaim-Defendant and the FLSA Collective Members are barred by the applicable statutes of limitation.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Intentional / Negligent Spoliation)

55.

Plaintiff/Counterclaim-Defendant negligently or deliberately failed to keep records that would have definitively demonstrated that they worked only on an occasional basis and was not subject to any improper tip appropriation.  Plaintiff/Counterclaim-Defendant further did not keep proper tax records of alleged earnings that would account for their alleged hours worked.  Finally, Plaintiff/Counterclaim-Defendant is the only person that would know how much, or when, they

Page 13- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

tipped other workers at Sassy's and they either kept no such record, or did not adequately preserve that record.

## TWELFTH AFFIRMATIVE DEFENSE

### (Waiver)

56.

By Plaintiff/Counterclaim-Defendant's own acts and conduct by signing the Independent Contractor Agreement (see **Exhibit 1**), supporting their role as an independent contractor and continuing to work and perform as an independent contractor after filing this lawsuit, they have waived the rights asserted in the First Amended Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Offset)

57.

The damages allegedly sustained by Plaintiff/Counterclaim-Defendant and/or the FLSA Collective Members must be offset in whole or in part by amounts already collected by Plaintiff/Counterclaim-Defendants and/or the FLSA Collective Members and/or owing to, and damages suffered by, Defendants/Counterclaimants.

## DEFENDANTS/COUNTERCLAIMANTS COUNTERCLAIMS AGAINST PLAINTIFF/COUNTERCLAIM-DEFENDANT

### I. PARTIES

58.

Defendant/Counterclaimant Sassy's is organized and headquartered in Oregon.

///

///

Page 14- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309    **EXHIBIT A
Page 14 of 29**

59.

Defendants/Counterclaimants Mayhood, Hannigan, and Faillace are all individuals residing in Multnomah County, Oregon.

60.

Plaintiff/Counterclaim-Defendant is an individual residing in the State of Oregon.

## II. FACTUAL ALLEGATIONS

61.

Plaintiff/Counterclaim-Defendant auditioned to perform at Sassy's in 2017. Based in part on Plaintiff/Counterclaim-Defendant's skill, they won the opportunity to contract as a performer with Sassy's.

62.

On June 7, 2017, Plaintiff/Counterclaim-Defendant and Sassy's signed the Independent Contractor Agreement (the "Agreement"). *See* **Exhibit 1**.

63.

The Agreement provides that "[Plaintiff/Counterclaim-Defendant] is an independent contractor with respect to [Sassy's] and is not an employee of [Sassy's]." **Exhibit 1** at 1.

64.

The Agreement further provides that "[Plaintiff/Counterclaim-Defendant] understands that [they] will receive no compensation from [Sassy's], but may retain any tips gained as a direct result of [their] performance. . . . [Sassy's] shall have no responsibility for paying payroll taxes of any kind, nor of withholding any taxes for any payment or tips earned by [Plaintiff/Counterclaim-Defendant]." **Exhibit 1** at 2.

///

Page 15- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
           AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

**EXHIBIT A**
**Page 15 of 29**

65.

The Agreement further provides that "[Sassy's] shall have no right to control the manner and means of performance by [Plaintiff/Counterclaim-Defendant]," "[Plaintiff/Counterclaim-Defendant] shall schedule performances through an agent or other third party," and "[w]hen performing, [Plaintiff/Counterclaim-Defendant] has control over the conduct of [their] performance, subject to applicable laws and regulations." **Exhibit 1** at 1-2.

66.

Plaintiff/Counterclaim-Defendant enjoyed numerous benefits due to their independent contractor status with Sassy's, including but not limited to substantial income, freedom to choose hours, ability to drink on the job, creative control over performances, liberty to choose whether and to whom to provide private dances, the privilege of setting rates for private dances, keeping all proceeds from private dances, and lack of restrictions regarding performing at other venues.

67.

Plaintiff/Counterclaim-Defendant's first performance at Sassy's relevant to Plaintiff/Counterclaim-Defendant's First Amended Complaint for Damages was on June 29, 2018.

68.

Plaintiff/Counterclaim-Defendant's last performance with Sassy's was on March 3, 2019.

69.

On June 28, 2021, Plaintiff/Counterclaim-Defendant filed this action, alleging Defendants/Counterclaimants violated the Fair Labor Standards Act by failing to pay Plaintiff/Counterclaim-Defendant minimum wages, taking illegal kickbacks, unlawfully taking Plaintiff/Counterclaim-Defendant's tips, and forcing Plaintiff/Counterclaim-Defendant to share their tips.

Page 16- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 16 of 29

70.

After they stopped performing at Sassy's, Plaintiff/Counterclaim-Defendant contracted to perform two approximately five-minute shows at Faillace's other club, Glitz LLC, dba Dante's ("Dante's").

71.

Plaintiff/Counterclaim-Defendant refused to clarify with Faillace whether they believed they were an employee of Dante's or an independent contractor of Dante's in connection with the two brief performances they contracted with Dante's to render.

72.

Because Plaintiff/Counterclaim-Defendant refused to clarify their working status with Faillace, Faillace chose to rescind Plaintiff/Counterclaim-Defendant's contract for future performances at Dante's, communicated this to Plaintiff/Counterclaim-Defendant on July 19, 2021, and cancelled Plaintiff/Counterclaim-Defendant's next performance at Dante's scheduled for July 25, 2021.

73.

Faillace contracted with the Young Women's Christian Association ("YWCA") to run an implicit bias workshop training for workers at his clubs, including Dante's. The workshop was held on August 4, 2021.

74.

Plaintiff/Counterclaim-Defendant was the facilitator for the August 4, 2021 workshop. Faillace did not stop the training or interfere with Plaintiff/Counterclaim-Defendant' presentation in any way.

Page 17- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
            AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 17 of 29

75.

On August 24, 2021, Plaintiff/Counterclaim-Defendant filed their First Amended Complaint for Damages ("Complaint"), adding Faillace to the Complaint and alleging three causes of action against Faillace for alleged retaliation in violation of the Fair Labor Standards Act, retaliation for bringing a civil proceeding under Oregon state law, and retaliation in violation of Oregon public policy.

76.

Sometime in 2021, Plaintiff/Counterclaim-Defendant and their representatives were interviewed by a member or members of the media. Plaintiff/Counterclaim-Defendant and their representatives made false statements about Defendants/Counterclaimants in that interview.

77.

On September 10, 2021, an article was published by The Oregonian titled "Dancers sue Oregon strip clubs, alleging federal wage violations similar to gig workers." *See* **Exhibit 2** ("The Oregonian Article").

78.

In The Oregonian Article, Plaintiff/Counterclaim-Defendant told the press the following about their work at Sassy's: "There were days I walked out with absolutely nothing after I paid my fees." *See* **Exhibit 2** at 1.

79.

In The Oregonian Article, Plaintiff/Counterclaim-Defendant's counsel, speaking on Plaintiff/Counterclaim-Defendant's behalf and outside a court of law, told the press about Sassy's:

Page 18- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
      AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

"The only requirement for work is [the performers'] ability to take off their clothes and to fit certain aesthetic principles." *See* **Exhibit 2** at 1.

80.

In The Oregonian Article, Plaintiff/Counterclaim-Defendant's counsel, speaking on Plaintiff/Counterclaim-Defendant's behalf and outside a court of law, told the press that "the owner of Sassy's told Hollis in writing that the dancer was effectively blacklisted from working at his clubs for pursuing a lawsuit" and directly said: "[i]t's really egregious." *See* **Exhibit 2** at 2.

81.

On April 15, 2022, Defendants/Counterclaimants deposed Plaintiff/Counterclaim-Defendant Hollis. On April 26, 2022, Defendants/Counterclaimants received a copy of Plaintiff/Counterclaim-Defendant Hollis' deposition transcript.

### III. COUNTERCLAIMS
### COUNTERCLAIM: FIRST CAUSE OF ACTION

(Breach of Contract)

82.

Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members and Defendants/Counterclaimants entered into contractual relationships under which Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members agreed to provide entertainment services solely as independent contractors (the "Agreements").

83.

In consideration for the promises made by Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members under the Agreements, Defendants/Counterclaimants agreed

Page 19- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 19 of 29

to permit them to perform at Sassy's, to charge customers fees, and to accept from customers gratuities in exchange for providing entertainment.

84.

Defendants/Counterclaimants, at all times and in good faith, provided Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members with the benefits and opportunities that together comprised the consideration for the contractual relationship which existed between them, and Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members achieved and retained the benefits of their bargain with Defendants/Counterclaimants, including, but not limited to, substantial income, freedom to choose hours, ability to drink on the job, creative control over performances, liberty to choose whether and with whom to provide private dances, the privilege of setting rates for private dances, keeping all proceeds from private dances, and lack of restrictions on dancing at other venues.

85.

By claiming, retroactively, that they were employees and not properly compensated for the services which they promised to render as independent contractors under the terms of their Agreements, Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members have breached their Agreements with Defendants/Counterclaimants. Having received the benefits of the Agreements, Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members now seek an unjustified windfall at Defendants/Counterclaimants' expense.

86.

As a direct and proximate result of this breach, Defendants/Counterclaimants have suffered substantial and significant actual and consequential damages of at least $165,000.

Page 20- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
           AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309    **EXHIBIT A**
                      **Page 20 of 29**

## COUNTERCLAIM: SECOND CAUSE OF ACTION

(Unjust Enrichment)

87.

At all times relevant hereto, Defendants/Counterclaimants have provided to Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members the benefits and advantages of providing services as independent contractors, and Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members have enjoyed and are aware of those benefits, including the freedom, flexibility, and tax advantages of such a relationship, and additional benefits, including but not limited to, substantial income, freedom to choose hours, ability to drink on the job, creative control over performances, liberty to choose whether and with whom to provide private dances, the privilege of setting rates for private dances, keeping all proceeds from private dances, and lack of restrictions on dancing at other venues.

88.

By treating Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members as independent contractors pursuant to the Agreements, Defendants/Counterclaimants have failed to obtain and collect the revenues, including minimum private or semi-private performance fees, generated by Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members.

89.

Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members were aware of the benefits they received (see paragraph 86 for a description of the benefits) by electing to work as independent contractors rather than as employees.

90.

Page 21- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

Defendants/Counterclaimants, to their detriment, reasonably and in good faith relied on the representations and the promises of Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members pursuant to the Agreements.

91.

Defendants/Counterclaimants so relied in structuring their business relationships, in forming and executing their business plan, and in planning for, preparing, and paying their taxes, in making withholdings, and in ensuring compliance with other applicable laws.

92.

Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members knowingly and purposefully induced Defendants/Counterclaimants to rely upon their promises in this regard, with the intention that they so rely.

93.

Should Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members prevail in their First, Second, Third, and Fourth Causes of Action, they will be substantially and unjustly enriched at the expense of Defendants/Counterclaimants, who will be substantially and unjustly harmed by them.

94.

Specifically, Plaintiff/Counterclaim-Defendant testified that they earned between $80 to $400 a night while dancing on stage and up to $520 a night in separate private dance fees. Given Plaintiff/Counterclaim-Defendant's schedule with Defendants/Counterclaimants, Plaintiff/Counterclaim-Defendant most likely earned between $70,000 to $100,000 for their performances with Defendants/Counterclaimants.

///

Page 22- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
          AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309    EXHIBIT A
Page 22 of 29

95.

Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members should not be awarded an unjust windfall. Should Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members prevail on their First, Second, Third, and/or Fourth Causes of Action, Defendants/Counterclaimants will be entitled to restitution, including but not limited to, a return of all private or semi-private performance fees, or set offs against any award of wages, overtime payments, monetary benefits, or other amounts to which Plaintiff/Counterclaim-Defendant may be found to be entitled to, and/or of those fees received by Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members but not remitted to Defendants/Counterclaimants, but in any event an amount no less than $100,000.

## COUNTERCLAIM: THIRD CAUSE OF ACTION

(Defamation)

96.

Plaintiff/Counterclaim-Defendant was interviewed by a member of the media and made false statements about Defendants/Counterclaimants that have subjected Defendants/Counterclaimants to hatred, contempt, or ridicule, and has diminished their esteem, respect, and goodwill by members of the public.

97.

Plaintiff/Counterclaim-Defendant's counsel, acting on Plaintiff/Counterclaim-Defendant's behalf and as agent of Plaintiff/Counterclaim-Defendant, was interviewed by a member of the media and made false statements about Defendants/Counterclaimants outside a court of law that have subjected Defendants/Counterclaimants to hatred, contempt, or ridicule, and has diminished their esteem, respect, and goodwill by members of the public.

Page 23- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 23 of 29

98.

News outlets, including The Oregonian, published Plaintiff/Counterclaim-Defendant's defamatory statements about Defendants/Counterclaimants. *See* **Exhibit 2**.

99.

Plaintiff/Counterclaim-Defendant intentionally or recklessly made false assertions of fact about Defendants/Counterclaimants.

100.

Plaintiff/Counterclaim-Defendant knew or should have known that their statements about Defendants/Counterclaimants were false.

101.

Plaintiff/Counterclaim-Defendant's statements were made with the intent to harm Defendants/Counterclaimants.

102.

Plaintiff/Counterclaim-Defendant told the press "There were days I walked out with absolutely nothing after I paid my fees." *See* **Exhibit 2** at 1.

103.

Plaintiff/Counterclaim-Defendant's statement in paragraph 101 is false. During Plaintiff/Counterclaim-Defendant's deposition, they testified that on days they performed at Sassy's, they made "[a]nywhere between $80 and $400" in tips. Plaintiff/Counterclaim-Defendant also testified about private dance fees: "My dances were one song for $40 and three songs for $100"; and the number of private dances Plaintiff/Counterclaim-Defendant performed: "On a slow night, zero, and on a busy night, like 13." Sassy's charged stage fees ranging between $2–$10 a night. Thus, based on Plaintiff/Counterclaim-Defendant's deposition testimony, at worst the

Page 24- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

minimum amount Plaintiff/Counterclaim-Defendant took home would have been $70, which is not "absolutely nothing."

104.

Plaintiff/Counterclaim-Defendant's counsel, speaking on Plaintiff/Counterclaim-Defendant's behalf and outside a court of law, told the press "The only requirement for work is [the performers'] ability to take off their clothes and to fit certain aesthetic principles." *See* **Exhibit 2** at 1.

105.

Plaintiff/Counterclaim-Defendant's counsel's statement in paragraph 103 is false. During Plaintiff/Counterclaim-Defendant's deposition, Plaintiff/Counterclaim-Defendant testified that Sassy's "auditions are really hard," and that they were "present for multiple auditions for people who did not end up working [at Sassy's]." Plaintiff/Counterclaim-Defendant further testified that to impress at Sassy's "really hard" audition, Plaintiff/Counterclaim-Defendant climbed "the tallest pole in the building" at a height of 1.5 stories to "show off," a feat Plaintiff/Counterclaim-Defendant estimated only about 20% of performers can accomplish, but a feat about which Plaintiff/Counterclaim-Defendant said: "I think most dancers at Sassy's can do it."

106.

Based on Plaintiff/Counterclaim-Defendant's deposition testimony, Plaintiff/Counterclaim-Defendant is a talented performer. Plaintiff/Counterclaim-Defendant testified they took pole dancing lessons in 2016 and taught "a lot" of pole dancing lessons to others. Plaintiff/Counterclaim-Defendant testified they learned choreography for pole dancing by "practic[ing] on slow nights . . . anytime that the club was empty." Plaintiff/Counterclaim-Defendant testified that their pole-dancing skills improved over the course of the years they

Page 25- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
        AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309    **EXHIBIT A
Page 25 of 29**

worked at exotic dance venues. Plaintiff/Counterclaim-Defendant also competed in pole dancing competitions, which judged performance, style, and the entertainment value of the competitors' skills. Plaintiff/Counterclaim-Defendant testified that "I participated in [the] Miss Exotic Oregon [competition]," that there were five dancers left at the finals, and that "I made it to the finals."

107.

Plaintiff/Counterclaim-Defendant's counsel, speaking on Plaintiff/Counterclaim-Defendant's behalf, told the press that "the owner of Sassy's told Hollis in writing that the dancer was effectively blacklisted from working at his clubs for pursuing a lawsuit" and directly said: "It's really egregious." *See* **Exhibit 2** at 2.

108.

Plaintiff/Counterclaim-Defendant's counsel's statement in paragraph 106 is false in at least (but not limited to) the following ways: First, Plaintiff/Counterclaim-Defendant would not clarify their classification as an independent contractor or an employee to Faillace in connection with their performance at Dante's. Second, Faillace did not prevent Plaintiff/Counterclaim-Defendant from working as a facilitator for an implicit bias workshop held at Dante's on August 4, 2022.

109.

Plaintiff/Counterclaim-Defendant's false statements ascribe to Defendants/Counterclaimants conduct, characteristics, and/or a condition incompatible with the proper conduct of their lawful business, trade, or profession, and/or accuses Defendants/Counterclaimants of misconduct or dishonesty.

110.

Plaintiff/Counterclaim-Defendant's false statements are words tending to injure Defendants/Counterclaimants in their business or profession and constitute defamation per se.

Page 26- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

111.

Plaintiff/Counterclaim-Defendant's statements to the media have caused special harm to the Defendants/Counterclaimants, including the inability to obtain business that Defendants/Counterclaimants would have obtained but for Plaintiff/Counterclaim-Defendant's statements, and/or reputational damage.

112.

As a direct and proximate result of Plaintiff/Counterclaim-Defendant's false statements, Defendants/Counterclaimants have suffered substantial and significant damages, including general and special damages, in an amount no less than $500,000.

**REQUEST FOR ATTORNEYS' FEES AND COSTS**

113.

Defendants/Counterclaimants intend to seek recovery of its reasonable attorneys' fees pursuant to Section 11 of the Independent Contractor Agreement.  *See* **Exhibit 1** at 3.

**PRAYER FOR RELIEF**

WHEREFORE, having fully answered Plaintiff/Counterclaim-Defendant's First Amended Complaint with its Answer and Affirmative Defenses, Defendants/Counterclaimants pray for judgment in their favor as follows:

A.     That the Court dismiss the First Amended Complaint in its entirety with prejudice;

B.     That the Court grant Defendants/Counterclaimants their costs and disbursements herein, their reasonable attorneys' fees, and expenses pursuant to Section 11 of the Independent Contractor Agreement; and

Page 27- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
        AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

C.      That the Court, pursuant to 28 U.S.C. § 1927, require Plaintiff/Counterclaim-Defendant's counsel to satisfy the excess costs, expenses, and fees reasonably incurred because of conduct which unreasonably and vexatiously multiplied proceedings.

AND WHEREFORE DEFENDANTS/COUNTERCLAIMANTS, having fully stated their Claims against the Plaintiff/Counterclaim-Defendants as Counterclaimants, Defendants/Counterclaimants pray for judgment in their favor as follows:

A.      For restitution, including but not limited to, a return of all private or semi-private performance fees, or set offs against any award of wages, overtime payments, monetary benefits, or other amounts to which Plaintiff/Counterclaim-Defendants may be found entitled to in this action, for those fees received by Plaintiff/Counterclaim-Defendants but not remitted to Defendants/Counterclaimants;

B.      For damages, based on information and belief, anticipated as not being less than $100,000 for Defendants/Counterclaimants' Unjust Enrichment claim, $165,000 for Defendants/Counterclaimants' Breach of Contract claim, and $500,000 for Defendants/Counterclaimants' Defamation claim;

C.      For such damages as the Court determines are just and equitable;

D.      For interest;

E.      For reasonable attorney's fees and costs of suit; and

F.      For such other relief as the Court, in the exercise of its discretion, deems just.

Page 28- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309    **EXHIBIT A
Page 28 of 29**

Dated:      August 24, 2022

/s/ *Anthony Kuchulis*

Anthony D. Kuchulis
Joseph Q. Ridgeway
LITTLER MENDELSON, P.C.

Attorneys for Defendants/Counterclaimants

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

## INDEPENDENT CONTRACTOR AGREEMENT

**PARTIES**:    R&R Restaurants, Inc.               ("Company")
                 dba Sassy's Bar & Grill
                 an Oregon corporation
                 927 SE Morrison St.
                 Portland, OR 97214

Name     *Zoë Corrin Reinhard-Hollis*     ("Independent Contractor")
Alias       *Honey DuBois*
Address   *SE Flavel St*
              *PDX*

## RECITALS:

      The Company is engaged in the business of selling food and beverages for on-site consumption, and of selling stage time to Independent Contractors to enable their performance in providing entertainment to patrons. The Company desires to contract and retain the unique experience and abilities of Independent Contractor as a dancer/stage performer. Independent Contractor is an independent contractor with respect to R&R Restaurants, Inc. dba Sassy's Bar & Grill ("R&R"), and is not an employee of the Company.

## AGREEMENT:

      The parties agree as follows:

**Section 1.**   **THE COMPANY**

      The term "the Company" shall include R&R, all of its affiliated corporations, organizations or entities, its predecessors, successors, parent or subsidiary corporations or organizations, current or former directors, commissioners, board members, officers, employees, insurers, attorneys, agents, representatives or assigns.

**Section 2.**   **RELATIONSHIP BETWEEN THE PARTIES**

    **2.1**    The parties intend that a relationship between Independent Contractor and the Company will be created by this Agreement. Independent Contractor is not to be considered a partner or employee of the Company for any purpose. It is understood that the Company does not agree to use Independent Contractor exclusively. It is further understood that Independent Contractor is free to contract for similar (or different) services to be performed for others while under contract with the Company.

    **2.2**    Company shall have no right to control the manner and means of performance by Independent Contractor. Independent Contractor shall schedule performances through an agent or other third party. When performing, Independent

1

**EXHIBIT 1 TO EXHIBIT A**
**Page 1 of 4**

Contractor has control over the conduct of his/her performance, subject to applicable laws and regulations.

## Section 3.    INDEPENDENT CONTRACTOR

**3.1    Term.** The Company agrees to establish an Independent Contractor relationship commencing on April 1ˢᵗ 2007 and continuing until termination in accordance with Section 7.

**3.2    Duties.** Independent Contractor accepts a relationship with the Company on the terms and conditions set forth in this Agreement.

As part of his/her work, Independent Contractor may:

- Use any stage within Company's facility that is designated for the purpose of performance, with payment of stage fee and at times scheduled by Independent Contractor, Independent Contractor's agent, or by a third party designated by Independent Contractor;
- Perform in accordance with the laws of the State of Oregon; and
- Provide any necessary licensure or other documentation necessary for performance as an Independent Contractor under this Agreement.

## Section 4.    COMPENSATION

Independent Contractor understands that he/she will receive no compensation from Company, but may retain any tips gained as a direct result of his/her performance. Independent Contractor understands that employment benefits are not provided under the terms of this Agreement and that all costs for health care insurance, worker's compensation insurance, and pension benefits will be responsibility of Independent Contractor. Company shall have no responsibility for paying payroll taxes of any kind, nor of withholding any taxes for any payment or tips earned by Independent Contractor.

## Section 5.    EXPENSES

Independent Contractor shall not be entitled to reimbursement from the Company for expenses necessarily incurred by Independent Contractor in the performance of Independent Contractor's duties under this Agreement. Independent Contractor is responsible for providing all necessary tools and equipment used in his/her performance. Independent Contractor shall pay pre-determined stage fees as consideration for Company permitting the use of its performance stages.

## Section 6.    EMPLOYMENT OF ASSISTANTS

Independent Contractor may, at Independent Contractor's own expense, employ such assistants as Independent Contractor deems necessary to perform the services permitted by the Company under this Agreement. The Company will not control, direct

2

**EXHIBIT 1 TO EXHIBIT A**
**Page 2 of 4**

or supervise Independent Contractor's assistants or employees in the performance of their services and accordingly, Independent Contractor agrees to provide worker's compensation insurance for Independent Contractor and Independent Contractor's employees and agents and agrees to hold harmless and indemnify the Company for any and all claims out of injury, disability, or death of Independent Contractor or Independent Contractor's employees or agents.

### Section 7.    LIABILITY INSURANCE

Independent Contractor agrees to maintain liability insurance policies to cover any negligent act or acts committed by Independent Contractor or Independent Contractor's employees or agents during the performance of any duties of this Agreement. Further, Independent Contractor agrees to hold the Company free and harmless of any and all claims arising from any such negligent acts or omissions.

### Section 8.    FACILITIES

Independent Contractor shall be provided such facilities and cooperation at the Company's place of business that Independent Contractor requests and that are necessary for the performance of Independent Contractor's duties under this Agreement.

### Section 9.    TERMINATION OF AGREEMENT

Either the Company or Independent Contractor may terminate the Independent Contractor Agreement for any reason. The Company shall have the right to terminate the Independent Contractor Agreement at will, at any time, without notice and without payment of compensation in lieu of notice.

### Section 10.    REPRESENTATIONS AND WARRANTIES

Independent Contractor represents and warrants to the Company that Independent Contractor is fully licensed as required by law to enter into this Agreement.

### Section 11.    GOVERNING LAW; ATTORNEY FEES

The jurisdiction for the resolution of any disputes under this Agreement shall be the State of Oregon. Venue shall be in Multnomah County. This Agreement shall be governed and construed in accordance with the laws of the State of Oregon. In the event this Agreement results in any sort of litigation between the undersigned parties or their representative (s), the prevailing party as determined by the Court shall be awarded its reasonable costs and attorney fees at trial and appeal.

### Section 12.    WAIVER; ENTIRE AGREEMENT; MODIFICATION

No waiver of any breach of any covenant or provision contained here shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision herein contained. This Agreement sets forth the entire understanding of the

3

EXHIBIT 1 TO EXHIBIT A
Page 3 of 4

parties. This Agreement supersedes any and all prior negotiation, discussions, agreements and understandings between the parties. This Agreement may not be modified or amended except by a written agreement executed by both parties. If any provision of this Agreement is deemed to be unenforceable for any reason, the remaining provisions shall be construed as if the unenforceable provision did not exist.

**Section 13.   ASSIGNMENT**

Independent Contractor may not assign this Agreement nor duties or obligations under this Agreement.

**Section 14.   INDEMNIFICATION**

Independent Contractor agrees to indemnify and hold the Company harmless from all claims, losses, expenses, fees including attorney fees, cost, and judgments that may be asserted against the Company that results from the acts or omissions of Independent Contractor, Independent Contractor's employees, if any, and Independent Contractor's agents.

**Section 15.   SEVERABILITY**

If any part of this Agreement is held to be unenforceable, the rest of this Agreement shall nevertheless remain in full force and effect.

**EACH OF THE UNDERSIGNED STATES THAT HE OR SHE HAS BEEN ADVISED TO CONSULT INDEPENDENT LEGAL COUNSEL AND HAS CAREFULLY READ THIS AGREEMENT IN ITS ENTIRETY, THAT NO PROMISE, INDUCEMENT OR UNDERSTANDING NOT HEREIN EXPRESSED HAS BEEN MADE TO THE UNDERSIGNED, AND THAT THE UNDERSIGNED VOLUNTARILY AND KNOWINGLY ACCEPTS THE AGREEMENT'S TERMS AND CONDITIONS HEREIN.**

6-7-17
Date

Independent Contractor

6-7-17
Date

Stacy Mayhood
President, R&R Restaurants, Inc.
dba Sassy's Bar & Grill

4

**EXHIBIT 1 TO EXHIBIT A**
**Page 4 of 4**

## Dancers sue Oregon strip clubs, alleging federal wage violations similar to gig workers

oregonlive.com/portland/2021/09/dancers-sue-oregon-strip-clubs-alleging-federal-wage-violations-similar-to-gig-workers.html

By Noelle Crombie | The Oregonian/OregonLive                                    September 10, 2021



For Cat Hollis, working at a Portland strip club meant first paying the boss.

Hollis would pay $5 for each eight-hour shift.

Before heading home, Hollis would make another round of payments from the night's tips, handing out at least $20 apiece to an assortment of other people employed by the club.

"There were days I walked out with absolutely nothing after I paid my fees," Hollis said.

Now Hollis and three other dancers are suing six clubs in Oregon, a place known for its surfeit of adult entertainment thanks to the state Constitution's strong free speech protections.

The dancers' lawsuits allege the establishments violated mandatory minimum wage provisions of the federal Fair Labor Standards Act.

Filed in U.S. District Court in Portland and Eugene, the claims accuse the clubs of "absconding" with the dancers' tips and demanding "illegal kickbacks" in the form of house fees that dancers said they pay to work.

They allege they are treated as independent workers through their compensation arrangements even though the clubs require them to act as employees by setting their work hours and working conditions down to the music.

The question of whether a worker is an employee or an independent contractor is "one of the hottest issues in all of American employment law," said Keith Cunningham-Parmeter, a professor at Willamette University College of Law and an expert in labor law.

The stakes are high for companies like strip clubs. Employees are expensive, Cunningham-Parmeter said. They must be paid minimum wage and overtime. They earn unemployment insurance benefits. They are entitled to a "whole basket" of employment rights, he said.

And yet one study found up to 30 percent of employers misclassify their workers as independent contractors when they are in fact employees, he said.

He said gig workers like those at Lyft and Grub Hub represent the latest examples of the ongoing debate.

"I know thousands of exotic dancers have argued that they are in fact employees and that they mostly seem to have very good cases," he said. "The central question is how much freedom does the worker have versus how much control does the employer have over the worker."

### 'SHINE A LIGHT ON THIS INDUSTRY'

Amanda Marshall, one of the lawyers representing the dancers, said the claims seek to shine a light on the industry.

"It's not an attempt to shut the industry down," she said. "This is an attempt to make sure the industry is fair and equitable."

Dancers don't "fit the traditional definition of an independent contractor," said Marshall, who practices in Portland and McMinnville.

"The only requirement for work is their ability to take off their clothes and to fit certain aesthetic principles," she said.

Hollis' suit names Sassy's on Southeast Morrison Street. The other dancers are suing Sugar Shack in Salem, Club Sinrock on Northeast Glisan Street, Cabaret II on Southeast Stark Street and two Lane County clubs, Sweet Illusions and Silver Dollar.

In court filings, Anthony Kuchulis, a lawyer for Sassy's, its owner and managers denied Hollis' claims and characterized their performances at the club as "occasional and infrequent."

**EXHIBIT 2 TO EXHIBIT A**
**Page 1 of 2**

Kuchulis, who represents Silver Dollar as well, said the claims seek to strip dancers of "the right to contract." Every other type of stage performer has that right, he said.

"We are working hard to resolve these claims and want what's best for the workers and local small businesses," he said in an emailed statement.

Likewise, lawyers for Cabaret II alleged dancers at the club are independent contractors. An email to the lawyer for Sinrock was not returned. Sugar Shack and Sweet Illusions have not filed a legal response to the claims and their owners could not be reached for comment.

**DANCER ALLEGES RETALIATION**

Nationally, dancers have pushed back on being treated as independent contractors, said John Kristensen, a Los Angeles-based lawyer who is also representing the performers.

In recent years, he said, dozens of federal court judges, from Alaska to Georgia, have ruled in dancers' favor on wage claims like the ones filed in Oregon.

Kristensen pointed to a 2019 ruling out of Georgia, where a federal judge called the idea that strippers rent floor space at clubs "absurd" and a "silly attempt to redefine reality."

He said unwritten rules for handing out a portion of dancers' tips to other workers are common and that such demands end up subsidizing those workers' pay.

"There are some clubs I have seen where the other employees aren't even on payroll," he said. "They make their entire income on tips from the dancers."

Hollis' claim includes allegations of retaliation. Kristensen said the owner of Sassy's told Hollis in writing that the dancer was effectively blacklisted from working at his clubs for pursuing a lawsuit.

"It's really egregious," he said. "You can't retaliate in the United States of America against someone who is standing up for their wages."

In response, Kuchulis called Hollis' claim of retaliation "especially troubling" because Hollis sought to work as a contract performer at Dante's while suing Sassy's over allegedly being treated as a contract worker. Both are owned by Frank Faillace.

**FROM DANCING TO ACTIVISM**

Hollis said they quit Sassy's in 2019 after a dispute with a manager over an encounter Hollis had with a customer.

Hollis works from home these days, mostly for an online sex business. Hollis uses they and them pronouns.

Now 32, Hollis started dancing when they were in their mid-20s in Minnesota. They were drawn by the money-making potential and ended up moving to Oregon for its strip clubs as much as its legal cannabis.

During the pandemic, Hollis started a workers' rights advocacy group called Haymarket Pole Collective.

Stripping is a high turnover business that's tough on the body, as well as the ego, Hollis said.

Hollis hopes their lawsuit empowers other dancers to speak up in an industry that can be exploitative and even abuse, they said.

"My goal," Hollis said, "is to be the last generation of people who have to deal with this."

-- Noelle Crombie; ncrombie@oregonian.com; 503-276-7184; @noellecrombie

**EXHIBIT 2 TO EXHIBIT A**
**Page 2 of 2**