Anthony D. Kuchulis, OSB No. 083891
akuchulis@littler.com
Joseph Q. Ridgeway, OSB No. 213011
jridgeway@littler.com
LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Telephone:    503.221.0309
Fax No.:       503.242.2457

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ZOE HOLLIS individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>    vs.<br><br>R & R RESTAURANTS, INC dba SASSY'S, an Oregon corporation; STACY MAYHOOD, an individual; IAN HANNIGAN, an individual; FRANK FAILLACE, an individual; and DOES 2 through 10, inclusive,<br><br>              Defendants. | Case No.: 3:21-cv-00965-YY<br><br>DECLARATION OF ANTHONY KUCHULIS IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIMS |

I, Anthony Kuchulis, do hereby swear, affirm, and attest as follows:

1.      I am an attorney with the law firm Littler Mendelson, P.C. and counsel for Defendants R & R Restaurants, Inc. dba Sassy's ("Sassy's"), Stacy Mayhood, Ian Hannigan, and Frank Faillace (collectively, "Defendants"), in the above-captioned matter. I am over eighteen years of age; I have personal knowledge of the facts set forth in this declaration and am competent

Page 1 – DECLARATION OF ANTHONY KUCHULIS IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

to testify to them if called upon to do so.  I respectfully submit this declaration in support of Defendant's Motion for Leave to File First Amended Answer and Counterclaims.

2.        Attached as **Exhibit A** is a true and correct copy of Defendants' proposed First Amended Answer and Counterclaims.

3.        Attached as **Exhibit B** is a true and correct copy of the Independent Contractor Agreement executed on June 7, 2017 between Plaintiff Zoe Hollis and Defendant Sassy's.

4.        Attached as **Exhibit C** is a true and correct copy of relevant portions of the transcript of the deposition of Plaintiff Zoe Hollis taken on April 15, 2022.

5.        Attached as **Exhibit D** is a true and correct copy of Defendant R&R Restaurants, Inc's Objections and Responses to Plaintiff's First Set of Interrogatories.

6.        Attached as **Exhibit E** is a true and correct copy of Plaintiff Zoe Hollis' Responses to Defendants' Requests for Admission, Set One, served on Defendants on February 28, 2022.

7.        Attached as **Exhibit F** is a true and correct copy of Plaintiff Zoe Hollis' Verified Supplemental Responses to Defendants' Interrogatories, Set One, served on Defendants on April 11, 2022.

8.        Attached as **Exhibit G** is a true and correct copy of Plaintiff Zoe Hollis' Supplemental Responses to Defendants' Requests for Production, Set One, served on Defendants on April 11, 2022.

9.        Attached as **Exhibit H** is a true and correct copy of The Oregonian's article published on September 10, 2021 titled "Dancers sue Oregon strip clubs, alleging federal wage violations similar to gig workers."

10.       Attached as **Exhibit I** is a copy of Defendants' counsel's emails to Plaintiff's counsel on June 17, 2022 and July 26, 2022 requesting to meet and confer regarding Defendant's

Page 2 – DECLARATION OF ANTHONY KUCHULIS IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

counsel's intention to amend their answer and counterclaim, with the draft amended answer attached.

11.     Discovery in this matter began after Defendants filed their Answer and is ongoing.

12.     On April 15, 2022, Defendants deposed Plaintiff Hollis. On April 26, 2022, Defendants received a copy of the deposition transcript and reviewed it during the month of May.

13.     Plaintiff Zoe Hollis ("Hollis") worked 138 shifts at Sassy's, earning between $80 to $920 a night minus minimal stage fees. Therefore, Plaintiff most likely earned between $70,000 to $100,000 performing at Sassy's dating back three years prior to the filing of this action.

14.     Defendants were not aware of Plaintiff's large income they earned from Sassy's before their deposition, because Plaintiff failed to respond adequately to Defendants' discovery requests.

15.     Defendants notified Plaintiff of their intention to file this Motion on June 17, 2022, but because briefing for Defendants Motion for Summary Judgment (ECF No. 42) was ongoing at the time and Plaintiff was busy preparing their response, Defendants delayed filing this Motion. Defendants again notified Plaintiff of their intention to file this Motion on July 26, 2022.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on August 24, 2022, at Portland, Oregon.


                                        /s/ Anthony Kuchulis
                                        Anthony Kuchulis

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR 97201
Tel: 503.221.0309

## <u>CERTIFICATE OF SERVICE</u>

I herby certify that on August 24, 2022, I served the foregoing DECLARATION OF

ANTHONY KUCHULIS IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO FILE

FIRST AMENDED ANSWER AND COUNTERCLAIMS on the following parties:

> S. Amanda Marshall
> S. AMANDA MARSHALL, LLC
> 1318 NW Northrup Street
> Portland, OR 97209
> Phone: (503) 472-7190
> amanda@maclaw.law
>
> John Kristensen
> CARPENTER & ZUCKERMAN
> 8827 W. Olympic Blvd.
> Beverly Hills, CA 90211
> Phone: (310) 507-7924
> kristensen@cz.law
>
> Attorneys for Plaintiff

by the following indicated method(s) set forth below:

☑    **Electronic Filing using the Court's ECF System**

☑    **Email**

☐    **Hand Delivery**

☑    **First-class mail, postage prepaid**

By:    */s/ Victoria Minnieweather*
                Victoria Minnieweather

LITTLER MENDELSON, PC
1300 SW 5th Avenue, Suite 2050
Portland, OR  97201
Tel: 503.221.0309

Anthony D. Kuchulis, Bar No. 083891
akuchulis@littler.com
Joseph Q. Ridgeway, Bar No. 213011
jridgeway@littler.com
LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Telephone:    503.221.0309
Fax No.:        503.242.2457

Attorneys for Defendants/Counterclaimants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ZOE HOLLIS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>R & R RESTAURANTS, INC dba SASSY'S, an Oregon corporation, STACY MAYHOOD, an individual; IAN HANNIGAN, an individual; FRANK FAILLACE, an individual; and DOES 2 through 10, inclusive,<br><br>    Defendants. | Case No. 3:21-cv-00965-YY<br><br>PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST AMENDED ANSWER AND COUNTERCLAIMS |

Defendants/Counterclaimants R & R Restaurants, Inc. d/b/a Sassy's ("Sassy's"), Stacy Mayhood ("Mayhood"), Ian Hannigan ("Hannigan"), and Frank Faillace ("Faillace") (collectively, "Defendants/Counterclaimants"), submit the following First Amended Answer and Counterclaims in response to Plaintiff/Counterclaim-Defendant's First Amended Complaint for Damages:

Page 1- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 1 of 29

1.

The allegations in paragraph 1 are legal conclusions, which require no response.

2.

Defendants/Counterclaimants admit that Plaintiff/Counterclaim-Defendant contracted with and occasionally performed at Sassy's, located at 927 SE Morrison Street, Portland, Oregon 97214 in 2018 and 2019. Except as admitted, Defendants/Counterclaimants deny the allegations in paragraphs 2 and 3.

3.

Plaintiff/Counterclaim-Defendant's contract work as a performing artist is not within the scope of the laws cited in paragraphs 4, 5, 6, or 7 and on that basis, Defendants/Counterclaimants deny the same.

4.

Defendants/Counterclaimants admit that Plaintiff/Counterclaim-Defendant was an individual adult resident of the State of Oregon and that they worked as an independent contractor when performing occasionally at Sassy's. The remaining allegations contained in paragraph 8 are legal conclusions, which require no response.

5.

Defendants/Counterclaimants admit that Sassy's is located at 927 SE Morrison Street, Portland, Oregon, 97214. The remaining allegations contained in paragraph 9 are legal conclusions, which require no response.

6.

The allegations contained in paragraph 10 are legal conclusions, which require no response.

Page 2- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
        AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309     **EXHIBIT A**
                      **Page 2 of 29**

7.

Defendants/Counterclaimants admit that Mayhood assists with managing the bar and facilities at Sassy's and has an ownership interest in the same. Mayhood's job duties are consistent with those of any manager of a live entertainment venue. Neither Mayhood, nor any other Defendant/Counterclaimant or agent of any other Defendant/Counterclaimant, controlled the manner or means of Plaintiff/Counterclaim-Defendant, or any other performers', contract work. Except as expressly admitted, Defendants/Counterclaimants deny the allegations in paragraphs 11 and 12.

8.

Defendants/Counterclaimants admit that Hannigan assists with managing the bar and facilities at Sassy's and has an ownership interest in the same. Hannigan's job duties are consistent with those of any manager of a live entertainment venue. Neither Hannigan, nor any other Defendant/Counterclaimant or agent of any other Defendant/Counterclaimant, controlled the manner or means of Plaintiff/Counterclaim-Defendant, or any other performers', contract work. Except as expressly admitted, Defendants/Counterclaimants deny the allegations in paragraphs 13 and 14.

9.

Defendants/Counterclaimants admit that Faillace assists with managing the bar and facilities at Sassy's and has an ownership interest in the same. Faillace's job duties are consistent with those of any manager of a live entertainment venue. Neither Faillace, nor any other Defendant/Counterclaimant or agent of any other Defendant/Counterclaimant, controlled the manner or means of Plaintiff/Counterclaim-Defendant, or any other performers', contract work.

Page 3- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon 97201
Tel: 503.221.0309

**EXHIBIT A
Page 3 of 29**

Except as expressly admitted, Defendants/Counterclaimants deny the allegations in paragraphs 15 and 16.

10.

To the extent that the allegation against "DOES 2-10" in paragraphs 17 and 18 is legally permissible, then Defendants/Counterclaimants deny any allegations of unspecified improper conduct by unidentified Defendants/Counterclaimants.

11.

The allegations in paragraphs 19 and 20 are legal conclusions, which require no response.

12.

Defendants/Counterclaimants admit that during the relevant time period, all performers at Sassy's worked as independent contractors pursuant to express arm's-length agreements negotiated between each relevant party regarding the same. Defendants/Counterclaimants deny any factual allegations, and do not respond to legal conclusions, in paragraphs 21, 22, 23, 24, and 25.

13.

Defendants/Counterclaimants admit the allegations in paragraphs 26, 27, 28, and 29.

14.

The allegation in paragraph 30 is a legal conclusion, which requires no response.

15.

Defendants/Counterclaimants admit that during the relevant time period, all performers at Sassy's worked as independent contractors pursuant to express arm's-length agreements negotiated between each party regarding the same. Except as expressly admitted,

Page 4- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
   AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

Defendants/Counterclaimants deny any other factual allegations, and do not respond to legal conclusions, in paragraph 31.

16.

Defendants/Counterclaimants deny the allegations in paragraph 32.

17.

As to paragraph 33, Defendants/Counterclaimants admit that during the relevant time period, Plaintiff/Counterclaim-Defendant occasionally performed at Sassy's.

18.

Plaintiff/Counterclaim-Defendant's work duties are outlined in their Independent Contractor Agreement, attached hereto as **Exhibit 1**, the terms of which speak for themselves. Plaintiff/Counterclaim-Defendant's performances at Sassy's were occasional and infrequent. Except as expressly admitted, Defendants/Counterclaimants deny the remaining allegations and subjective abstract descriptions of Plaintiff/Counterclaim-Defendant's work in paragraphs 34, 35, 36, and 37.

19.

Defendants/Counterclaimants did not exercise control over the manner or means of its independent contractors' work, including Plaintiff/Counterclaim-Defendant's work, and therefore deny all contrary allegations in paragraphs 38, 39, 40, 41, 42, 43, 44, and 45.

20.

As to the allegations in paragraph 46, Plaintiff/Counterclaim-Defendant's compensation was set pursuant to their Independent Contractor Agreement, attached hereto as **Exhibit 1**, the terms of which speak for themselves.

Page 5- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
    AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309    **EXHIBIT A
Page 5 of 29**

21.

Defendants/Counterclaimants deny the allegations in paragraph 47.

22.

Defendants/Counterclaimants deny any factual allegations, and do not respond to the legal conclusions, in paragraph 48.

23.

Defendants/Counterclaimants deny the allegation in paragraph 49.

24.

Defendants/Counterclaimants admit they assumed all the reasonable and necessary aspects of operating a live entertainment venue featuring live performances from artists, including advertising, maintenance, infrastructure, and ensuring a safe and secure experience for its performers and customers.  Except as admitted, Defendants/Counterclaimants deny the allegations in paragraphs 50, 51, and 52.

25.

Defendants/Counterclaimants deny the allegation in paragraph 53.

26.

With respect to the allegations in paragraphs 54 and 55, Defendants/Counterclaimants admit that Sassy's is a live entertainment venue.  Other abstract and subjective characterizations of Defendants/Counterclaimants' business model are matters of opinion that can neither be admitted nor denied.

27.

With respect to paragraph 56, Defendants/Counterclaimants admit that, as is consistent with other live performance venues, performers are not always required to have managerial skills.

Page 6- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
        AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 6 of 29

28.

Defendants/Counterclaimants deny the allegations in paragraphs 57, 58, 59, and 60.

29.

Defendants/Counterclaimants deny any obligation to pay Plaintiff/Counterclaim-Defendant except as agreed to in the Independent Contractor Agreement, attached hereto as **Exhibit 1**. Defendants/Counterclaimants deny, or are without sufficient knowledge to answer, the remaining allegations in paragraph 61.

30.

Each performer at Sassy's has an individual independent contract agreement, and the terms of their contract work were governed by each individual independent contractor agreement. Sassy's did not control the means or methods of how the performers completed their work. Except as expressly admitted, Defendants/Counterclaimants deny the allegations, and do not respond to the legal conclusions, in paragraphs 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, and 79.

31.

Defendants/Counterclaimants admit they informed Plaintiff/Counterclaim-Defendant they could no longer perform at Dante's on or around July 19, 2021. Defendants/Counterclaimants deny the remaining factual allegations, and do not respond to the legal conclusions, in Paragraph 80.

32.

Each performer at Sassy's has an individual independent contract agreement, and the terms of their contract work were governed by each individual independent contractor agreement. Sassy's did not control the means or methods of how the performers completed their work. Except

Page 7- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
            AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon 97201
Tel: 503.221.0309

EXHIBIT A
Page 7 of 29

as expressly admitted, Defendants/Counterclaimants deny the allegations, and do not respond to the legal conclusions, in paragraphs 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, and 131.

33.

No response of Defendants/Counterclaimants is required to paragraph 132.

34.

Defendants/Counterclaimants admit they informed Plaintiff/Counterclaim-Defendant they could no longer perform at Dante's on or around July 19, 2021.  Defendants/Counterclaimants deny the remaining factual allegations in paragraph 133.

35.

Defendants/Counterclaimants deny the factual allegations, and do not respond to the legal conclusions, in paragraphs 134, 135, and 136.

36.

No response of Defendants/Counterclaimants is required to paragraph 137.

37.

Defendants/Counterclaimants admit they informed Plaintiff/Counterclaim-Defendant they could no longer perform at Dante's on or around July 19, 2021.  Defendants/Counterclaimants deny the remaining factual allegations in paragraph 138.

38.

Defendants/Counterclaimants deny the factual allegations, and do not respond to the legal conclusions, in paragraphs 139, 140, 141, 142, and 143.

Page 8- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
       AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

39.

No response of Defendants/Counterclaimants is required to paragraph 144.

40.

Defendants/Counterclaimants admit they informed Plaintiff/Counterclaim-Defendant they could no longer perform at Dante's on or around July 19, 2021.  Defendants/Counterclaimants deny the remaining factual allegations in paragraph 145.

41.

Defendants/Counterclaimants deny the factual allegations, and do not respond to the legal conclusions, in paragraphs 146, 147, 148, 149, and 150.

42.

Except as expressly admitted, Defendants/Counterclaimants deny the remainder of Plaintiff/Counterclaim-Defendant's First Amended Complaint in whole thereof.  By way of further answer to Plaintiff/Counterclaim-Defendant's First Amended Complaint, but without assuming Plaintiff/Counterclaim-Defendant's burden of proof, Defendants/Counterclaimants offer the following affirmative and additional defenses and counterclaims.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

43.

Plaintiff/Counterclaim-Defendant and the FLSA Collective Members fail to state a claim for which relief can be granted against Defendants/Counterclaimants.

## SECOND AFFIRMATIVE DEFENSE

### (Equitable Estoppel)

44.

Page 9- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
        AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309    EXHIBIT A
Page 9 of 29

Plaintiff/Counterclaim-Defendant's claims are barred by the doctrine of equitable estoppel because Plaintiff/Counterclaim-Defendant represented that they were an independent contractor by entering into the Independent Contractor Agreement (*see* **Exhibit 1**) with the intent to initiate a civil action under the Fair Labor Standards Act for damages and penalties due to allegedly being misclassified as an independent contractor. Defendants/Counterclaimants were ignorant of Plaintiff/Counterclaim-Defendant's true intention, were induced into entering into the Independent Contractor Agreement with Plaintiff/Counterclaim-Defendant, and reasonably relied on the Independent Contractor Agreement in all commercial dealings with Plaintiff/Counterclaim-Defendant.

## THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands/Bad Faith)

45.

Plaintiff/Counterclaim-Defendant's claims and damages are barred or limited due to their unclean hands in agreeing to enter into an Independent Contractor Agreement only to initiate this civil action thereafter in an attempt to obtain damages and penalties based on their claim that they were actually an employee, not an independent contractor as they agreed to in writing.

## FOURTH AFFIRMATIVE DEFENSE

### (Good Faith/Legitimate Business Interests)

46.

Defendants/Counterclaimants' actions, with respect to the allegations contained in Plaintiff/Counterclaim-Defendant's First Amended Complaint, were undertaken in good faith and justified by legitimate business motives, purposes, and reasons with the absence of intent to injure

Page 10- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon 97201
Tel: 503.221.0309

Plaintiff/Counterclaim-Defendant or the FLSA Collective Members, and constituted lawful, proper, and justified activities.

## FIFTH AFFIRMATIVE DEFENSE

### (Plaintiff/Counterclaim-Defendant's Own Conduct)

47.

Plaintiff/Counterclaim-Defendant's own deliberate, willful, and/or negligent actions proximately caused or contributed to some or all of the wage omissions alleged, as they voluntarily entered into the Independent Contractor Agreement (see **Exhibit 1**) on their own accord. To the extent, if any, that Plaintiff/Counterclaim-Defendant suffered damages, Plaintiff/Counterclaim-Defendant's own actions proximately caused such damages.

## SIXTH AFFIRMATIVE DEFENSE

### (Breach of Contract)

48.

Plaintiff/Counterclaim-Defendant entered into the Independent Contract Agreement with Defendants/Counterclaimants, the recitals of which provide in part that Plaintiff/Counterclaim-Defendant "is an independent contractor with respect to [Sassy's] and is not an employee of [Sassy's]." *See* **Exhibit 1** at 1.

49.

Plaintiff/Counterclaim-Defendant also agreed to Section 4 of the Independent Contract Agreement, which provides that Plaintiff/Counterclaim-Defendant "understands that [ ][they] will receive no compensation from [Sassy's], but may retain any tips gained as a direct result of [ ][their] performance. [Plaintiff/Counterclaim-Defendant] understands that employment benefits are not provided under the terms of this Agreement and that all costs for health care insurance,

Page 11- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
    AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

worker's compensation insurance, and pension benefits will be [the] responsibility of [Plaintiff/Counterclaim-Defendant. Sassy's] shall have no responsibility for paying payroll taxes of any kind, nor of withholding any taxes for any payment or tips earned by [Plaintiff/Counterclaim-Defendant]." *See* **Exhibit 1** at 2.

50.

By entering into the Independent Contractor Agreement (see **Exhibit 1**), working as an independent contractor for Defendants/Counterclaimants, retaining the tips they earned while working as an independent contractor for Defendants/Counterclaimants, and subsequently bringing this civil action for damages and penalties under the guise that they were an employee of Defendants/Counterclaimants and not an independent contractor, Plaintiff/Counterclaim-Defendant breached the Independent Contractor Agreement.

## SEVENTH AFFIRMATIVE DEFENSE

### (Independent Contractor Status)

51.

Plaintiff/Counterclaim-Defendant's First Amended Complaint and each claim for relief therein are barred because neither Plaintiff/Counterclaim-Defendant nor the FLSA Collective Members were employees of Defendants/Counterclaimants, but rather, were independent contractors at all times relevant to this action.

## EIGHTH AFFIRMATIVE DEFENSE

### (Laches)

52.

Plaintiff/Counterclaim-Defendant is barred by the doctrine of laches from pursuing any of the remedies sought in their First Amended Complaint because Plaintiff/Counterclaim-Defendant,

Page 12- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
            AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

having notice of the facts constituting the basis of the alleged causes of action, nevertheless delayed institution of this lawsuit, and such delay has worked to the disadvantage and prejudice of Defendants/Counterclaimants.

## NINTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

53.

Plaintiff/Counterclaim-Defendant and the FLSA Collective Members lack standing as independent contractors and as willful deliberate participants to the contracts which they signed to bring the claims asserted in this action against Defendants/Counterclaimants.

## TENTH AFFIRMATIVE DEFENSE

### (Statutes of Limitation)

54.

The claims of Plaintiff/Counterclaim-Defendant and the FLSA Collective Members are barred by the applicable statutes of limitation.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Intentional / Negligent Spoliation)

55.

Plaintiff/Counterclaim-Defendant negligently or deliberately failed to keep records that would have definitively demonstrated that they worked only on an occasional basis and was not subject to any improper tip appropriation. Plaintiff/Counterclaim-Defendant further did not keep proper tax records of alleged earnings that would account for their alleged hours worked. Finally, Plaintiff/Counterclaim-Defendant is the only person that would know how much, or when, they

Page 13- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

tipped other workers at Sassy's and they either kept no such record, or did not adequately preserve that record.

## TWELFTH AFFIRMATIVE DEFENSE

## (Waiver)

56.

By Plaintiff/Counterclaim-Defendant's own acts and conduct by signing the Independent Contractor Agreement (see **Exhibit 1**), supporting their role as an independent contractor and continuing to work and perform as an independent contractor after filing this lawsuit, they have waived the rights asserted in the First Amended Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

## (Offset)

57.

The damages allegedly sustained by Plaintiff/Counterclaim-Defendant and/or the FLSA Collective Members must be offset in whole or in part by amounts already collected by Plaintiff/Counterclaim-Defendants and/or the FLSA Collective Members and/or owing to, and damages suffered by, Defendants/Counterclaimants.

## DEFENDANTS/COUNTERCLAIMANTS COUNTERCLAIMS AGAINST PLAINTIFF/COUNTERCLAIM-DEFENDANT

## I. PARTIES

58.

Defendant/Counterclaimant Sassy's is organized and headquartered in Oregon.

///

///

Page 14- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

**EXHIBIT A**
**Page 14 of 29**

59.

Defendants/Counterclaimants Mayhood, Hannigan, and Faillace are all individuals residing in Multnomah County, Oregon.

60.

Plaintiff/Counterclaim-Defendant is an individual residing in the State of Oregon.

## II. FACTUAL ALLEGATIONS

61.

Plaintiff/Counterclaim-Defendant auditioned to perform at Sassy's in 2017. Based in part on Plaintiff/Counterclaim-Defendant's skill, they won the opportunity to contract as a performer with Sassy's.

62.

On June 7, 2017, Plaintiff/Counterclaim-Defendant and Sassy's signed the Independent Contractor Agreement (the "Agreement"). *See* **Exhibit 1**.

63.

The Agreement provides that "[Plaintiff/Counterclaim-Defendant] is an independent contractor with respect to [Sassy's] and is not an employee of [Sassy's]." **Exhibit 1** at 1.

64.

The Agreement further provides that "[Plaintiff/Counterclaim-Defendant] understands that [they] will receive no compensation from [Sassy's], but may retain any tips gained as a direct result of [their] performance. . . . [Sassy's] shall have no responsibility for paying payroll taxes of any kind, nor of withholding any taxes for any payment or tips earned by [Plaintiff/Counterclaim-Defendant]." **Exhibit 1** at 2.

///

Page 15- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
            AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

**EXHIBIT A**
**Page 15 of 29**

65.

The Agreement further provides that "[Sassy's] shall have no right to control the manner and means of performance by [Plaintiff/Counterclaim-Defendant]," "[Plaintiff/Counterclaim-Defendant] shall schedule performances through an agent or other third party," and "[w]hen performing, [Plaintiff/Counterclaim-Defendant] has control over the conduct of [their] performance, subject to applicable laws and regulations." **Exhibit 1** at 1-2.

66.

Plaintiff/Counterclaim-Defendant enjoyed numerous benefits due to their independent contractor status with Sassy's, including but not limited to substantial income, freedom to choose hours, ability to drink on the job, creative control over performances, liberty to choose whether and to whom to provide private dances, the privilege of setting rates for private dances, keeping all proceeds from private dances, and lack of restrictions regarding performing at other venues.

67.

Plaintiff/Counterclaim-Defendant's first performance at Sassy's relevant to Plaintiff/Counterclaim-Defendant's First Amended Complaint for Damages was on June 29, 2018.

68.

Plaintiff/Counterclaim-Defendant's last performance with Sassy's was on March 3, 2019.

69.

On June 28, 2021, Plaintiff/Counterclaim-Defendant filed this action, alleging Defendants/Counterclaimants violated the Fair Labor Standards Act by failing to pay Plaintiff/Counterclaim-Defendant minimum wages, taking illegal kickbacks, unlawfully taking Plaintiff/Counterclaim-Defendant's tips, and forcing Plaintiff/Counterclaim-Defendant to share their tips.

Page 16- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
            AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 16 of 29

70.

After they stopped performing at Sassy's, Plaintiff/Counterclaim-Defendant contracted to perform two approximately five-minute shows at Faillace's other club, Glitz LLC, dba Dante's ("Dante's").

71.

Plaintiff/Counterclaim-Defendant refused to clarify with Faillace whether they believed they were an employee of Dante's or an independent contractor of Dante's in connection with the two brief performances they contracted with Dante's to render.

72.

Because Plaintiff/Counterclaim-Defendant refused to clarify their working status with Faillace, Faillace chose to rescind Plaintiff/Counterclaim-Defendant's contract for future performances at Dante's, communicated this to Plaintiff/Counterclaim-Defendant on July 19, 2021, and cancelled Plaintiff/Counterclaim-Defendant's next performance at Dante's scheduled for July 25, 2021.

73.

Faillace contracted with the Young Women's Christian Association ("YWCA") to run an implicit bias workshop training for workers at his clubs, including Dante's. The workshop was held on August 4, 2021.

74.

Plaintiff/Counterclaim-Defendant was the facilitator for the August 4, 2021 workshop. Faillace did not stop the training or interfere with Plaintiff/Counterclaim-Defendant' presentation in any way.

Page 17- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
          AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

75.

On August 24, 2021, Plaintiff/Counterclaim-Defendant filed their First Amended Complaint for Damages ("Complaint"), adding Faillace to the Complaint and alleging three causes of action against Faillace for alleged retaliation in violation of the Fair Labor Standards Act, retaliation for bringing a civil proceeding under Oregon state law, and retaliation in violation of Oregon public policy.

76.

Sometime in 2021, Plaintiff/Counterclaim-Defendant and their representatives were interviewed by a member or members of the media. Plaintiff/Counterclaim-Defendant and their representatives made false statements about Defendants/Counterclaimants in that interview.

77.

On September 10, 2021, an article was published by The Oregonian titled "Dancers sue Oregon strip clubs, alleging federal wage violations similar to gig workers." *See* **Exhibit 2** ("The Oregonian Article").

78.

In The Oregonian Article, Plaintiff/Counterclaim-Defendant told the press the following about their work at Sassy's: "There were days I walked out with absolutely nothing after I paid my fees." *See* **Exhibit 2** at 1.

79.

In The Oregonian Article, Plaintiff/Counterclaim-Defendant's counsel, speaking on Plaintiff/Counterclaim-Defendant's behalf and outside a court of law, told the press about Sassy's:

Page 18- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon 97201
Tel: 503.221.0309

"The only requirement for work is [the performers'] ability to take off their clothes and to fit certain aesthetic principles." *See* **Exhibit 2** at 1.

### 80.

In The Oregonian Article, Plaintiff/Counterclaim-Defendant's counsel, speaking on Plaintiff/Counterclaim-Defendant's behalf and outside a court of law, told the press that "the owner of Sassy's told Hollis in writing that the dancer was effectively blacklisted from working at his clubs for pursuing a lawsuit" and directly said: "[i]t's really egregious." *See* **Exhibit 2** at 2.

### 81.

On April 15, 2022, Defendants/Counterclaimants deposed Plaintiff/Counterclaim-Defendant Hollis. On April 26, 2022, Defendants/Counterclaimants received a copy of Plaintiff/Counterclaim-Defendant Hollis' deposition transcript.

## III. COUNTERCLAIMS
## COUNTERCLAIM: FIRST CAUSE OF ACTION

### (Breach of Contract)

### 82.

Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members and Defendants/Counterclaimants entered into contractual relationships under which Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members agreed to provide entertainment services solely as independent contractors (the "Agreements").

### 83.

In consideration for the promises made by Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members under the Agreements, Defendants/Counterclaimants agreed

Page 19- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

EXHIBIT A
Page 19 of 29

to permit them to perform at Sassy's, to charge customers fees, and to accept from customers gratuities in exchange for providing entertainment.

84.

Defendants/Counterclaimants, at all times and in good faith, provided Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members with the benefits and opportunities that together comprised the consideration for the contractual relationship which existed between them, and Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members achieved and retained the benefits of their bargain with Defendants/Counterclaimants, including, but not limited to, substantial income, freedom to choose hours, ability to drink on the job, creative control over performances, liberty to choose whether and with whom to provide private dances, the privilege of setting rates for private dances, keeping all proceeds from private dances, and lack of restrictions on dancing at other venues.

85.

By claiming, retroactively, that they were employees and not properly compensated for the services which they promised to render as independent contractors under the terms of their Agreements, Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members have breached their Agreements with Defendants/Counterclaimants. Having received the benefits of the Agreements, Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members now seek an unjustified windfall at Defendants/Counterclaimants' expense.

86.

As a direct and proximate result of this breach, Defendants/Counterclaimants have suffered substantial and significant actual and consequential damages of at least $165,000.

Page 20- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

## COUNTERCLAIM: SECOND CAUSE OF ACTION

(Unjust Enrichment)

87.

At all times relevant hereto, Defendants/Counterclaimants have provided to Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members the benefits and advantages of providing services as independent contractors, and Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members have enjoyed and are aware of those benefits, including the freedom, flexibility, and tax advantages of such a relationship, and additional benefits, including but not limited to, substantial income, freedom to choose hours, ability to drink on the job, creative control over performances, liberty to choose whether and with whom to provide private dances, the privilege of setting rates for private dances, keeping all proceeds from private dances, and lack of restrictions on dancing at other venues.

88.

By treating Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members as independent contractors pursuant to the Agreements, Defendants/Counterclaimants have failed to obtain and collect the revenues, including minimum private or semi-private performance fees, generated by Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members.

89.

Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members were aware of the benefits they received (see paragraph 86 for a description of the benefits) by electing to work as independent contractors rather than as employees.

90.

Page 21- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
         AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309   **EXHIBIT A
Page 21 of 29**

Defendants/Counterclaimants, to their detriment, reasonably and in good faith relied on the representations and the promises of Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members pursuant to the Agreements.

91.

Defendants/Counterclaimants so relied in structuring their business relationships, in forming and executing their business plan, and in planning for, preparing, and paying their taxes, in making withholdings, and in ensuring compliance with other applicable laws.

92.

Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members knowingly and purposefully induced Defendants/Counterclaimants to rely upon their promises in this regard, with the intention that they so rely.

93.

Should Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members prevail in their First, Second, Third, and Fourth Causes of Action, they will be substantially and unjustly enriched at the expense of Defendants/Counterclaimants, who will be substantially and unjustly harmed by them.

94.

Specifically, Plaintiff/Counterclaim-Defendant testified that they earned between $80 to $400 a night while dancing on stage and up to $520 a night in separate private dance fees. Given Plaintiff/Counterclaim-Defendant's schedule with Defendants/Counterclaimants, Plaintiff/Counterclaim-Defendant most likely earned between $70,000 to $100,000 for their performances with Defendants/Counterclaimants.

///

Page 22- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
                AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

95.

Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members should not be awarded an unjust windfall. Should Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members prevail on their First, Second, Third, and/or Fourth Causes of Action, Defendants/Counterclaimants will be entitled to restitution, including but not limited to, a return of all private or semi-private performance fees, or set offs against any award of wages, overtime payments, monetary benefits, or other amounts to which Plaintiff/Counterclaim-Defendant may be found to be entitled to, and/or of those fees received by Plaintiff/Counterclaim-Defendant and/or the putative FLSA Collective Members but not remitted to Defendants/Counterclaimants, but in any event an amount no less than $100,000.

## COUNTERCLAIM: THIRD CAUSE OF ACTION

(Defamation)

96.

Plaintiff/Counterclaim-Defendant was interviewed by a member of the media and made false statements about Defendants/Counterclaimants that have subjected Defendants/Counterclaimants to hatred, contempt, or ridicule, and has diminished their esteem, respect, and goodwill by members of the public.

97.

Plaintiff/Counterclaim-Defendant's counsel, acting on Plaintiff/Counterclaim-Defendant's behalf and as agent of Plaintiff/Counterclaim-Defendant, was interviewed by a member of the media and made false statements about Defendants/Counterclaimants outside a court of law that have subjected Defendants/Counterclaimants to hatred, contempt, or ridicule, and has diminished their esteem, respect, and goodwill by members of the public.

Page 23- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
   AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

98.

News outlets, including The Oregonian, published Plaintiff/Counterclaim-Defendant's defamatory statements about Defendants/Counterclaimants. *See* **Exhibit 2**.

99.

Plaintiff/Counterclaim-Defendant intentionally or recklessly made false assertions of fact about Defendants/Counterclaimants.

100.

Plaintiff/Counterclaim-Defendant knew or should have known that their statements about Defendants/Counterclaimants were false.

101.

Plaintiff/Counterclaim-Defendant's statements were made with the intent to harm Defendants/Counterclaimants.

102.

Plaintiff/Counterclaim-Defendant told the press "There were days I walked out with absolutely nothing after I paid my fees." *See* **Exhibit 2** at 1.

103.

Plaintiff/Counterclaim-Defendant's statement in paragraph 101 is false. During Plaintiff/Counterclaim-Defendant's deposition, they testified that on days they performed at Sassy's, they made "[a]nywhere between $80 and $400" in tips. Plaintiff/Counterclaim-Defendant also testified about private dance fees: "My dances were one song for $40 and three songs for $100"; and the number of private dances Plaintiff/Counterclaim-Defendant performed: "On a slow night, zero, and on a busy night, like 13." Sassy's charged stage fees ranging between $2–$10 a night. Thus, based on Plaintiff/Counterclaim-Defendant's deposition testimony, at worst the

Page 24- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
        AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309    **EXHIBIT A**
                     **Page 24 of 29**

minimum amount Plaintiff/Counterclaim-Defendant took home would have been $70, which is not "absolutely nothing."

104.

Plaintiff/Counterclaim-Defendant's counsel, speaking on Plaintiff/Counterclaim-Defendant's behalf and outside a court of law, told the press "The only requirement for work is [the performers'] ability to take off their clothes and to fit certain aesthetic principles." *See* **Exhibit 2** at 1.

105.

Plaintiff/Counterclaim-Defendant's counsel's statement in paragraph 103 is false. During Plaintiff/Counterclaim-Defendant's deposition, Plaintiff/Counterclaim-Defendant testified that Sassy's "auditions are really hard," and that they were "present for multiple auditions for people who did not end up working [at Sassy's]." Plaintiff/Counterclaim-Defendant further testified that to impress at Sassy's "really hard" audition, Plaintiff/Counterclaim-Defendant climbed "the tallest pole in the building" at a height of 1.5 stories to "show off," a feat Plaintiff/Counterclaim-Defendant estimated only about 20% of performers can accomplish, but a feat about which Plaintiff/Counterclaim-Defendant said: "I think most dancers at Sassy's can do it."

106.

Based on Plaintiff/Counterclaim-Defendant's deposition testimony, Plaintiff/Counterclaim-Defendant is a talented performer. Plaintiff/Counterclaim-Defendant testified they took pole dancing lessons in 2016 and taught "a lot" of pole dancing lessons to others. Plaintiff/Counterclaim-Defendant testified they learned choreography for pole dancing by "practic[ing] on slow nights . . . anytime that the club was empty." Plaintiff/Counterclaim-Defendant testified that their pole-dancing skills improved over the course of the years they

Page 25- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
         AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

worked at exotic dance venues. Plaintiff/Counterclaim-Defendant also competed in pole dancing competitions, which judged performance, style, and the entertainment value of the competitors' skills. Plaintiff/Counterclaim-Defendant testified that "I participated in [the] Miss Exotic Oregon [competition]," that there were five dancers left at the finals, and that "I made it to the finals."

107.

Plaintiff/Counterclaim-Defendant's counsel, speaking on Plaintiff/Counterclaim-Defendant's behalf, told the press that "the owner of Sassy's told Hollis in writing that the dancer was effectively blacklisted from working at his clubs for pursuing a lawsuit" and directly said: "It's really egregious." *See* **Exhibit 2** at 2.

108.

Plaintiff/Counterclaim-Defendant's counsel's statement in paragraph 106 is false in at least (but not limited to) the following ways: First, Plaintiff/Counterclaim-Defendant would not clarify their classification as an independent contractor or an employee to Faillace in connection with their performance at Dante's. Second, Faillace did not prevent Plaintiff/Counterclaim-Defendant from working as a facilitator for an implicit bias workshop held at Dante's on August 4, 2022.

109.

Plaintiff/Counterclaim-Defendant's false statements ascribe to Defendants/Counterclaimants conduct, characteristics, and/or a condition incompatible with the proper conduct of their lawful business, trade, or profession, and/or accuses Defendants/Counterclaimants of misconduct or dishonesty.

110.

Plaintiff/Counterclaim-Defendant's false statements are words tending to injure Defendants/Counterclaimants in their business or profession and constitute defamation per se.

Page 26- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon 97201
Tel: 503.221.0309

EXHIBIT A
Page 26 of 29

111.

Plaintiff/Counterclaim-Defendant's statements to the media have caused special harm to the Defendants/Counterclaimants, including the inability to obtain business that Defendants/Counterclaimants would have obtained but for Plaintiff/Counterclaim-Defendant's statements, and/or reputational damage.

112.

As a direct and proximate result of Plaintiff/Counterclaim-Defendant's false statements, Defendants/Counterclaimants have suffered substantial and significant damages, including general and special damages, in an amount no less than $500,000.

## REQUEST FOR ATTORNEYS' FEES AND COSTS

113.

Defendants/Counterclaimants intend to seek recovery of its reasonable attorneys' fees pursuant to Section 11 of the Independent Contractor Agreement.  *See* **Exhibit 1** at 3.

## PRAYER FOR RELIEF

WHEREFORE, having fully answered Plaintiff/Counterclaim-Defendant's First Amended Complaint with its Answer and Affirmative Defenses, Defendants/Counterclaimants pray for judgment in their favor as follows:

A.     That the Court dismiss the First Amended Complaint in its entirety with prejudice;

B.     That the Court grant Defendants/Counterclaimants their costs and disbursements herein, their reasonable attorneys' fees, and expenses pursuant to Section 11 of the Independent Contractor Agreement; and

Page 27- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309    **EXHIBIT A**
**Page 27 of 29**

C.    That the Court, pursuant to 28 U.S.C. § 1927, require Plaintiff/Counterclaim-Defendant's counsel to satisfy the excess costs, expenses, and fees reasonably incurred because of conduct which unreasonably and vexatiously multiplied proceedings.

AND WHEREFORE DEFENDANTS/COUNTERCLAIMANTS, having fully stated their Claims against the Plaintiff/Counterclaim-Defendants as Counterclaimants, Defendants/Counterclaimants pray for judgment in their favor as follows:

A.    For restitution, including but not limited to, a return of all private or semi-private performance fees, or set offs against any award of wages, overtime payments, monetary benefits, or other amounts to which Plaintiff/Counterclaim-Defendants may be found entitled to in this action, for those fees received by Plaintiff/Counterclaim-Defendants but not remitted to Defendants/Counterclaimants;

B.    For damages, based on information and belief, anticipated as not being less than $100,000 for Defendants/Counterclaimants' Unjust Enrichment claim, $165,000 for Defendants/Counterclaimants' Breach of Contract claim, and $500,000 for Defendants/Counterclaimants' Defamation claim;

C.    For such damages as the Court determines are just and equitable;

D.    For interest;

E.    For reasonable attorney's fees and costs of suit; and

F.    For such other relief as the Court, in the exercise of its discretion, deems just.

Page 28- PROPOSED DEFENDANTS/COUNTERCLAIMANTS' FIRST
AMENDED ANSWER AND COUNTERCLAIMS

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon 97201
Tel: 503.221.0309    **EXHIBIT A**
**Page 28 of 29**

Dated:        August 24, 2022

/s/ Anthony Kuchulis
Anthony D. Kuchulis
Joseph Q. Ridgeway
LITTLER MENDELSON, P.C.

Attorneys for Defendants/Counterclaimants

LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower - Ste 2050
Portland, Oregon  97201
Tel: 503.221.0309

## INDEPENDENT CONTRACTOR AGREEMENT

**PARTIES**:   R&R Restaurants, Inc.                          ("Company")
dba Sassy's Bar & Grill
an Oregon corporation
927 SE Morrison St.
Portland, OR 97214

Name   *Zoë Corrin Reinhard-Hollis*          ("Independent Contractor")
Alias   *Honey DuBois*
Address   *SE Flauel St*
*PDX*

## RECITALS:

The Company is engaged in the business of selling food and beverages for on-site consumption, and of selling stage time to Independent Contractors to enable their performance in providing entertainment to patrons. The Company desires to contract and retain the unique experience and abilities of Independent Contractor as a dancer/stage performer. Independent Contractor is an independent contractor with respect to R&R Restaurants, Inc. dba Sassy's Bar & Grill ("R&R"), and is not an employee of the Company.

## AGREEMENT:

The parties agree as follows:

### Section 1.   THE COMPANY

The term "the Company" shall include R&R, all of its affiliated corporations, organizations or entities, its predecessors, successors, parent or subsidiary corporations or organizations, current or former directors, commissioners, board members, officers, employees, insurers, attorneys, agents, representatives or assigns.

### Section 2.   RELATIONSHIP BETWEEN THE PARTIES

**2.1**   The parties intend that a relationship between Independent Contractor and the Company will be created by this Agreement. Independent Contractor is not to be considered a partner or employee of the Company for any purpose. It is understood that the Company does not agree to use Independent Contractor exclusively. It is further understood that Independent Contractor is free to contract for similar (or different) services to be performed for others while under contract with the Company.

**2.2**   Company shall have no right to control the manner and means of performance by Independent Contractor. Independent Contractor shall schedule performances through an agent or other third party. When performing, Independent

1

EXHIBIT 1 TO EXHIBIT A
Page 1 of 4

Contractor has control over the conduct of his/her performance, subject to applicable laws and regulations.

## Section 3.    INDEPENDENT CONTRACTOR

**3.1    Term.** The Company agrees to establish an Independent Contractor relationship commencing on April 1st 2007 and continuing until termination in accordance with Section 7.

**3.2    Duties.** Independent Contractor accepts a relationship with the Company on the terms and conditions set forth in this Agreement.

As part of his/her work, Independent Contractor may:

- Use any stage within Company's facility that is designated for the purpose of performance, with payment of stage fee and at times scheduled by Independent Contractor, Independent Contractor's agent, or by a third party designated by Independent Contractor;
- Perform in accordance with the laws of the State of Oregon; and
- Provide any necessary licensure or other documentation necessary for performance as an Independent Contractor under this Agreement.

## Section 4.    COMPENSATION

Independent Contractor understands that he/she will receive no compensation from Company, but may retain any tips gained as a direct result of his/her performance. Independent Contractor understands that employment benefits are not provided under the terms of this Agreement and that all costs for health care insurance, worker's compensation insurance, and pension benefits will be responsibility of Independent Contractor. Company shall have no responsibility for paying payroll taxes of any kind, nor of withholding any taxes for any payment or tips earned by Independent Contractor.

## Section 5.    EXPENSES

Independent Contractor shall not be entitled to reimbursement from the Company for expenses necessarily incurred by Independent Contractor in the performance of Independent Contractor's duties under this Agreement. Independent Contractor is responsible for providing all necessary tools and equipment used in his/her performance. Independent Contractor shall pay pre-determined stage fees as consideration for Company permitting the use of its performance stages.

## Section 6.    EMPLOYMENT OF ASSISTANTS

Independent Contractor may, at Independent Contractor's own expense, employ such assistants as Independent Contractor deems necessary to perform the services permitted by the Company under this Agreement. The Company will not control, direct

2

EXHIBIT 1 TO EXHIBIT A
Page 2 of 4

or supervise Independent Contractor's assistants or employees in the performance of their services and accordingly, Independent Contractor agrees to provide worker's compensation insurance for Independent Contractor and Independent Contractor's employees and agents and agrees to hold harmless and indemnify the Company for any and all claims out of injury, disability, or death of Independent Contractor or Independent Contractor's employees or agents.

### Section 7.    LIABILITY INSURANCE

Independent Contractor agrees to maintain liability insurance policies to cover any negligent act or acts committed by Independent Contractor or Independent Contractor's employees or agents during the performance of any duties of this Agreement. Further, Independent Contractor agrees to hold the Company free and harmless of any and all claims arising from any such negligent acts or omissions.

### Section 8.    FACILITIES

Independent Contractor shall be provided such facilities and cooperation at the Company's place of business that Independent Contractor requests and that are necessary for the performance of Independent Contractor's duties under this Agreement.

### Section 9.    TERMINATION OF AGREEMENT

Either the Company or Independent Contractor may terminate the Independent Contractor Agreement for any reason. The Company shall have the right to terminate the Independent Contractor Agreement at will, at any time, without notice and without payment of compensation in lieu of notice.

### Section 10.    REPRESENTATIONS AND WARRANTIES

Independent Contractor represents and warrants to the Company that Independent Contractor is fully licensed as required by law to enter into this Agreement.

### Section 11.    GOVERNING LAW; ATTORNEY FEES

The jurisdiction for the resolution of any disputes under this Agreement shall be the State of Oregon. Venue shall be in Multnomah County. This Agreement shall be governed and construed in accordance with the laws of the State of Oregon. In the event this Agreement results in any sort of litigation between the undersigned parties or their representative (s), the prevailing party as determined by the Court shall be awarded its reasonable costs and attorney fees at trial and appeal.

### Section 12.    WAIVER; ENTIRE AGREEMENT; MODIFICATION

No waiver of any breach of any covenant or provision contained here shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision herein contained. This Agreement sets forth the entire understanding of the

3

EXHIBIT 1 TO EXHIBIT A
Page 3 of 4

parties. This Agreement supersedes any and all prior negotiation, discussions, agreements and understandings between the parties. This Agreement may not be modified or amended except by a written agreement executed by both parties. If any provision of this Agreement is deemed to be unenforceable for any reason, the remaining provisions shall be construed as if the unenforceable provision did not exist.

**Section 13.    ASSIGNMENT**

Independent Contractor may not assign this Agreement nor duties or obligations under this Agreement.

**Section 14.    INDEMNIFICATION**

Independent Contractor agrees to indemnify and hold the Company harmless from all claims, losses, expenses, fees including attorney fees, cost, and judgments that may be asserted against the Company that results from the acts or omissions of Independent Contractor, Independent Contractor's employees, if any, and Independent Contractor's agents.

**Section 15.    SEVERABILITY**

If any part of this Agreement is held to be unenforceable, the rest of this Agreement shall nevertheless remain in full force and effect.

**EACH OF THE UNDERSIGNED STATES THAT HE OR SHE HAS BEEN ADVISED TO CONSULT INDEPENDENT LEGAL COUNSEL AND HAS CAREFULLY READ THIS AGREEMENT IN ITS ENTIRETY, THAT NO PROMISE, INDUCEMENT OR UNDERSTANDING NOT HEREIN EXPRESSED HAS BEEN MADE TO THE UNDERSIGNED, AND THAT THE UNDERSIGNED VOLUNTARILY AND KNOWINGLY ACCEPTS THE AGREEMENT'S TERMS AND CONDITIONS HEREIN.**

6-7-17
Date

_____
Independent Contractor

6-7-17
Date

Stacy Mayhood
President, R&R Restaurants, Inc.
dba Sassy's Bar & Grill

4

EXHIBIT 1 TO EXHIBIT A
Page 4 of 4

## Dancers sue Oregon strip clubs, alleging federal wage violations similar to gig workers

oregonlive.com/portland/2021/09/dancers-sue-oregon-strip-clubs-alleging-federal-wage-violations-similar-to-gig-workers.html

By Noelle Crombie | The Oregonian/OregonLive                                      September 10, 2021



For Cat Hollis, working at a Portland strip club meant first paying the boss.

Hollis would pay $5 for each eight-hour shift.

Before heading home, Hollis would make another round of payments from the night's tips, handing out at least $20 apiece to an assortment of other people employed by the club.

"There were days I walked out with absolutely nothing after I paid my fees," Hollis said.

Now Hollis and three other dancers are suing six clubs in Oregon, a place known for its surfeit of adult entertainment thanks to the state Constitution's strong free speech protections.

The dancers' lawsuits allege the establishments violated mandatory minimum wage provisions of the federal Fair Labor Standards Act.

Filed in U.S. District Court in Portland and Eugene, the claims accuse the clubs of "absconding" with the dancers' tips and demanding "illegal kickbacks" in the form of house fees that dancers said they pay to work.

They allege they are treated as independent workers through their compensation arrangements even though the clubs require them to act as employees by setting their work hours and working conditions down to the music.

The question of whether a worker is an employee or an independent contractor is "one of the hottest issues in all of American employment law," said Keith Cunningham-Parmeter, a professor at Willamette University College of Law and an expert in labor law.

The stakes are high for companies like strip clubs. Employees are expensive, Cunningham-Parmeter said. They must be paid minimum wage and overtime. They earn unemployment insurance benefits. They are entitled to a "whole basket" of employment rights, he said.

And yet one study found up to 30 percent of employers misclassify their workers as independent contractors when they are in fact employees, he said.

He said gig workers like those at Lyft and Grub Hub represent the latest examples of the ongoing debate.

"I know thousands of exotic dancers have argued that they are in fact employees and that they mostly seem to have very good cases," he said. "The central question is how much freedom does the worker have versus how much control does the employer have over the worker."

### 'SHINE A LIGHT ON THIS INDUSTRY'

Amanda Marshall, one of the lawyers representing the dancers, said the claims seek to shine a light on the industry.

"It's not an attempt to shut the industry down," she said. "This is an attempt to make sure the industry is fair and equitable."

Dancers don't "fit the traditional definition of an independent contractor," said Marshall, who practices in Portland and McMinnville.

"The only requirement for work is their ability to take off their clothes and to fit certain aesthetic principles," she said.

Hollis' suit names Sassy's on Southeast Morrison Street. The other dancers are suing Sugar Shack in Salem, Club Sinrock on Northeast Glisan Street, Cabaret II on Southeast Stark Street and two Lane County clubs, Sweet Illusions and Silver Dollar.

In court filings, Anthony Kuchulis, a lawyer for Sassy's, its owner and managers denied Hollis' claims and characterized their performances at the club as "occasional and infrequent."

**EXHIBIT 2 TO EXHIBIT A
Page 1 of 2**

Kuchulis, who represents Silver Dollar as well, said the claims seek to strip dancers of "the right to contract." Every other type of stage performer has that right, he said.

"We are working hard to resolve these claims and want what's best for the workers and local small businesses," he said in an emailed statement.

Likewise, lawyers for Cabaret II alleged dancers at the club are independent contractors. An email to the lawyer for Sinrock was not returned. Sugar Shack and Sweet Illusions have not filed a legal response to the claims and their owners could not be reached for comment.

**DANCER ALLEGES RETALIATION**

Nationally, dancers have pushed back on being treated as independent contractors, said John Kristensen, a Los Angeles-based lawyer who is also representing the performers.

In recent years, he said, dozens of federal court judges, from Alaska to Georgia, have ruled in dancers' favor on wage claims like the ones filed in Oregon.

Kristensen pointed to a 2019 ruling out of Georgia, where a federal judge called the idea that strippers rent floor space at clubs "absurd" and a "silly attempt to redefine reality."

He said unwritten rules for handing out a portion of dancers' tips to other workers are common and that such demands end up subsidizing those workers' pay.

"There are some clubs I have seen where the other employees aren't even on payroll," he said. "They make their entire income on tips from the dancers."

Hollis' claim includes allegations of retaliation. Kristensen said the owner of Sassy's told Hollis in writing that the dancer was effectively blacklisted from working at his clubs for pursuing a lawsuit.

"It's really egregious," he said. "You can't retaliate in the United States of America against someone who is standing up for their wages."

In response, Kuchulis called Hollis' claim of retaliation "especially troubling" because Hollis sought to work as a contract performer at Dante's while suing Sassy's over allegedly being treated as a contract worker. Both are owned by Frank Faillace.

**FROM DANCING TO ACTIVISM**

Hollis said they quit Sassy's in 2019 after a dispute with a manager over an encounter Hollis had with a customer.

Hollis works from home these days, mostly for an online sex business. Hollis uses they and them pronouns.

Now 32, Hollis started dancing when they were in their mid-20s in Minnesota. They were drawn by the money-making potential and ended up moving to Oregon for its strip clubs as much as its legal cannabis.

During the pandemic, Hollis started a workers' rights advocacy group called Haymarket Pole Collective.

Stripping is a high turnover business that's tough on the body, as well as the ego, Hollis said.

Hollis hopes their lawsuit empowers other dancers to speak up in an industry that can be exploitative and even abuse, they said.

"My goal," Hollis said, "is to be the last generation of people who have to deal with this."

-- Noelle Crombie; ncrombie@oregonian.com; 503-276-7184; @noellecrombie

**EXHIBIT 2 TO EXHIBIT A**
**Page 2 of 2**

# INDEPENDENT CONTRACTOR AGREEMENT

**PARTIES**:     R&R Restaurants, Inc.                              ("Company")
dba Sassy's Bar & Grill
an Oregon corporation
927 SE Morrison St.
Portland, OR 97214

Name     *Zoë Corrin Reinhard-Hollis*          ("Independent Contractor")
Alias     *Honey DuBois*
Address     *√ SE Flavel St*
*PDX*

## RECITALS:

The Company is engaged in the business of selling food and beverages for on-site consumption, and of selling stage time to Independent Contractors to enable their performance in providing entertainment to patrons. The Company desires to contract and retain the unique experience and abilities of Independent Contractor as a dancer/stage performer. Independent Contractor is an independent contractor with respect to R&R Restaurants, Inc. dba Sassy's Bar & Grill ("R&R"), and is not an employee of the Company.

## AGREEMENT:

The parties agree as follows:

## Section 1.     THE COMPANY

The term "the Company" shall include R&R, all of its affiliated corporations, organizations or entities, its predecessors, successors, parent or subsidiary corporations or organizations, current or former directors, commissioners, board members, officers, employees, insurers, attorneys, agents, representatives or assigns.

## Section 2.     RELATIONSHIP BETWEEN THE PARTIES

**2.1**     The parties intend that a relationship between Independent Contractor and the Company will be created by this Agreement. Independent Contractor is not to be considered a partner or employee of the Company for any purpose. It is understood that the Company does not agree to use Independent Contractor exclusively. It is further understood that Independent Contractor is free to contract for similar (or different) services to be performed for others while under contract with the Company.

**2.2**     Company shall have no right to control the manner and means of performance by Independent Contractor. Independent Contractor shall schedule performances through an agent or other third party. When performing, Independent

Contractor has control over the conduct of his/her performance, subject to applicable laws and regulations.

## Section 3.    INDEPENDENT CONTRACTOR

**3.1    Term.** The Company agrees to establish an Independent Contractor relationship commencing on April 1st 2007 and continuing until termination in accordance with Section 7.

**3.2    Duties.** Independent Contractor accepts a relationship with the Company on the terms and conditions set forth in this Agreement.

As part of his/her work, Independent Contractor may:

- Use any stage within Company's facility that is designated for the purpose of performance, with payment of stage fee and at times scheduled by Independent Contractor, Independent Contractor's agent, or by a third party designated by Independent Contractor;
- Perform in accordance with the laws of the State of Oregon; and
- Provide any necessary licensure or other documentation necessary for performance as an Independent Contractor under this Agreement.

## Section 4.    COMPENSATION

Independent Contractor understands that he/she will receive no compensation from Company, but may retain any tips gained as a direct result of his/her performance. Independent Contractor understands that employment benefits are not provided under the terms of this Agreement and that all costs for health care insurance, worker's compensation insurance, and pension benefits will be responsibility of Independent Contractor. Company shall have no responsibility for paying payroll taxes of any kind, nor of withholding any taxes for any payment or tips earned by Independent Contractor.

## Section 5.    EXPENSES

Independent Contractor shall not be entitled to reimbursement from the Company for expenses necessarily incurred by Independent Contractor in the performance of Independent Contractor's duties under this Agreement. Independent Contractor is responsible for providing all necessary tools and equipment used in his/her performance. Independent Contractor shall pay pre-determined stage fees as consideration for Company permitting the use of its performance stages.

## Section 6.    EMPLOYMENT OF ASSISTANTS

Independent Contractor may, at Independent Contractor's own expense, employ such assistants as Independent Contractor deems necessary to perform the services permitted by the Company under this Agreement. The Company will not control, direct

or supervise Independent Contractor's assistants or employees in the performance of their services and accordingly, Independent Contractor agrees to provide worker's compensation insurance for Independent Contractor and Independent Contractor's employees and agents and agrees to hold harmless and indemnify the Company for any and all claims out of injury, disability, or death of Independent Contractor or Independent Contractor's employees or agents.

### Section 7.    LIABILITY INSURANCE

Independent Contractor agrees to maintain liability insurance policies to cover any negligent act or acts committed by Independent Contractor or Independent Contractor's employees or agents during the performance of any duties of this Agreement. Further, Independent Contractor agrees to hold the Company free and harmless of any and all claims arising from any such negligent acts or omissions.

### Section 8.    FACILITIES

Independent Contractor shall be provided such facilities and cooperation at the Company's place of business that Independent Contractor requests and that are necessary for the performance of Independent Contractor's duties under this Agreement.

### Section 9.    TERMINATION OF AGREEMENT

Either the Company or Independent Contractor may terminate the Independent Contractor Agreement for any reason. The Company shall have the right to terminate the Independent Contractor Agreement at will, at any time, without notice and without payment of compensation in lieu of notice.

### Section 10.    REPRESENTATIONS AND WARRANTIES

Independent Contractor represents and warrants to the Company that Independent Contractor is fully licensed as required by law to enter into this Agreement.

### Section 11.    GOVERNING LAW; ATTORNEY FEES

The jurisdiction for the resolution of any disputes under this Agreement shall be the State of Oregon. Venue shall be in Multnomah County. This Agreement shall be governed and construed in accordance with the laws of the State of Oregon. In the event this Agreement results in any sort of litigation between the undersigned parties or their representative (s), the prevailing party as determined by the Court shall be awarded its reasonable costs and attorney fees at trial and appeal.

### Section 12.    WAIVER; ENTIRE AGREEMENT; MODIFICATION

No waiver of any breach of any covenant or provision contained here shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision herein contained. This Agreement sets forth the entire understanding of the

parties. This Agreement supersedes any and all prior negotiation, discussions, agreements and understandings between the parties. This Agreement may not be modified or amended except by a written agreement executed by both parties. If any provision of this Agreement is deemed to be unenforceable for any reason, the remaining provisions shall be construed as if the unenforceable provision did not exist.

**Section 13.    ASSIGNMENT**

Independent Contractor may not assign this Agreement nor duties or obligations under this Agreement.

**Section 14.    INDEMNIFICATION**

Independent Contractor agrees to indemnify and hold the Company harmless from all claims, losses, expenses, fees including attorney fees, cost, and judgments that may be asserted against the Company that results from the acts or omissions of Independent Contractor, Independent Contractor's employees, if any, and Independent Contractor's agents.

**Section 15.    SEVERABILITY**

If any part of this Agreement is held to be unenforceable, the rest of this Agreement shall nevertheless remain in full force and effect.

**EACH OF THE UNDERSIGNED STATES THAT HE OR SHE HAS BEEN ADVISED TO CONSULT INDEPENDENT LEGAL COUNSEL AND HAS CAREFULLY READ THIS AGREEMENT IN ITS ENTIRETY, THAT NO PROMISE, INDUCEMENT OR UNDERSTANDING NOT HEREIN EXPRESSED HAS BEEN MADE TO THE UNDERSIGNED, AND THAT THE UNDERSIGNED VOLUNTARILY AND KNOWINGLY ACCEPTS THE AGREEMENT'S TERMS AND CONDITIONS HEREIN.**

6-7-17
Date

_____
Independent Contractor

6-7-17
Date

Stacy A. Mayhood
Stacy Mayhood
President, R&R Restaurants, Inc.
dba Sassy's Bar & Grill

4

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF OREGON

 3                      PORTLAND DIVISION

 4

 5

 6   ZOE HOLLIS individually        )

 7   and on behalf of all           )

 8   others similarly situated,     )   Civil No.

 9              Plaintiff,           )   3:21-cv-00965-YY

10      vs                          )

11   R&R RESTAURANTS, INC dba       )

12   SASSY'S, an Oregon             )

13   corporation; STACY             )

14   MAYHOOD, an individual;        )

15   IAN HANNIGAN, an               )

16   individual; FRANK              )

17   FAILLACE, an individual;       )

18   and DOES 2 through 10,         )

19   inclusive,                     )

20              Defendants.         )

21

22            DEPOSITION OF ZOE HOLLIS

23        Taken in behalf of the Defendants

24

25                 April 15, 2022
```

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 1 of 16

1    performed one set of three songs on the second

2    stage at Sassy's.

3              I remember the first thing I did to

4    show off was to climb all the way to the top of

5    the pole just to show that I -- it's the tallest

6    pole in the building, so I was just trying to

7    demonstrate that I could do that.  And I don't

8    remember -- I maybe made $2.  I don't remember

9    much else about the audition.

10   Q.  So there were customers there?

11   A.  Yes.

12   Q.  And you said to show off you climbed the

13   tallest pole in the building.  About how tall

14   would you estimate?

15   A.  A story and a half.

16   Q.  Okay.  And that's something that most

17   dancers are unable to do or unwilling to do?

18              MS. MARTINEZ:  Objection; calls for

19   speculation.

20              You can answer if you know.

21   A.  I think most dancers at Sassy's can do it.

22   Q.  Right.  But you said to show off, which

23   means that it was something that you could do

24   that other people auditioning likely could not do

25   or may not be able to do?

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 2 of 16

1          MS. MARTINEZ:   Objection;

2    mischaracterizes prior testimony.

3      A.   Yeah, I don't know.

4      Q.   So you're not aware of whether everyone can

5    climb to the top of the pole or not?

6          MS. MARTINEZ:   Objection; calls for

7    speculation.

8      A.   I think it's probably like 80/20.

9      Q.   80 can?

10     A.   80 percent can't --

11     Q.   Oh, can't.

12     A.   -- and 20 percent can.

13     Q.   Can't, okay.  Was there any other skills

14   that you showed off that day to get the job?

15     A.   Just dancing and movement.

16     Q.   Okay.  And are you aware of people who

17   audition for Sassy's that do not get brought back

18   to work there?

19         MS. MARTINEZ:   Objection; calls for

20   speculation.

21         Answer if you know.

22     A.   I don't know.

23     Q.   So you don't know whether every person that

24   auditions ends up working there or not.

25     A.   I know that they don't.

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 3 of 16

1    Q.  Okay.  And how do you know that every

2  person who auditions does not end up working

3  there?

4    A.  Because I was present for multiple

5  auditions for people who did not end up working

6  there.

7    Q.  Do you have any estimate or memory of about

8  how many people or auditions?

9    A.  I don't have an estimate for you.

10    Q.  Even a range?

11    A.  Six to 50.

12    Q.  Six to 50 people?

13    A.  I'd say 50 is too many, but --

14    Q.  Okay.

15    A.  Auditions are weekly, so --

16    Q.  Yeah.  And did you -- could you -- do you

17  have an estimate -- I don't want you to

18  speculate, but is there any estimate in your head

19  based on your experiences of about what

20  percentage end up working there or not?

21         MS. MARTINEZ:  Objection; calls for

22  speculation.

23         Don't guess.  Answer if you know.

24    A.  I don't know.

25    Q.  Okay.  And the auditions as you described

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 4 of 16

1    A.  That's correct.

2    Q.  And there was a minimum tip of $1 per song

3    per customer.

4    A.  It was not enforced.

5    Q.  If it wasn't enforced, could you talk to a

6    bouncer or have someone enforce it?

7    A.  Yes, I talked to the bouncers many times

8    about it.

9    Q.  And?

10   A.  And they did nothing about it, and

11   continued to let people sit at my stage and not

12   tip me.

13   Q.  Did some people sometimes tip more than a

14   dollar per song?

15   A.  Yes.

16   Q.  Okay.  And there's a range of what they

17   could tip in addition to a dollar, right?

18   A.  (Nodding head).

19   Q.  I think I've seen people come in with

20   garbage bags --

21   A.  Correct.

22   Q.  -- at these clubs, right?

23       So do you have any estimate about what

24   you would make on a -- on a shift for tips while

25   dancing on stage?

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 5 of 16

1    A.   It greatly depended on the day.

2    Q.   And we talked about ranges earlier.  What

3  range would you provide?

4    A.   Anywhere between $80 and $400.

5    Q.   And that would depend on the shift because

6  the later shifts would be busier than the earlier

7  shifts, right?

8    A.   And the weekend shifts are better than the

9  day -- the weekday shifts.

10    Q.   Did that -- so it would be $80 to $400.

11  Did that guide at all what shifts you signed up

12  for?

13    A.   Yes.

14    Q.   So you preferred the shifts where you would

15  make more money, I would imagine.

16    A.   Yes.

17    Q.   And I'm getting foggy on COVID dates.  I'll

18  come back to that.

19         Were you dancing at Sassy's when the

20  COVID lockdown started?

21    A.   No.

22    Q.   Okay.  And it feels like it's been forever,

23  so I get confused.

24         The -- so how did you -- did you record

25  or report how much you made in tips in a given

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 6 of 16

1    night?

2        A.   No.

3        Q.   And I imagine, then, that it was not

4    something that you reported on your taxes, either

5    state or federal.

6        A.   I was never given a 1099.   Sorry for

7    talking over you.

8        Q.   No problem.

9             So the question more specifically was

10   did you file a federal or state tax return --

11       A.   No.

12       Q.   -- in -- real quick.   So we're going to be

13   talking about in the last five years just all

14   together.

15       A.   Yes.

16       Q.   Have you filed a federal or state tax

17   return in the last five years?

18       A.   Yes.

19       Q.   What years have you filed tax returns?

20       A.   2020, 2021.

21       Q.   Okay.   Did -- and what jobs or income

22   sources did you list on those tax returns?

23            MS. MARTINEZ:   Objection; relevance.

24            You can answer.

25       A.   I guess it would have been my work at the

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 7 of 16

1   YWCA with the -- my work contracted under the

2   YWCA, my Haymarket Pole stipend, just consulting

3   work that I've done.  And then also my winnings

4   from part of my 205 lawsuit.  That was a big

5   chunk.  What else is in there.  My work at New

6   Avenues For Youth.  Dancing, Haymarket.

7       Q.   Is it fair to --

8                MS. MARTINEZ:  Wait.  Have you finished

9   your response?

10                THE WITNESS:  I think so.

11       Q.   To be -- to put a finer point on it, did

12   you -- do you recall reporting any income

13   received from your work at live performance

14   venues?

15                MS. MARTINEZ:  Objection; vague and

16   ambiguous.

17       A.   Yes.

18       Q.   Okay.  What was that?

19       A.   I worked for the Onyx 420 show, which is an

20   online streaming platform.  I claimed that.

21       Q.   And what did you claim on that?

22       A.   And I guess I would have also claimed

23   Dante's.

24       Q.   You guess or you know?

25       A.   I know.  I didn't get a 1099, but I'm

EXHIBIT C
Page 8 of 16

1    pretty sure I would have claimed it.

2        Q.   The $50?

3        A.   Yeah.

4        Q.   What about the additional 50 or 150 in

5    tips?

6        A.   I -- no, not that I know of.

7        Q.   And so -- and just to narrow it just a

8    little bit further, you have not reported any

9    income to state or federal -- on your state or

10   federal taxes regarding money received while

11   performing at Sassy's.

12       A.   That's correct.

13       Q.   And in addition to the stage tips we talked

14   about a second ago, there was also the

15   opportunity to make additional income through

16   private dances, correct?

17       A.   That's correct.

18       Q.   And that would be in between stage

19   performances?

20       A.   That's correct.

21       Q.   And was there a range of time that you

22   would have between stage performances to perform

23   private dances?

24       A.   We absolutely had to be on stage.  You had

25   to end a private dance if you were on stage next.

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 9 of 16

1    Q.   Right.   I'm looking for the space between

2    the stage performances.   About 45 minutes?   An

3    hour?   It varied?

4    A.   It depends on the day, because sometimes

5    there would be three dancers, sometimes there

6    would be ten dancers.

7    Q.   And the scheduling that they would do is to

8    best try to regulate, making sure they had enough

9    dancers and not too few or too many; is that your

10   understanding?

11             MS. MARTINEZ:   Objection --

12   A.   I don't know.

13             MS. MARTINEZ:   -- calls for

14   speculation.

15   Q.   Okay.   Does that sound like a reasonable

16   priority for a club the size of Sassy's to manage

17   how many people are working in a given night?

18   A.   No.

19             MS. MARTINEZ:   Objection.

20   A.   I worked at plenty of clubs that don't do

21   that.

22   Q.   Okay.   And those clubs tend to be bigger or

23   smaller?   The same size?

24   A.   Same size.

25   Q.   So --

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 10 of 16

1    A.   And bigger and smaller.

2    Q.   So private dances, those are something that

3  you had the ability to decide whether and who you

4  were going to perform a private dance for,

5  correct?

6    A.   There was a $20 minimum.

7    Q.   No, I meant if you didn't want to do

8  private dances at all, you had that option.

9    A.   Yes.

10   Q.   And you also had the option of kind of more

11  aggressively marketing yourself or seeking

12  private dances, right?

13   A.   We were told not to by other dancers.

14   Q.   Not to what?

15   A.   Be more aggressive with our sales tactics.

16   Q.   And I think I used a bad -- a bad word.

17  You can be more proactive.

18   A.   Yeah.  I got yelled at by other dancers for

19  being more proactive about --

20   Q.   Sure.

21   A.   -- my sales tactics.

22   Q.   So what was the circumstance of you being

23  yelled at by other dancers for being more

24  proactive?

25   A.   I was told that Sassy's is not a hustle

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 11 of 16

1    club.   I couldn't tell you what that means.

2        Q.   Did you ever ask a customer if they wanted

3    a private dance?

4        A.   Yeah.

5        Q.   Okay.   And that was not considered

6    hustling.

7        A.   It is considered hustling.

8        Q.   Okay.   And you still did that at that club,

9    correct?

10       A.   Yes.

11       Q.   And so how many -- you said there's a $20

12   fee for private dances, correct?

13       A.   Yes.

14       Q.   Was that a minimum or were you able to

15   negotiate something higher if you wanted?

16       A.   Sometimes.

17       Q.   And did you?

18       A.   Yes.

19       Q.   Were there -- did customers sometimes pay

20   more than whatever was negotiated for the dance

21   as a tip on the dance?

22       A.   Yes.

23       Q.   And how many dances generally would you --

24   private dances would you perform on a, let's say

25   a busy night or a slow night?

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 12 of 16

1    A.  On a slow night, zero, and on a busy night,
2    like 13.
3    Q.  And you said you occasionally would charge
4    more than $20.  Is that a handful of times or
5    more?
6    A.  My dances were one song for $40 and three
7    songs for $100.
8    Q.  Okay.  So your one song was double what the
9    bottom fee was.
10    A.  (Nodding head).
11    Q.  And how -- is there any estimate as far as
12    how many of your -- where your shifts fell as far
13    as did you -- would you try to work shifts where
14    you had more private dances?
15    A.  Yes.
16    Q.  That makes sense, right?
17            Was there any -- do you have any system
18    for recording the fees that you received for
19    those private dances?
20    A.  No.
21    Q.  And have you done -- taken any steps in
22    this lawsuit to estimate how many -- to estimate
23    how much that income might have been?
24    A.  No.
25    Q.  And again, that's something that was not

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 13 of 16

1    reported on federal or state income tax, correct?

2       A.   Correct.

3       Q.   And did all -- did all dancers make the

4    same amount in stage tips or dance fees?

5       A.   No.

6            MS. MARTINEZ:   Objection; calls for

7    speculation.

8       Q.   And you would talk to them about these

9    things, right?

10      A.   Yes.

11      Q.   And that was what your answer was based on,

12   correct?

13      A.   And just physically seeing the money.

14      Q.   And some dancers would make more money than

15   others, correct?

16      A.   Definitely.

17      Q.   And you said you never formally taught a

18   pole-dancing class, but you've informally

19   mentored other performers?

20      A.   Yeah.

21      Q.   Do you recall on how many occasions?

22      A.   No.   A lot.

23      Q.   A lot?

24      A.   Yeah.

25      Q.   And you actually did well with this before.

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 14 of 16

1    Just kind of a range that could capture.  More

2    than 50?  Less than -- less than a hundred?

3            MS. MARTINEZ:  Are you talking about

4    mentoring sessions or number of people mentored?

5            MR. KUCHULIS:  Yeah, that's a good --

6    that's a good distinction.

7            Let's talk about number of people

8    mentored.  Like more than ten, less than a

9    hundred?

10   A.   I would say more than five, less than 20.

11   Q.   Okay.

12   A.   Less than 15, maybe, even.

13   Q.   And do you remember any of their names?

14   A.   No.

15   Q.   Are you aware of whether any of them still

16   work at Sassy's or had worked at Sassy's?

17   A.   No.  Everybody at Sassy's was a better pole

18   dancer than me.

19   Q.   Is that different from other clubs you

20   worked at?

21   A.   Yeah.

22   Q.   Why do you think it is that Sassy's has

23   better pole dancers?

24   A.   Because their auditions are really hard.

25   Q.   What's an example of a club that has less

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 15 of 16

```
 1              C E R T I F I C A T E

 2         I, Chris Villano Iba, a Certified

 3    Shorthand Reporter of the State of Oregon, do

 4    hereby certify that ZOE HOLLIS personally

 5    appeared before me at the time and place

 6    mentioned in the caption herein; that the witness

 7    was first duly sworn on oath, and examined upon

 8    oral interrogatories propounded by counsel; that

 9    said examination, together with the testimony of

10    said witness, was taken down by me in stenotype

11    and thereafter reduced to print; and that the

12    foregoing transcript, Pages 1 to 264, inclusive,

13    constitutes a full, true and accurate record of

14    said examination of and testimony by said

15    witness, and of all other oral proceedings had

16    during the taking of said proceedings, and of the

17    whole thereof.

18         Witness my hand and seal as Certified

19    Shorthand Reporter at Portland, Oregon, this 26th

20    day of April, 2022.

21

22

23                   Chris Villano Iba
                     Certified Shorthand Reporter
24                   Certificate No. 90-0062
                     Expires September 30, 2024
25
```

IBA
SYMONDS
&DUNN
(503) 224-4438

EXHIBIT C
Page 16 of 16

Anthony D. Kuchulis, OSB No. 083891
akuchulis@littler.com
LITTLER MENDELSON, P.C.
1300 SW 5th Avenue
Wells Fargo Tower – Suite 2050
Portland, OR  97201
Telephone:      503.221.0309
Fax No.:          503.242.2457

Attorneys for Defendant

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| ZOE HOLLIS individually and on behalf of all others similarly situated<br><br>                                    Plaintiff,<br><br>        v.<br><br>R & R RESTAURANTS, INC dba SASSY'S, an Oregon corporation; STACY MAYHOOD, an individual; IAN HANNIGAN, an individual; and DOES 1 through 10, inclusive,<br><br>                                    Defendants. | Case No.: 3:21-cv-00965-YY<br><br>**COLLECTIVE ACTION**<br><br>**DEFENDANT R & R RESTAURANTS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

        Defendant R&R Restaurants, Inc. dba Sassy's ("Defendant" or "Sassy's") responds to

Plaintiff Zoe Hollis's ("Plaintiff") First Set of Interrogatories as follows:

### RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**   Please state the name and, the last known address, email address

and telephone number of each individual likely to have discoverable information, along with the

subject of that information, related to the allegations in the operative Complaint and/or Answer(s)

to the operative Complaint.

Page 1 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 1 of 18**

**RESPONSE:**

1. Zoe Hollis
   C/o Kristensen LLP
   12540 Beatrice St., Ste. 200
   Los Angeles, CA 90066
   (310) 507-7924

   Plaintiff Zoe Hollis has knowledge regarding their work at Sassy's as an independent contractor.

2. Frank Faillace
   C/o Littler Mendelson, P.C.
   1300 SW 5th Ave., Ste. 2050
   Portland, OR 97201
   (503) 221-0309

   Defendant Frank Faillace has knowledge regarding (1) the process of scheduling performers for performances at Sassy's; (2) the nominal venue expenses performers must pay to Sassy's for the privilege of performing there; (3) the business relationship between Sassy's and the performers who occasionally perform there; (4) Sassy's independent contractor agreements, including the Independent Contractor Agreement signed by Plaintiff; (5) Plaintiff's inability to be an adequate class representative; (6) the dates and times Plaintiff performed at Sassy's dating back three years prior to the filing of Plaintiff's Complaint; (7) the hands-off nature Sassy's takes to managing performances of performers; and (8) Dante's decision to refrain from further contracting with Plaintiff for her performances at Dante's during the pendency of Plaintiff's instant misclassification lawsuit.

3. Stacy Mayhood
   C/o Littler Mendelson, P.C.
   1300 SW 5th Ave., Ste. 2050
   Portland, OR 97201
   (503) 221-0309

   Defendant Stacy Mayhood has knowledge regarding (1) the process of scheduling performers for performances at Sassy's; (2) the nominal venue expenses performers must pay to Sassy's for the privilege of performing there; (3) the business relationship between Sassy's and the performers who occasionally perform there; (4) Sassy's independent contractor agreements, including the Independent Contractor Agreement signed by Plaintiff. (5) Plaintiff's inability to be an adequate class representative; (6) the dates and times Plaintiff performed at Sassy's dating back three years prior to the filing of Plaintiff's

Page 2 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309

**EXHIBIT D**
**Page 2 of 18**

Complaint; and (7) the hands-off nature Sassy's takes to managing performances of performers.

4.  Ian Hannigan
    C/o Littler Mendelson, P.C.
    1300 SW 5th Ave., Ste. 2050
    Portland, OR 97201
    (503) 221-0309

    Defendant Ian Hannigan has knowledge regarding (1) the process of scheduling performers for performances at Sassy's; (2) the nominal venue expenses performers must pay to Sassy's for the privilege of performing there; (3) the business relationship between Sassy's and the performers who occasionally perform there; (4) Sassy's independent contractor agreements, including the Independent Contractor Agreement signed by Plaintiff; (5) Plaintiff's inability to be an adequate class representative; (6) the dates and times Plaintiff performed at Sassy's dating back three years prior to the filing of Plaintiff's Complaint; and (7) the hands-off nature Sassy's takes to managing performances of performers.

5.  Jennifer Belloni
    C/o Littler Mendelson, P.C.
    1300 SW 5th Ave., Ste. 2050
    Portland, OR 97201
    (503) 221-0309

    Jennifer Belloni has knowledge regarding (1) the process of scheduling performers for performances at Sassy's; (2) the nominal venue expenses performers must pay to Sassy's for the privilege of performing there; (3) the business relationship between Sassy's and the performers who occasionally perform there; (4) Sassy's independent contractor agreements, including the Independent Contractor Agreement signed by Plaintiff; (5) Plaintiff's inability to be an adequate class representative; (6) the dates and times Plaintiff performed at Sassy's dating back three years prior to the filing of Plaintiff's Complaint; and (7) the hands-off nature Sassy's takes to managing performances of performers.

**INTERROGATORY NO. 2:**  Identify each and every person who served as a DJ, floor man, house mom and manager at **SASSY'S** during the period of time **PLAINTIFF** worked at **SASSY'S**.

(In these Interrogatories, "**IDENTIFY**" shall mean, in the case of a **PERSON**, to set forth a name, last known address, last known telephone number, and last known email address of the

Page 3 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 3 of 18**

**PERSON**, and in the case of a **DOCUMENT**, it shall mean to describe the **DOCUMENT** with particularity and state its location, and if known, its custodian, including the custodian's name, last known address, last known telephone number, and last known email address.)

(In these Interrogatories, "**PERSON**" means any natural person or any business, legal, or governmental entity.)

(In these Interrogatories, "**DOCUMENT(S)**" and/or "**DOCUMENTATION**" shall mean and refer to any and all **ESI**, emails, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium, including handwritten, typed, printed, pictorial, or graphic matter, however produced or reproduced, of every kind and description, and any other tangible thing, including without limitation any "writings," "originals," and "duplicates," as defined in the Federal Rules of Evidence, Rule 1001, *et seq.*, and as used herein shall refer to any and all writings, including, but not limited to, any facsimiles, electronic records and electronically stored information, film records, or productions. If a **DOCUMENT** has been prepared in more than one copy and any copy was not – or is no longer – identical to the original (whether by reason of notations, revisions, modifications, alterations, or marginal notes, including those made on "Post-Its" or their equivalent), each non-identical copy must be included. For the purposes of software and other electronic writings, revisions include, without limitation, upgrades, enhancements, new versions, patches and fixes. For example, the terms **DOCUMENT** and/or **DOCUMENTS** and/or **DOCUMENTATION** include, without limitation: all **ESI**, emails, letters, memos, specifications, drawings, records, correspondence, telegrams, notes, electronic records, facsimiles, calendar pages, check lists, files, file folders, sound recordings, memoranda, reports, written analyses, contracts and their supplements, amendments, and modifications, licenses, agreements, illustrations, diagrams, instructions, photographs, films, videotapes, electronic or magnetic tapes, software, computer printouts, reports, books, job or transaction files, records of telephone conversations, meetings or minutes of any

Page 4 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 4 of 18**

meetings, drafts of the foregoing, however denominated, any electronically stored documents such as electronic mail or other documents stored on a computer system, backed-up voicemail, any videotape, or audiotape. Any and all attachments or enclosures which accompany requested any **DOCUMENT** and/or **DOCUMENTS** and/or **DOCUMENTATION** shall be produced in response to these demands. The terms **DOCUMENT** and/or **DOCUMENTS** and/or **DOCUMENTATION** within the possession, custody or control of **SASSY'S** and within the possession, custody or control of sources and persons within the control of **SASSY'S**. The terms **DOCUMENT** and/or **DOCUMENTS** and/or **DOCUMENTATION** include all **ESI**, including all **ESI** in its **NATIVE FORMAT** with all associated metadata.)

(In these Interrogatories, "**PLAINTIFF**" shall mean and refer to plaintiff Zoe Hollis.)

(In these Interrogatories, "**YOU**," "**YOUR**," "**SASSY'S**," and/or "**YOU OR ANYONE ACTING ON YOUR BEHALF**" means and refers to defendant R & R Restaurants, Inc. dba Sassy's, and includes you, your agents, your officers, your directors, your managers, your employees, your insurance companies, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf or at your request.)

**RESPONSE:** Sassy's objects to Interrogatory No. 2 as an improper attempt to discover protected confidential employee information. Such non-discoverable and irrelevant information about employees of Sassy's has no connection to Plaintiff. Sassy's further objects and invokes the right of privacy over providing such information regarding individuals that have no relation to Plaintiff's claims in this action. Sassy's further objects to this interrogatory because a request for a list of every person who served as a DJ, floor man, house mom and manager at Sassy's during the time Plaintiff performed at Sassy's is unduly burdensome and overbroad considering the needs of this action. *See* Fed. R. Civ. P. 26(b)(1).

Page 5 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 5 of 18**

**INTERROGATORY NO. 3**:  **IDENTIFY** each and every **PERSON** who served as a DJ, floor man, house mom, bartender and manager at **SASSY'S** in the three years preceding the filing of the Complaint.

**RESPONSE:** Sassy's objects to Interrogatory No. 3 as an improper attempt to discover confidential personal information of unrelated parties, which is non-discoverable and not relevant to any claim or defense. Sassy's further objects and invokes the right of privacy over providing such information regarding individuals that have no relation to Plaintiff's claims. Sassy's further objects to this interrogatory because a request for a list of every person who served as a DJ, floor man, house mom and manager at Sassy's in the three years prior to the filing of Plaintiff's complaint is overbroad and unduly burdensome considering the needs of this action. *See* Fed. R. Civ. P. 26(b)(1).

**INTERROGATORY NO. 4**:  **IDENTIFY** each **PERSON** affiliated with **SASSY'S** since 2015 who was responsible for ensuring that **SASSY'S** complied with the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, and for each such **PERSON** state each and every act they engaged in to ensure that **SASSY'S** failure to pay entertainers the minimum and/or overtime wage complied with the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*.

**RESPONSE:** Like most small businesses, Sassy's does not have a dedicated staff member in charge of FLSA compliance. Nonetheless, the FLSA was complied with and all factors of the economic realities test were met with respect to the Plaintiff's work as a performer at this venue. The following individuals were involved with engaging with contractors that performed at the venue or employees that worked at the venue:

Page 6 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 6 of 18**

1. Frank Faillace
   C/o Littler Mendelson, P.C.
   1300 SW 5th Ave., Ste. 2050
   Portland, OR 97201
   (503) 221-0309

   Defendant Frank Faillace, as a part owner of Sassy's, used an independent contractor agreement prepared by the legal counsel of Sassy's former owner to contract with performers. This agreement is compliant with Oregon law and the Fair Labor Standards Act.

2. Stacy Mayhood
   C/o Littler Mendelson, P.C.
   1300 SW 5th Ave., Ste. 2050
   Portland, OR 97201
   (503) 221-0309

   Defendant Stacy Mayhood, as a part owner of Sassy's, used an independent contractor agreement prepared by the legal counsel of Sassy's former owner to contract with performers. This agreement is compliant with Oregon law and the Fair Labor Standards Act.

3. Ian Hannigan
   C/o Littler Mendelson, P.C.
   1300 SW 5th Ave., Ste. 2050
   Portland, OR 97201
   (503) 221-0309

   Defendant Ian Hannigan, as a part owner of Sassy's, used an independent contractor agreement prepared by the legal counsel of Sassy's former owner to contract with performers. This agreement is compliant with Oregon law and the Fair Labor Standards Act.

4. Jennifer Belloni
   C/o Littler Mendelson, P.C.
   1300 SW 5th Ave., Ste. 2050
   Portland, OR 97201
   (503) 221-0309

Page 7 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 7 of 18**

Jennifer Belloni, as a part owner of Sassy's, used an independent contractor agreement prepared by the legal counsel of Sassy's former owner to contract with performers. This agreement is compliant with Oregon law and the Fair Labor Standards Act.

**INTERROGATORY NO. 5:** **IDENTIFY** each step **SASSY'S** took to ascertain or learn the dictates of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* in the past five (5) years.

**RESPONSE:** See response and objections to Interrogatory No. 4.

**INTERROGATORY NO. 6:** **IDENTIFY** each step **SASSY'S** took to comply the dictates of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* in the past five (5) years.

**RESPONSE:** See response and objections to Interrogatory No. 4.

**INTERROGATORY NO. 7:** **IDENTIFY** each **PERSON** who performed as an exotic dancer at **SASSY'S** for the three years prior to the filing of the instant action, including if known, their addresses, their email addresses and telephone numbers.

**RESPONSE:** Sassy's objects to Interrogatory No. 7 as premature, irrelevant, overbroad, and unduly burdensome. First, for many good reasons, performers are highly protective of their identities and personal indemnifiable information. They go to great lengths to protect their identities from inadvertent disclosure, including using aliases when performing. Any frivolous disclosure of this highly sensitive information would irrevocably damage them and should be done only with their knowledge and consent, or by a court order.

Page 8 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 8 of 18**

Furthermore, this action has not yet been certified as a collective action and Plaintiff is the only plaintiff in this action. Therefore, a list of performers who performed at Sassy's in the three years prior to the filing of Plaintiff's complaint is premature. Additionally, absent an order from the Court certifying this case as a collective action, a list of performers who performed at Sassy's during the three years prior to the filing of Plaintiff's complaint has no relevance to Plaintiff's claims of FLSA violations and retaliation.

Performers are independent contractors, there are no personnel files for these individuals, meaning that searching for names and contact information of these performers will take considerable time and effort—effort that would be wasted (and incur needless costs) at this stage should the Court deny Plaintiff's Motion for Conditional Certification and Issuance of Notice Pursuant to Fair Labor Standards Act, 29 U.S.C. § 216(b).

**INTERROGATORY NO. 8:**    **IDENTIFY** each **PERSON** affiliated at **SASSY'S** for the three years prior to the filing of the instant action who was involved with setting or enforcing policies regarding dancers' payment structure.

**RESPONSE:**

1. Stacy Mayhood
   C/o Littler Mendelson, P.C.
   1300 SW 5th Ave., Ste. 2050
   Portland, OR 97201
   (503) 221-0309

2. Ian Hannigan
   C/o Littler Mendelson, P.C.
   1300 SW 5th Ave., Ste. 2050
   Portland, OR 97201
   (503) 221-0309

Page 9 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 9 of 18**

**INTERROGATORY NO. 9**:  **IDENTIFY** every date **YOU** contend **PLAINTIFF** worked at **SASSY'S** and the estimated number of dances or tips she earned, and the amount of tips she paid other **SASSY'S** employees for those nights.

**RESPONSE:** Sassy's objects to Interrogatory No. 9 as irrelevant, overly broad, and unduly burdensome, as it seeks information regarding Plaintiff's performances at Sassy's outside of the statute of limitations. The dates of Plaintiff's performances at Sassy's, the income they received from the performances, and any tips they voluntarily provided Sassy's employees that predate June 28, 2018 are outside the statute of limitations and therefore irrelevant to this action.

Notwithstanding the foregoing objection, Sassy's responds: Sassy's estimates that Plaintiff earned in excess of $50,000 in direct client contributions for all performances rendered at Sassy's. Sassy's is unable to estimate how much Plaintiff may have tipped Sassy's employees, as tipping was voluntary and solely within Plaintiff's discretion. Sassy's is unable to estimate how many dances Plaintiff performed during the three years prior to the filing of this action.

**INTERROGATORY NO. 10**:  **IDENTIFY** the house fees, including amount and dates, that were charged to **PLAINTIFF** at **SASSY'S**.

**RESPONSE:** During the three years prior to the filing of Plaintiff's Complaint, Plaintiff performed at Sassy's on the following dates and is estimated to have incurred expenses which the venue used to facilitate the logistical aspects of scheduling and organizing performances for the evenings worked:

Page 10 – DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 10 of 18**

1.  June 29, 2018 ($5)

2.  July 1, 2018 ($10)

3.  July 3, 2018 ($5)

4.  July 4, 2018 ($10)

5.  July 5, 2018 ($2)

6.  July 6, 2018 ($5)

7.  July 8, 2018 ($10)

8.  July 16, 2018 ($5)

9.  July 18, 2018 ($10)

10. July 19, 2018 ($2)

11. July 22, 2018 ($10)

12. July 23, 2018 ($5)

13. July 24, 2018 ($2)

14. July 26, 2018 ($10)

15. July 28, 2018 ($10)

16. July 30, 2018 ($5)

17. July 31, 2018 ($2)

18. August 1, 2018 ($10)

19. August 3, 2018 ($5)

20. August 6, 2018 ($5)

21. August 7, 2018 ($10)

22. August 10, 2018 ($5)

23. August 12, 2018 ($10)

24. August 20, 2018 ($5)

25. August 23, 2018 ($2)

Page 11 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D
Page 11 of 18**

26. August 24, 2018 ($10)

27. August 26, 2018 ($5)

28. August 27, 2018 ($10)

29. August 28, 2018 ($5)

30. August 29, 2018 ($2)

31. August 30, 2018 ($10)

32. August 31, 2018 ($5)

33. September 2, 2018 ($10)

34. September 3, 2018 ($5)

35. September 4, 2018 ($2)

36. September 5, 2018 ($5)

37. September 8, 2018 ($5)

38. September 9, 2018 ($10)

39. September 13, 2018 ($2)

40. September 14, 2018 ($5)

41. September 16, 2018 ($10)

42. September 17, 2018 ($10)

43. September 19, 2018 ($2)

44. September 21, 2018 ($5)

45. October 1, 2018 ($5)

46. October 3, 2018 ($2)

47. October 5, 2018 ($10)

48. October 6, 2018 ($5)

49. October 7, 2018 ($10)

50. October 8, 2018 ($5)

Page 12 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 12 of 18**

51. October 9, 2018 ($2)

52. October 12, 2018 ($5)

53. October 13, 2018 ($10)

54. October 15, 2018 ($10)

55. October 17, 2018 ($10)

56. October 18, 2018 ($5)

57. October 19, 2018 ($10)

58. October 22, 2018 ($5)

59. October 23, 2018 ($2)

60. October 24, 2018 ($5)

61. October 26, 2018 ($5)

62. October 27, 2018 ($10)

63. October 29, 2018 ($5)

64. October 30, 2018 ($10)

65. October 31, 2018 ($2)

66. November 2, 2018 ($5)

67. November 3, 2018 ($10)

68. November 9, 2018 ($5)

69. November 10, 2018 ($10)

70. November 11, 2018 ($5)

71. November 12, 2018 ($2)

72. November 13, 2018 ($5)

73. November 15, 2018 ($10)

74. November 16, 2018 ($5)

75. November 17, 2018 ($10)

Page 13 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 13 of 18**

76. November 19, 2018 ($10)

77. November 20, 2018 ($2)

78. November 22, 2018 ($10)

79. November 23, 2018 ($5)

80. November 26, 2018 ($5)

81. November 27, 2018 ($2)

82. November 28, 2018 ($10)

83. November 3, 2018 ($5)

84. December 1, 2018 ($10)

85. December 4, 2018 ($10)

86. December 6, 2018 ($2)

87. December 7, 2018 ($5)

88. December 9, 2018 ($10)

89. December 11, 2018 ($10)

90. December 12, 2018 ($5)

91. December 13, 2018 ($2)

92. December 14, 2018 ($5)

93. December 15, 2018 ($10)

94. December 17, 2018 ($5)

95. December 19, 2018 ($5)

96. December 21, 2018 ($5)

97. December 22, 2018 ($2)

98. December 23, 2018 ($10)

99. December 24, 2018 ($2)

100.    December 25, 2018 ($5)

Page 14 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 14 of 18**

101.     December 26, 2018 ($10)

102.     December 28, 2018 ($5)

103.     December 29, 2018 ($10)

104.     January 7, 2019 ($10)

105.     January 9, 2019 ($10)

106.     January 11, 2019 ($5)

107.     January 15, 2019 ($2)

108.     January 18, 2019 ($5)

109.     January 20, 2019 ($10)

110.     January 21, 2019 ($10)

111.     January 22, 2019 ($5)

112.     January 23, 2019 ($10)

113.     January 25, 2019 ($5)

114.     January 28, 2019 ($5)

115.     January 29, 2019 ($10)

116.     January 31, 2019 ($2)

117.     February 1, 2019 ($5)

118.     February 3, 2019 ($10)

119.     February 6, 2019 ($2)

120.     February 7, 2019 ($10)

121.     February 8, 2019 ($10)

122.     February 9, 2019 ($5)

123.     February 10, 2019 ($10)

124.     February 11, 2019 ($10)

125.     February 12, 2019 ($5)

Page 15 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309

**EXHIBIT D**
**Page 15 of 18**

126.       February 13, 2019 ($10)

127.       February 14, 2019 ($5)

128.       February 15, 2019 ($10)

129.       February 18, 2019 ($5)

130.       February 19, 2019 ($10)

131.       February 21, 2019 ($10)

132.       February 22, 2019 ($5)

133.       February 24, 2019 ($10)

134.       February 25, 2019 ($5)

135.       February 26, 2019 ($2)

136.       February 27, 2019 ($10)

137.       February 28, 2019 ($5)

138.       March 3, 2019 ($10)


**INTERROGATORY NO. 11:**  **IDENTIFY** each accountant or accounting firm **SASSY'S** has used in the past four years.

**RESPONSE:**

       Becker Bookkeeping
       Dba Becker Accounting Solutions
       501 Ne Hood Ave Suite 248
       Gresham, OR 97030
       PH:   503-252-9509
       Fax:  1-888-915-2920

Page 16 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 16 of 18**

DATED this 20th day of October, 2021.

LITTLER MENDELSON P.C.

By  /s/ Anthony D. Kuchulis
Anthony D. Kuchulis, OSB No.  083891
akuchulis@litttler.com

Attorneys for Defendant

Page 17 – DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

LITTLER MENDELSON, PC
1300 SW 5th Avenue Suite 2050
Portland, OR  97201
Tel: 503.221.0309
**EXHIBIT D**
**Page 17 of 18**

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2021, I served the foregoing **DEFENDANT R & R RESTAURANTS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** on the following parties:

> S. Amanda Marshall
> S. AMANDA MARSHALL, LLC
> 4545 SW Angel Avenue
> Beaverton, Oregon 97005
> Phone: (503) 472-7190
> amanda@maclaw.law
>
> Jesenia A. Martinez
> KRISTENSEN LLP
> 12540 Beatrice Street, Ste. 200
> Los Angeles, CA 90066
> Phone: (310) 507-7924
> jesenia@kristensenlaw.com
>
> Attorneys for Plaintiff

by the following indicated method(s) set forth below:

☐    **Electronic Filing using the Court's ECF System**

☑    **Email**

☐    **Hand Delivery**

☑    **First-class mail, postage prepaid**

_/s/ Joseph Q. Ridgeway_
Joseph Q. Ridgeway

Page 18 – CERTIFICATE OF SERVICE

**EXHIBIT D**
**Page 18 of 18**

S. Amanda Marshall – OSB No. 953473
**S. AMANDA MARSHALL, LLC**
1318 NW Northrup Street
Portland, OR 97209
Phone: (503) 472-7190
*amanda@maclaw.law*

Jesenia A. Martinez – Cal. Bar No. 316969
(*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, CA 90211
Phone: (310) 273-1230
*jmartinez@cz.law*

***Attorneys for Plaintiff***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ZOE HOLLIS individually and on behalf of all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> R & R RESTAURANTS, INC dba SASSY'S, an Oregon corporation; STACY MAYHOOD, an individual; IAN HANNIGAN, an individual; FRANK FAILLACE, an individual; and DOES 2 through 10, inclusive, <br><br> Defendants. | ) Case No.: 3:21-cv-00965-YY <br> ) <br> ) **COLLECTIVE ACTION** <br> ) <br> ) **PLAINTIFF ZOE HOLLIS' RESPONSES TO** <br> ) **DEFENDANTS' REQUESTS FOR** <br> ) **ADMISSION, SET ONE** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**Propounding Parties:   Defendants R&R RESTAURANTS, INC. dba SASSY'S,**

**STACY MAYHOOD, IAN HANNIGAN, and FRANK FAILLACE**

**Responding Party:      Plaintiff ZOE HOLLIS**

**Set Number:            One (1)**

---

**COMES NOW** plaintiff Zoe Hollis ("Plaintiff"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 36 and hereby responds to defendants R&R Restaurants, Inc. dba Sassy's, Stacy Mayhood, Ian Hannigan, and Frank Faillace's Requests for Admission as follows:

## GENERAL STATEMENT

All responses are made without, in any way, waiving or intending to waive:

A.      All questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose and in any preliminary or subsequent proceeding or in the trial of this or any other action;

B.      The right to object to the use of any of these responses, or the subject matter thereof, in any preliminary or subsequent proceeding or in the trial of this or any other action;

C.      The right to elicit appropriate evidence, beyond the discovery responses themselves, regarding the subjects referred to in or in response to any discovery request; and

D.      The right at any time to supplement, amend, correct or modify any of the responses set forth below.

## GENERAL OBJECTIONS

1.      Plaintiff objects to the Requests to the extent they seek discovery of information and production of documents beyond that which is permitted by the Federal Rules of Civil Procedure.

2.      Plaintiff objects to the Requests to the extent they seek discovery of information or documents protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

3.      Plaintiff objects to the Requests to the extent they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Plaintiff objects to the Requests and each instruction and definition therein to the extent they are vague, ambiguous, overly broad, or unduly burdensome.

5.      Plaintiff objects to the Requests to the extent that they seek information that is not within Plaintiff's possession, custody, or control.

6.      Plaintiff objects to the Requests to the extent that they require Plaintiff to analyze or organize factual evidence already known to the Respondents.

7.      Plaintiff objects to the Requests to the extent that they are not limited to seek information regarding the subject matter of this litigation.

8.      Plaintiff may be omitting from the Responses the identification of individuals whose knowledge of relevant facts the Plaintiff has not yet been able to establish. Plaintiff does not waive their right to call as witnesses at trial those persons who are not being individually identified at this time, nor does Plaintiff waive their right to rely upon or use at trial facts and documents that are not being produced or individually identified at this time. Plaintiff will identify for the Defendants in advance of trial those persons Plaintiff plans to call as witnesses at trial and the documents Plaintiff plans to introduce as exhibits at trial.

9.      Plaintiff objects to the Requests to the extent they seek information that is already known to Defendants or their counsel, or in the possession, custody, or that can be obtained from some other source that is more convenient to Defendants, less burdensome to Plaintiff and less expensive for both parties.

Plaintiff's investigation of the facts and preparation for trial is incomplete as discovery is ongoing. Plaintiff reserves the right to supplement, amend, and/or correct all or any part of the responses provided herein without waiver of any of the foregoing objections. Plaintiff asserts each of these general objections to each of the Requests herein. The failure to assert a general objection or the assertion of a specific objection in response to a particular interrogatory does not constitute a waiver of any general objection. Subject to and without waiving the above general objections to all paragraphs of the Requests, Plaintiff responds as follows:

## RESPONSES TO REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that **Exhibit A** is a true and correct copy of the Agreement you were presented with on or about June 7, 2017.

///

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Admit. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 2:**

Admit that you signed **Exhibit A**.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2**

Admit. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 3:**

Admit you did not raise any concerns about working as an independent contractor at Sassy's prior to signing **Exhibit A**.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 4:**

Admit you did not perform at Sassy's after March 3, 2019.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Admit. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 5:**

Admit you did not raise concerns to Defendants regarding your classification as an independent contractor during the time you were a performer at Sassy's.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

///

///

**PLAINTIFF ZOE HOLLIS' RESPONSES TO DEEFENDANTS'**      **PAGE 4**
**REQUESTS FOR ADMISSION, SET ONE**

**REQUEST FOR ADMISSION NO. 6:**

Admit Defendants did not restrict your ability to perform at other Live Performance Venues between June 7, 2017 and March 3, 2019.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Admit. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 7:**

Admit you performed at one or more other Live Performance Venues besides Sassy's between June 7, 2017 and March 3, 2019.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Admit. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 8:**

Admit you signed a contract acknowledging you intended to perform at Sassy's as an independent contractor.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Objection. This request calls for a legal conclusion/opinion of a lay witness. This request is vague and ambiguous as to "contract" and fails to specify any particular document that would allow Plaintiff to respond.

**REQUEST FOR ADMISSION NO. 9:**

Admit that you received compensation for your live performances at Sassy's through tips from customers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Admit to the extent Plaintif received tips from customers at the customers' discretion. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

///

///

---

**REQUEST FOR ADMISSION NO. 10:**

Admit that private dances at Sassy's had a mandatory minimum service fee of $20 per song.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Plaintiff has made a reasonable inquiry and the information known to them or can readily obtain is insufficient to enable Plaintiff to admit or deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 11:**

Admit that you did not pay any of the minimum service fees for private dances to Defendants.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Plaintiff has made a reasonable inquiry and the information known to them or can readily obtain is insufficient to enable Plaintiff to admit or deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 12:**

Admit that you made hundreds of dollars' worth of investments in your appearance and performance leading up to and during your time performing at Sassy's.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Admit. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 13:**

Admit you could select the outfit you would wear for your performances at Sassy's, so long as it met the baseline outlined in **Exhibit A**.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Admit. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

///

**REQUEST FOR ADMISSION NO. 14:**

Admit there is no policy at Sassy's requiring performers to tip DJs or security.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 15:**

Admit there is a policy at Sassy's that required customers to tip performers during their performances.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Admit that there is a policy that was not enforced and with which customers did not always comply. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 16:**

Admit that, outside of the limited rules contained in **Exhibit A**, you had full artistic control over your stage and private dance performances at Sassy's.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 17:**

Admit that you had broad discretion over when you wanted to work or not work at Sassy's.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 18:**

Admit that you performed, on average, two or more private dances during evening shifts at Sassy's.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Plaintiff has made a reasonable inquiry and the information known to them or can readily obtain is insufficient to enable Plaintiff to admit or deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 19:**

Admit you did not report all the income you received in tips from Sassy's when you filed your taxes for 2018.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Admit to the extent Plaintiff did not receive a form 1099 from Defendants. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 20:**

Admit you did not report all the income you received in tips from Sassy's when you filed your taxes for 2019.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Admit to the extent Plaintiff did not receive a form 1099 from Defendants. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 21:**

Admit that tips and service fees for private dances received from customers while performing at Sassy's is taxable income.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Objection. This request calls for a legal conclusion/opinion of a lay witness.

**REQUEST FOR ADMISSION NO. 22:**

Admit you have no documents to support your position that Defendants "willfully" violated the FLSA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 23:**

Admit that when you performed at Dante's, you were properly classified as an independent contractor.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Objection. This request calls for a legal conclusion/opinion of a lay witness.

**REQUEST FOR ADMISSION NO. 24:**

Admit that after you filed the above-captioned lawsuit, Defendants contracted with you to provide diversity, equity, and inclusion trainings for their workers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 25:**

Admit that your work at Dante's, i.e., performing on stage for tips, is similar to the compensation structure that applied to your performances at Sassy's.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Deny. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR ADMISSION NO. 26:**

Admit that you did not report all tips received from your stage performances at Dante's as taxable income.

///

///

///

///

///

///

///

### Response to Request for Admission No. 26:

Objection. This request seeks information that is not relevamt and not reasonably calculated to lead to the discovery of admissible evidence. This request calls for a legal conclusion/opinion of a lay witness.

Dated: February 28, 2022

*/s/ Jesenia A. Martinez*
Jesenia A. Martinez
Cal. Bar No. 316969
(*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, CA 90211
Phone: (310) 273-1230
*jmartinez@cz.law*

S. Amanda Marshall
OSB No. 953473
**S. AMANDA MARSHALL, LLC**
1318 NW Northrup Street
Portland, Oregon 97209
Phone: (503) 472-7190
*amanda@maclaw.law*

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Monday, February 28, 2022 a true and correct copy of the attached **PLAINTIFF ZOE HOLLIS' RESPONSES TO DEFENDANTS' REQUESTS FOR ADMISSION, SET ONE** was served via email upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:

Anthony Kuchulis
Joseph Q. Ridgeway
**LITTLE MENDELSON P.C.**
1300 SW 5th Avenue, Suite 2050
Portland, Oregon 97201
Email: akuchulis@littler.com
Email: jridgeway@littler.com
Email: sarney@littler.com


*Counsel for Defendants*


        */s/ Jesenia A. Martinez*
        Jesenia A. Martinez

S. Amanda Marshall – OSB No. 953473
**S. AMANDA MARSHALL, LLC**
1318 NW Northrup Street
Portland, OR 97209
Phone: (503) 472-7190
*amanda@maclaw.law*

Jesenia A. Martinez – Cal. Bar No. 316969
(*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, CA 90211
Phone: (310) 273-1230
*jmartinez@cz.law*

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ZOE HOLLIS individually and on behalf of all others similarly situated, | ) Case No.: 3:21-cv-00965-YY |
| | ) |
| Plaintiff | ) **COLLECTIVE ACTION** |
| | ) |
| v. | ) **PLAINTIFF ZOE HOLLIS'** |
| | ) **SUPPLEMENTAL RESPONSES TO** |
| | ) **DEFENDANTS' INTERROGATORIES, SET** |
| R & R RESTAURANTS, INC dba | ) **ONE** |
| SASSY'S, an Oregon corporation; STACY | ) |
| MAYHOOD, an individual; IAN | ) |
| HANNIGAN, an individual; FRANK | ) |
| FAILLACE, an individual; and DOES 2 | ) |
| through 10, inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

Propounding Parties:  **Defendants R&R RESTAURANTS, INC. dba SASSY'S,**

**STACY MAYHOOD, IAN HANNIGAN, and FRANK FAILLACE**

Responding Party:  **Plaintiff ZOE HOLLIS**

Set Number:  **One (1)**

**PLAINTIFF ZOE HOLLIS' SUPPLEMENTAL**
**RESPONSES TO DEEFENDANTS'**
**INTERROGATORIES, SET ONE**

**PAGE 1**

**EXHIBIT F**
**Page 1 of 8**

**COMES NOW** plaintiff Zoe Hollis ("Plaintiff"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 33 and hereby responds to defendants R&R Restaurants, Inc. dba Sassy's, Stacy Mayhood, Ian Hannigan, and Frank Faillace's Interrogatories as follows:

## GENERAL STATEMENT

All responses are made without, in any way, waiving or intending to waive:

A.      All questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose and in any preliminary or subsequent proceeding or in the trial of this or any other action;

B.      The right to object to the use of any of these responses, or the subject matter thereof, in any preliminary or subsequent proceeding or in the trial of this or any other action;

C.      The right to elicit appropriate evidence, beyond the discovery responses themselves, regarding the subjects referred to in or in response to any discovery request; and

D.      The right at any time to supplement, amend, correct or modify any of the responses set forth below.

## GENERAL OBJECTIONS

1.      Plaintiff objects to the Interrogatories to the extent they seek discovery of information and production of documents beyond that which is permitted by the Federal Rules of Civil Procedure.

2.      Plaintiff objects to the Interrogatories to the extent they seek discovery of information or documents protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

3.      Plaintiff objects to the Interrogatories to the extent they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Plaintiff objects to the Interrogatories and each instruction and definition therein to the extent they are vague, ambiguous, overly broad, or unduly burdensome.

5.      Plaintiff objects to the Interrogatories to the extent that they seek information that

is not within Plaintiff's possession, custody, or control.

6.      Plaintiff objects to the Interrogatories to the extent that they require Plaintiff to analyze or organize factual evidence already known to the Respondents.

7.      Plaintiff objects to the Interrogatories to the extent that they are not limited to seek information regarding the subject matter of this litigation.

8.      Plaintiff may be omitting from the Responses the identification of individuals whose knowledge of relevant facts the Plaintiff has not yet been able to establish. Plaintiff does not waive their right to call as witnesses at trial those persons who are not being individually identified at this time, nor does Plaintiff waive their right to rely upon or use at trial facts and documents that are not being produced or individually identified at this time. Plaintiff will identify for the Defendants in advance of trial those persons Plaintiff plans to call as witnesses at trial and the documents Plaintiff plans to introduce as exhibits at trial.

9.      Plaintiff objects to the Interrogatories to the extent they seek information that is already known to Defendants or their counsel, or in the possession, custody, or that can be obtained from some other source that is more convenient to Defendants, less burdensome to Plaintiff and less expensive for both parties.

Plaintiff's investigation of the facts and preparation for trial is incomplete as discovery is ongoing. Plaintiff reserves the right to supplement, amend, and/or correct all or any part of the responses provided herein without waiver of any of the foregoing objections. Plaintiff asserts each of these general objections to each of the Interrogatories herein. The failure to assert a general objection or the assertion of a specific objection in response to a particular interrogatory does not constitute a waiver of any general objection. Subject to and without waiving the above general objections to all paragraphs of the Interrogatories, Plaintiff responds as follows:

///

///

///

**PLAINTIFF ZOE HOLLIS' SUPPLEMENTAL**
**RESPONSES TO DEEFENDANTS'**
**INTERROGATORIES, SET ONE**

**PAGE 3**

**EXHIBIT F**
**Page 3 of 8**

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 6:**

Identify every date and time you contend you worked at Sassy's, and for each such date so identified, state the hours worked, whether there is documentation supporting that you worked that dat, and how much money you made in tips, private dances, customer fees, and any other source.

**RESPONSE TO INTERROGATORY NO. 6:**

Objection. This interrogatory contains improper subparts that exceed the number of permissible interrogatories per Fed. R. Civ. P. 33. Without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff estimates she worked at Sassy's around 3 to 4 days per week, some weeks 6 days. Plaintiff worked double shifts usually three times per month. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Objection. This interrogatory contains improper subparts that exceed the number of permissible interrogatories per Fed. R. Civ. P. 33. Without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff estimates she worked at Sassy's around 3 to 4 days per week, some weeks 6 days. Plaintiff worked double shifts usually three times per month. On days Plaintiff worked a single shift, she typically worked approximely 6 hours per shift. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 15:**

Identify the damages sought by Plaintiff from Defendants, including the sums Plaintiff seeks from each claim for relief sought, the non-economic and economic alleged losses, the total amount sought, and any additional amounts that may be added later based on further investigations.

<u>**RESPONSE TO INTERROGATORY NO. 15:**</u>

Objection. This interrogatory contains improper subparts that exceed the number of permissible interrogatories per Fed. R. Civ. P. 33. This interrogatory calls for information protected by the attorney work product doctrine. This interrogatory seeks the premature disclosure of expert witness information/opinions/reports. Without waiving the foregoing objections, Plaintiff responds as follow:

Plaintiff is seeking minimum wage and overtime wages for hours she worked at Sassy's plus liquidated damages and attorneys' fees pursuant to the FLSA. In addition, Plaintiff seeks restitution of all illegal kickbacks and tips paid to Sassy's employees. Plaintiff also seeks damages for unlawful retaliation pursuant to the FLSA in an amount according to proof. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

<u>**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**</u>

Objection. This interrogatory contains improper subparts that exceed the number of permissible interrogatories per Fed. R. Civ. P. 33. This interrogatory calls for information protected by the attorney work product doctrine. This interrogatory seeks the premature disclosure of expert witness information/opinions/reports. Without waiving the foregoing objections, Plaintiff responds as follow:

Plaintiff is seeking minimum wage and overtime wages for hours she worked at Sassy's plus liquidated damages and attorneys' fees pursuant to the FLSA. In addition, Plaintiff seeks restitution of all illegal kickbacks and tips paid to Sassy's employees. Plaintiff also seeks damages for unlawful retaliation pursuant to the FLSA in an amount according to proof. Plaintiff seeks federal minimum wages of $7.25 for all regular hours worked plus liquidated damages. Plaintiff seeks federal overtime wages of $14.50 for all overtime hours worked plus liquidated damages In addition, Plaintiff is entitled to restitution of all tips paid to Defendants and their employees. Claimant is entitled to recover liquidated damages for all wages owed to her, plus interest, and as a prevailing party, they would be entitled to a recovery of attorneys' fees and

**PLAINTIFF ZOE HOLLIS' SUPPLEMENTAL**
**RESPONSES TO DEEFENDANTS'**
**INTERROGATORIES, SET ONE**

**PAGE 5**

**EXHIBIT F**
**Page 5 of 8**

costs. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

Dated: April 11, 2022

/s/ Jesenia A. Martinez
Jesenia A. Martinez
Cal. Bar No. 316969
(*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, CA 90211
Phone: (310) 273-1230
*jmartinez@cz.law*

S. Amanda Marshall
OSB No. 953473
**S. AMANDA MARSHALL, LLC**
1318 NW Northrup Street
Portland, Oregon 97209
Phone: (503) 472-7190
*amanda@maclaw.law*

*Attorneys for Plaintiff*

*Hollis v. R&R Restaurants, Inc. dba Sassy's, et al.*

United States District Court for the District of Oregon

Case No. 3:21-cv-00965-YY

**<u>VERIFICATION</u>**

I, Zoe Hollis, declare under penalty of perjury under the laws of the State of Oregon, as follows:

I am the claimant in the above-captioned matter. I have read the foregoing **PLAINTIFF ZOE HOLLIS' SUPPLEMENTAL RESPONSES TO DEFENDANTS' INTERROGATORIES, SET ONE**, and know the contents thereof. The matters stated are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

Executed on _____4/11/2022_____ in Oregon.

DocuSigned by:

CB815AC876C245B...

Zoe Hollis

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Monday, April 11, 2022 a true and correct copy of the attached **PLAINTIFF ZOE HOLLIS' SUPPLEMENTAL RESPONSES TO DEFENDANTS' INTERROGATORIES, SET ONE** was served via email upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:

Anthony Kuchulis
Joseph Q. Ridgeway
**LITTLE MENDELSON P.C.**
1300 SW 5th Avenue, Suite 2050
Portland, Oregon 97201
Email: akuchulis@littler.com
Email: jridgeway@littler.com
Email: sarney@littler.com


*Counsel for Defendants*


_____
*/s/ Jesenia A. Martinez*
Jesenia A. Martinez

S. Amanda Marshall – OSB No. 953473
**S. AMANDA MARSHALL, LLC**
1318 NW Northrup Street
Portland, OR 97209
Phone: (503) 472-7190
*amanda@maclaw.law*

Jesenia A. Martinez – Cal. Bar No. 316969
(*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, CA 90211
Phone: (310) 273-1230
*jmartinez@cz.law*

***Attorneys for Plaintiff***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ZOE HOLLIS individually and on behalf of all others similarly situated, | ) Case No.: 3:21-cv-00965-YY |
| | ) |
| Plaintiff | ) **COLLECTIVE ACTION** |
| | ) |
| v. | ) **PLAINTIFF ZOE HOLLIS'** |
| | ) **SUPPLEMENTAL RESPONSES TO** |
| | ) **DEFENDANTS' REQUESTS FOR** |
| R & R RESTAURANTS, INC dba | ) **PRODUCTION, SET ONE** |
| SASSY'S, an Oregon corporation; STACY | ) |
| MAYHOOD, an individual; IAN | ) |
| HANNIGAN, an individual; FRANK | ) |
| FAILLACE, an individual; and DOES 2 | ) |
| through 10, inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

Propounding Parties:    **Defendants R&R RESTAURANTS, INC. dba SASSY'S,**

                                     **STACY MAYHOOD, IAN HANNIGAN, and FRANK FAILLACE**

Responding Party:    **Plaintiff ZOE HOLLIS**

Set Number:    **One (1)**

PLAINTIFF ZOE HOLLIS' SUPPLEMENTAL RESPONSES    PAGE 1
TO DEEFENDANTS' REQUESTS FOR PRODUCTION, SET
ONE

**COMES NOW** plaintiff Zoe Hollis ("Plaintiff"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 34 and hereby responds to defendants R&R Restaurants, Inc. dba Sassy's, Stacy Mayhood, Ian Hannigan, and Frank Faillace's Requests for Production as follows:

<u>**GENERAL STATEMENT**</u>

All responses are made without, in any way, waiving or intending to waive:

A.      All questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose and in any preliminary or subsequent proceeding or in the trial of this or any other action;

B.      The right to object to the use of any of these responses, or the subject matter thereof, in any preliminary or subsequent proceeding or in the trial of this or any other action;

C.      The right to elicit appropriate evidence, beyond the discovery responses themselves, regarding the subjects referred to in or in response to any discovery request; and

D.      The right at any time to supplement, amend, correct or modify any of the responses set forth below.

<u>**GENERAL OBJECTIONS**</u>

1.      Plaintiff objects to the Requests to the extent they seek discovery of information and production of documents beyond that which is permitted by the Federal Rules of Civil Procedure.

2.      Plaintiff objects to the Requests to the extent they seek discovery of information or documents protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

3.      Plaintiff objects to the Requests to the extent they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Plaintiff objects to the Requests and each instruction and definition therein to the extent they are vague, ambiguous, overly broad, or unduly burdensome.

5.      Plaintiff objects to the Requests to the extent that they seek information that is not within Plaintiff's possession, custody, or control.

6.      Plaintiff objects to the Requests to the extent that they require Plaintiff to analyze or organize factual evidence already known to the Respondents.

7.      Plaintiff objects to the Requests to the extent that they are not limited to seek information regarding the subject matter of this litigation.

8.      Plaintiff may be omitting from the Responses the identification of individuals whose knowledge of relevant facts the Plaintiff has not yet been able to establish. Plaintiff does not waive their right to call as witnesses at trial those persons who are not being individually identified at this time, nor does Plaintiff waive their right to rely upon or use at trial facts and documents that are not being produced or individually identified at this time. Plaintiff will identify for the Defendants in advance of trial those persons Plaintiff plans to call as witnesses at trial and the documents Plaintiff plans to introduce as exhibits at trial.

9.      Plaintiff objects to the Requests to the extent they seek information that is already known to Defendants or their counsel, or in the possession, custody, or that can be obtained from some other source that is more convenient to Defendants, less burdensome to Plaintiff and less expensive for both parties.

Plaintiff's investigation of the facts and preparation for trial is incomplete as discovery is ongoing. Plaintiff reserves the right to supplement, amend, and/or correct all or any part of the responses provided herein without waiver of any of the foregoing Objection. Plaintiff asserts each of these general objections to each of the Requests herein. The failure to assert a general objection or the assertion of a specific objection in response to a particular interrogatory does not constitute a waiver of any general objection. Subject to and without waiving the above general objections to all paragraphs of the Requests, Plaintiff responds as follows:

///

///

## SUPPLEMENTAL RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 2:**

Produce all documents reflecting any compensation, tips, dance fees, service fees, or any other form of income whatsoever received from any source earned for performances rendered at Sassy's. This Request includes any bank deposit forms, tax documents, personal records, notes, calendars, or anything else reasonably calculated to extrapolate what was paid to Plaintiff for performances rendered at Sassy's, when, and how much.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Objection. This request fails to specify with reasonable particularity the documents sought. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff is unable to comply with this request as they have no responsive documents in their possession, custody or control. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Objection. This request fails to specify with reasonable particularity the documents sought. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff is unable to comply with this request as they have no responsive documents in their possession, custody or control at this time. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 5:**

Produce all documents, social media, and correspondence relating to any work performed at other Live Performance Venues (besides Sassy's) from January 1, 2016 to the present. This

Request includes any documents, communications, or social media relating to those Live

Performance Venues' treatment and compensation of performers and any information regarding

whether, or how, those locations properly classified performers as contractors or employees. This

Request also includes any rules, stage fees, tips paid or earned, or any other information that

would lead a reasonable fact finder to determine that the other Live Performance Venues were

either similar or distinct in relation to Sassy's regarding the way they treated performers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Objection. This request fails to state with sufficient particularity the documents sought.

This request seeks information that is not reasonably calculated to lead to the discovery of

admissible evidence. This request seeks information protected by the attorney-client privilege

and/or attorney work product doctrine. Without waiving the foregoing objections, Plaintiff

responds as follows:

After a diligent search and reasonable inquiry, Plaintiff will produce all non-privileged

responsive documents in their possession, custody or control. Plaintiff is informed and believes

that Defendants have responsive documents within their possession, custody or control.

Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Objection. This request fails to state with sufficient particularity the documents sought.

This request seeks information that is not reasonably calculated to lead to the discovery of

admissible evidence. This request seeks information protected by the attorney-client privilege

and/or attorney work product doctrine. Without waiving the foregoing objections, Plaintiff

responds as follows:

After a diligent search and reasonable inquiry, Plaintiff has produced all non-privileged

responsive documents in their possession, custody or control pertaining to Sassy's Bates

numbered ZH1–170 and ZH179–184. Plaintiff is informed and believes that Defendants have

responsive documents within their possession, custody or control. Discovery is ongoing and

Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 6:**

Produce all documents relating to Plaintiff's tax documents or filings with the state or federal government from January 1, 2018 to the present. This Request includes any tax returns, refunds, Form 1099s, Form W-2s, receipts, income statements, or any other information that could be used to determine what Plaintiff did, or did not, report to the applicable government agencies regarding income received from June 7, 2017 to the present from any source.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Objection. This request seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. This request fails to specify with reasonable particularity the documents sought. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff is unable to comply with this request as they have no responsive documents in their possession, custody or control. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Objection. This request seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. This request fails to specify with reasonable particularity the documents sought. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff is unable to comply with this request as they have no responsive documents in their possession, custody or control at this time. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend

PLAINTIFF ZOE HOLLIS' SUPPLEMENTAL RESPONSES
TO DEEFENDANTS' REQUESTS FOR PRODUCTION, SET
ONE

PAGE 6

**EXHIBIT G
Page 6 of 13**

and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 8:**

Produce all documents, correspondence and social media regarding any training, classes, certifications, or courses in which you participated, in any way, relating to the type of work performed at Sassy's or any other Live Performance Venue. This Request includes exercise classes, pole dancing classes, performing arts classes, make-up or hair styling tutorials, or anything that may be reasonably related to those categories

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Objection. This request fails to state with sufficient particularity the documents sought. This request seeks information that is not relevant and reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff will produce all non-privileged responsive documents in their possession, custody or control. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Objection. This request fails to state with sufficient particularity the documents sought. This request seeks information that is not relevant and reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff has produced all non-privileged responsive documents in their possession, custody or control pertaining to Sassy's Bates numbered ZH39–111 and ZH184. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 9:**

Produce all documents, correspondence and social media related to, or relied upon to estimate expenses associated with your performances at Sassy's, including hair, makeup, outfits, classes, fitness memberships, or anything else reasonably related to your performances or private dances. This Request includes all documents relating to the allegation contained in Paragraph 61 of the Complaint that Plaintiff spent an estimated $500 a year on "makeup, hair-related expenses and outfits."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Objection. This request fails to state with sufficient particularity the documents sought. This request seeks information that is not relevant and reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff will produce all non-privileged responsive documents in their possession, custody or control. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Objection. This request fails to state with sufficient particularity the documents sought. This request seeks information that is not relevant and reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff has produced all non-privileged responsive documents in their possession, custody or control pertaining to Sassy's Bates numbered ZH2–7, ZH11, ZH19–21, ZH23–27, ZH29, ZH39–111, ZH170, ZH179, and ZH184. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend

and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 10:**

Produce all documents, correspondence, and social media related to, or relied upon, to estimate expenses associated with your work at any Live Performance Venue between January 1, 2015 and the present, including hair, makeup, outfits, classes, fitness memberships, or anything else reasonably related to your performances or private dances.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Objection. This request fails to state with sufficient particularity the documents sought. This request seeks information that is not relevant and reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff will produce all non-privileged responsive documents in their possession, custody or control pertaining to Sassy's. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Objection. This request fails to state with sufficient particularity the documents sought. This request seeks information that is not relevant and reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff has produced all non-privileged responsive documents in their possession, custody or control pertaining to Sassy's Bates numbered ZH2–7, ZH11, ZH19–21, ZH23–27, ZH29, ZH39–111, ZH170, ZH179, and ZH184. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend

and/or supplement this response.

### REQUEST FOR PRODUCTION NO. 13:

Produce all documents, correspondence, or social media relating to your profits or losses while working at any Live Performance Venue between January 1, 2016 and the present. This includes any notes, accountings, bank or budgeting tools, or any other way of tracking income earned in those jobs.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

Objection. This request seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. This request fails to specify with reasonable particularity the documents sought. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff is unable to comply with this request as they have no responsive documents in their possession, custody or control regarding Sassy's. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

### SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

Objection. This request seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. This request fails to specify with reasonable particularity the documents sought. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff is unable to comply with this request as they have no responsive documents in their possession, custody or control at this time. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 22:**

Produce all documents reflecting postings made by you or about you on Facebook, Twitter, or any social media site, blog, message board, or other Internet site that relate to or reference Defendants (or any one of them) and/or any of the allegations in your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

After a diligent search and reasonable inquiry, Plaintiff will produce all non-privileged responsive documents in their possession, custody or control. Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

After a diligent search and reasonable inquiry, Plaintiff has produced all non-privileged responsive documents in their possession, custody or control pertaining to Sassy's Bates numbered ZH171–177, Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 26:**

Produce all documents, correspondence, or social media relating to your work with Dante's, including your pay, classification, schedule, performance rules, and how it was similar to, or different from, your work at other Live Performance Venues.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Objection. This request fails to specify with reasonable particularity the documents sought. This request is overbroad in time and scope. This request seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff will produce all non-privileged responsive documents in their possession, custody or control pertaining to Sassy's. Plaintiff is

informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.

<u>S</u>UPPLEMENTAL <u>R</u>ESPONSE TO <u>R</u>EQUEST FOR <u>P</u>RODUCTION <u>N</u>O. 26:

Objection. This request fails to specify with reasonable particularity the documents sought. This request is overbroad in time and scope. This request seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Plaintiff responds as follows:

After a diligent search and reasonable inquiry, Plaintiff has produced all non-privileged responsive documents in their possession, custody or control pertaining to Dante's Bates numbered ZH165–169, Plaintiff is informed and believes that Defendants have responsive documents within their possession, custody or control. Discovery is ongoing and Plaintiff reserves the right to amend and/or supplement this response.


Dated: April 11, 2022                    */s/ Jesenia A. Martinez*
                                         Jesenia A. Martinez
                                         Cal. Bar No. 316969
                                         (*Pro Hac Vice*)
                                         **CARPENTER & ZUCKERMAN**
                                         8827 W. Olympic Boulevard
                                         Beverly Hills, CA 90211
                                         Phone: (310) 273-1230
                                         *jmartinez@cz.law*

                                         S. Amanda Marshall
                                         OSB No. 953473
                                         **S. AMANDA MARSHALL, LLC**
                                         1318 NW Northrup Street
                                         Portland, Oregon 97209
                                         Phone: (503) 472-7190
                                         *amanda@maclaw.law*

                                         ***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Monday, April 11, 2022 a true and correct copy of the attached **PLAINTIFF ZOE HOLLIS' SUPPLEMENTAL RESPONSES TO DEFENDANTS' REQUESTS FOR PRODUCTION, SET ONE** was served via email upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:

Anthony Kuchulis
Joseph Q. Ridgeway
**LITTLE MENDELSON P.C.**
1300 SW 5th Avenue, Suite 2050
Portland, Oregon 97201
Email: akuchulis@littler.com
Email: jridgeway@littler.com
Email: sarney@littler.com


*Counsel for Defendants*


_____
*/s/ Jesenia A. Martinez*
Jesenia A. Martinez


**EXHIBIT G**
**Page 13 of 13**

## Dancers sue Oregon strip clubs, alleging federal wage violations similar to gig workers

oregonlive.com/portland/2021/09/dancers-sue-oregon-strip-clubs-alleging-federal-wage-violations-similar-to-gig-workers.html

By Noelle Crombie | The Oregonian/OregonLive

September 10, 2021



For Cat Hollis, working at a Portland strip club meant first paying the boss.

Hollis would pay $5 for each eight-hour shift.

Before heading home, Hollis would make another round of payments from the night's tips, handing out at least $20 apiece to an assortment of other people employed by the club.

"There were days I walked out with absolutely nothing after I paid my fees," Hollis said.

Now Hollis and three other dancers are suing six clubs in Oregon, a place known for its surfeit of adult entertainment thanks to the state Constitution's strong free speech protections.

The dancers' lawsuits allege the establishments violated mandatory minimum wage provisions of the federal Fair Labor Standards Act.

Filed in U.S. District Court in Portland and Eugene, the claims accuse the clubs of "absconding" with the dancers' tips and demanding "illegal kickbacks" in the form of house fees that dancers said they pay to work.

They allege they are treated as independent workers through their compensation arrangements even though the clubs require them to act as employees by setting their work hours and working conditions down to the music.

The question of whether a worker is an employee or an independent contractor is "one of the hottest issues in all of American employment law," said Keith Cunningham-Parmeter, a professor at Willamette University College of Law and an expert in labor law.

The stakes are high for companies like strip clubs. Employees are expensive, Cunningham-Parmeter said. They must be paid minimum wage and overtime. They earn unemployment insurance benefits. They are entitled to a "whole basket" of employment rights, he said.

And yet one study found up to 30 percent of employers misclassify their workers as independent contractors when they are in fact employees, he said.

He said gig workers like those at Lyft and Grub Hub represent the latest examples of the ongoing debate.

"I know thousands of exotic dancers have argued that they are in fact employees and that they mostly seem to have very good cases," he said. "The central question is how much freedom does the worker have versus how much control does the employer have over the worker."

### 'SHINE A LIGHT ON THIS INDUSTRY'

Amanda Marshall, one of the lawyers representing the dancers, said the claims seek to shine a light on the industry.

"It's not an attempt to shut the industry down," she said. "This is an attempt to make sure the industry is fair and equitable."

Dancers don't "fit the traditional definition of an independent contractor," said Marshall, who practices in Portland and McMinnville.

"The only requirement for work is their ability to take off their clothes and to fit certain aesthetic principles," she said.

Hollis' suit names Sassy's on Southeast Morrison Street. The other dancers are suing Sugar Shack in Salem, Club Sinrock on Northeast Glisan Street, Cabaret II on Southeast Stark Street and two Lane County clubs, Sweet Illusions and Silver Dollar.

In court filings, Anthony Kuchulis, a lawyer for Sassy's, its owner and managers denied Hollis' claims and characterized their performances at the club as "occasional and infrequent."

**EXHIBIT H**
**Page 1 of 2**

Kuchulis, who represents Silver Dollar as well, said the claims seek to strip dancers of "the right to contract." Every other type of stage performer has that right, he said.

"We are working hard to resolve these claims and want what's best for the workers and local small businesses," he said in an emailed statement.

Likewise, lawyers for Cabaret II alleged dancers at the club are independent contractors. An email to the lawyer for Sinrock was not returned. Sugar Shack and Sweet Illusions have not filed a legal response to the claims and their owners could not be reached for comment.

**DANCER ALLEGES RETALIATION**

Nationally, dancers have pushed back on being treated as independent contractors, said John Kristensen, a Los Angeles-based lawyer who is also representing the performers.

In recent years, he said, dozens of federal court judges, from Alaska to Georgia, have ruled in dancers' favor on wage claims like the ones filed in Oregon.

Kristensen pointed to a 2019 ruling out of Georgia, where a federal judge called the idea that strippers rent floor space at clubs "absurd" and a "silly attempt to redefine reality."

He said unwritten rules for handing out a portion of dancers' tips to other workers are common and that such demands end up subsidizing those workers' pay.

"There are some clubs I have seen where the other employees aren't even on payroll," he said. "They make their entire income on tips from the dancers."

Hollis' claim includes allegations of retaliation. Kristensen said the owner of Sassy's told Hollis in writing that the dancer was effectively blacklisted from working at his clubs for pursuing a lawsuit.

"It's really egregious," he said. "You can't retaliate in the United States of America against someone who is standing up for their wages."

In response, Kuchulis called Hollis' claim of retaliation "especially troubling" because Hollis sought to work as a contract performer at Dante's while suing Sassy's over allegedly being treated as a contract worker. Both are owned by Frank Faillace.

**FROM DANCING TO ACTIVISM**

Hollis said they quit Sassy's in 2019 after a dispute with a manager over an encounter Hollis had with a customer.

Hollis works from home these days, mostly for an online sex business. Hollis uses they and them pronouns.

Now 32, Hollis started dancing when they were in their mid-20s in Minnesota. They were drawn by the money-making potential and ended up moving to Oregon for its strip clubs as much as its legal cannabis.

During the pandemic, Hollis started a workers' rights advocacy group called Haymarket Pole Collective.

Stripping is a high turnover business that's tough on the body, as well as the ego, Hollis said.

Hollis hopes their lawsuit empowers other dancers to speak up in an industry that can be exploitative and even abuse, they said.

"My goal," Hollis said, "is to be the last generation of people who have to deal with this."

-- Noelle Crombie; ncrombie@oregonian.com; 503-276-7184; @noellecrombie

## Minnieweather, Victoria

| | |
|---|---|
| **From:** | Farley, Noreen |
| **Sent:** | Friday, June 17, 2022 9:37 AM |
| **To:** | S. Amanda Marshall |
| **Cc:** | Jesenia Martinez; John Kristensen; Kuchulis, Anthony; Dueno, Sara; Ridgeway, Joseph Q.; Herbst, Kaitlin; Minnieweather, Victoria |
| **Subject:** | Hollis v Sassy's, 3:21-cv-965-YY - Intention to Amend Answer and Counterclaim - Meet and Confer Request |
| **Attachments:** | Hollis v Sassy's - Redline Amended Answer and Counterclaims.docx |

Good morning Amanda,

I am working with Anthony and Joe on this matter. We plan to file a motion for leave to amend Defendants' Answer and assert three counterclaims against Plaintiff Hollis for breach of contract, unjust enrichment, and defamation. If you will stipulate to the changes, we won't have to prepare the motion. I've attached a copy of the proposed First Amended Answer and Counterclaims here, redlined against Defendants' current filed Answer so you may see the changes we propose.

Is there a time next week when you are available for a call to meet and confer about either stipulating to the Amended Answer and Counterclaims, or to discuss our Motion for Leave to Amend?

Thanks,

Noreen

**Noreen Farley**
Attorney at Law
971.201.9690 mobile
NFarley@littler.com

Pronouns: She/Her



Labor & Employment Law Solutions | Local Everywhere
1300 SW 5th Ave, Wells Fargo Tower - Suite 2050, Portland, OR 97201

**EXHIBIT I**
**Page 1 of 2**

## Minnieweather, Victoria

| | |
|---|---|
| **From:** | Farley, Noreen |
| **Sent:** | Tuesday, July 26, 2022 11:06 AM |
| **To:** | adorsett@cz.law; adavis@cz.law; avulic@cz.law; jmartinez@cz.law; John Kristensen |
| **Cc:** | Kuchulis, Anthony; Ridgeway, Joseph Q.; Casey, Cristin; Minnieweather, Victoria; Dueno, Sara |
| **Subject:** | Hollis v Sassy's, 3:21-cv-965-YY - Intention to Amend Answer and Counterclaim - Meet and Confer Request |
| **Attachments:** | Draft Amended Answer and Counterclaims, Hollis v Sassy's.pdf |

Hello counsel,

As communicated to you back in June, we plan to file a motion for leave to amend Defendants' Answer and assert three counterclaims against Plaintiff Hollis for breach of contract, unjust enrichment, and defamation. The Draft Amended Answer and Counterclaims is attached for your review. If you will stipulate to the changes, we won't have to prepare the motion.

Is there a time this week when you are available for a call to meet and confer about either stipulating to the Amended Answer and Counterclaims, or to discuss our Motion for Leave to Amend?

Thank you,

Noreen

**Noreen Farley**
Attorney at Law
971.201.9690 mobile
NFarley@littler.com

Pronouns: She/Her



Labor & Employment Law Solutions | Local Everywhere
1300 SW 5th Ave, Wells Fargo Tower - Suite 2050, Portland, OR 97201

**EXHIBIT I**
**Page 2 of 2**