UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ZOE HOLLIS, individually and on behalf of
all others similarly situated,

                Plaintiff,

      v.

R & R RESTAURANTS, INC dba SASSY'S,
an Oregon corporation; STACY MAYHOOD,
an individual; IAN HANNIGAN, an individual;
FRANK FAILLACE, an individual; and DOES 2
through 10, inclusive,

                Defendants.

Case No. 3:21-cv-00965-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge.

**FINDINGS**

Plaintiff has brought suit against R & R Restaurants, Inc., the business entity that

operates Sassy's, an adult entertainment club in Portland, Oregon, and individuals involved in

managing Sassy's, including Stacy Mayhood, Ian Hannigan, and Frank Faillace. Plaintiff alleges

defendants misclassified performers who worked at the club as "independent contractors,"

instead of employees, to avoid paying minimum wage. First Am. Compl. ¶ 1, ECF 16. Plaintiff

asserts a number of wage-related claims under the Fair Labor Standards Act ("FLSA") against all

defendants. *Id*. ¶¶ 99–131. Plaintiff also asserts retaliation claims under the FLSA and Oregon

state law against defendant Faillace in connection with work that plaintiff did at a different adult

entertainment venue in Portland that Faillace partly owns and operates. *Id.* ¶¶ 132–50.

Defendants have filed a motion for summary judgment, ECF 42, and a renewed motion

for summary judgment, ECF 98. As explained below, plaintiff's FLSA wage-related claims are

untimely because this suit was not commenced within the two-year statute of limitations for

FLSA claims and plaintiff has not produced evidence that defendants' alleged FLSA violations

were "willful," which would expand the limitations period to three years. Plaintiff's FLSA

retaliation claim against individual defendant Faillace was timely brought, but fails as a matter of

law because the undisputed evidence shows that plaintiff was not an "employee" at the time of

the alleged retaliation. The failure of plaintiff's federal claims leaves plaintiff's retaliation claims

under Oregon law. Neither party has offered fully developed arguments about the propriety of

these claims. Thus, there is no reason to exercise supplemental jurisdiction over plaintiff's

remaining state law claims and those claims should be dismissed without prejudice.

## I.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." The party moving for summary judgment bears the

initial responsibility of informing the court of the basis for the motion and identifying portions of

the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate

the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party does so, the nonmoving party must "go beyond the pleadings" and

"designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (citing Fed.

R. Civ. P. 56(e)). The court "does not weigh the evidence or determine the truth of the matter,

but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## II.    Procedural Background—Plaintiff's Failure to Complete Discovery

When defendants initially filed their motion for summary judgment in June of 2022, plaintiff's primary argument was that the motion should be denied as premature or, at the very least, a decision on the motion should be deferred so that plaintiff could continue to conduct discovery. Opp. Mot. Summ. J. 1, ECF 45 ("Defendants stonewall plaintiff's ability to depose them and [sic] evidence, yet argue plaintiff cannot meet their[1] burden of demonstrating the existence of disputed material facts. Plaintiff and their counsel have diligently pursued discovery in this matter, and plaintiff's inability to proffer evidence to support their opposition to defendants' motion is not because it does not exist, it is because defendants refuse to sit for examination under oath.").[2] Specifically, plaintiff stated that depositions of defendants and other witnesses were necessary to, among other things, "demonstrate that defendants' conduct in misclassifying [plaintiff]" and other entertainers who worked at the club "was willful and not in good faith." *Id.* at 8.

The undersigned judge agreed that plaintiff should be given the opportunity to conduct depositions. As observed in the order holding defendants' motion for summary judgment in abeyance, the court had "previously stayed the deadline to complete fact discovery while

---

[1] Plaintiff uses they/them pronouns. Opp. Mot. Summ. J 1 n.1, ECF 103.
[2] To improve readability, the capitalization of party names, the "Court," and "Motion" in quoted portions of the parties' briefing has been eliminated. Other changes to quoted portions of the parties' briefing are indicated by brackets and ellipses as appropriate.

resolving plaintiff[']s motion for conditional certification of the FLSA collective action." Order (Nov. 21, 2022), ECF 81 (internal citations omitted). "The stay was lifted after the motion for conditional certification was granted in part on May 2, 2022." *Id.* Just one month after the stay was lifted, defendants filed their motion for summary judgment. *Id.* The order holding the motion for summary judgment in abeyance was driven by the fact that discovery had been stayed while the court resolved the motion for conditional certification, and also by the attorneys' failure to communicate clearly with each other during conferrals regarding discovery issues and in the run-up to defendants' motion for summary judgment. *Compare* Opp. Mot. Summ. J. 6–8, ECF 45 *with* Reply 24–28, ECF 51. It appeared that the break-down in communication contributed to plaintiff's inability or failure to depose several individuals, and plaintiff's counsel represented that they could not effectively respond to defendants' motion for summary judgment without the opportunity to conduct those depositions. Opp. Mot. Summ. J. 1, ECF 45. Under all of these circumstances, some flexibility in finishing the depositions was warranted.[3]

Defendants objected to the November 21, 2022 order holding the motion for summary judgment in abeyance, but Judge Simon overruled those objections and ordered that plaintiff's requested depositions "shall take place by March 6, 2023." Order (Jan. 3, 2023), ECF 89. Judge Simon also set a March 20, 2023 deadline for plaintiff to submit a supplemental brief regarding defendants' motion for summary judgment. *Id.*

Inexplicably, however, the depositions did not occur by March 6, 2023. Nor did plaintiff submit any supplemental briefing on the motion for summary judgment by March 20, 2023, or

---

[3] In the time since granting the motion for conditional certification, two plaintiffs filed consents to join the suit. *See* ECF 50, 53. The court subsequently granted defendants' motion to dismiss those plaintiffs for lack of standing because they failed to adequately allege that they ever worked at defendants' clubs. Order (Mar. 27, 2023), ECF 99.

file any motion for extension of time of those deadlines. Instead, after both deadlines passed, defendants filed a Renewed Motion for Summary Judgment on March 24, 2023. ECF 98. In it, defendants argued that plaintiff had missed both deadlines, that "[n]early two years has lapsed since Plaintiff commenced this action, and nearly one year since Defendants filed their motion for summary judgment," and that plaintiff "has had a full and fair opportunity to develop their case and to take depositions." Renewed Mot. Summ. J. 4, ECF 98. Defendants thus requested a decision on the merits of their motion for summary judgment. *Id.*

The court promptly set a status conference to discuss plaintiff's failure to meet the court-ordered deadlines for conducting the depositions and for filing a supplemental brief in opposition to defendants' motion for summary judgment. *See* ECF 100. As part of the scheduling order, the court ordered that plaintiff's local counsel was required to appear. *Id.* At the April 13, 2013 status conference, local counsel did not appear despite being ordered to do so.[4] And plaintiff's *pro hac vice* counsel, who was new to the case, failed to provide any compelling explanation for the failure to meet the court's deadlines. Later that same day, plaintiff filed an Opposition to Defendants' Renewed Motion for Summary Judgment in which plaintiff again asked the court to defer any ruling on defendants' motion so that plaintiff can "make every effort possible to take the depositions of Defendants and essential individuals." Opp. Renewed Mot. Summ. J. 6, ECF 103.

But the time to "make every effort possible" to take the requested depositions has passed and no further deferral is warranted. Plaintiff's counsel had ample opportunity to conduct the depositions and failed to do so; even with the benefit of a court-ordered deadline by which the depositions were to be completed, plaintiff's counsel apparently did not make any serious effort

---

[4] Plaintiff's local counsel later explained it was due to a calendaring error.

to obtain the testimony that they have repeatedly represented is so critical to their case. Further delaying the case would be prejudicial to defendants, who have been waiting now more than a year for their motion to be decided. At some point, the case simply must move on, notwithstanding plaintiff's counsel's failure to diligently conduct discovery. *See Moersch v. Zahedi*, 228 F. Supp. 3d 1079, 1084 (C.D. Cal. 2017) (denying request for additional time to conduct discovery to respond to motion for summary judgment where the party did "not provide a single specific reason as to why [it] has not had time to procure any evidence despite his having ample time to do so—this case base been pending for almost a year"); *Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1116 (W.D. Wash. 2004), *aff'd,* 152 F. App'x 565 (9th Cir. 2005) (denying request for continuance of motion for summary judgment where party did not show "good cause why [it] has not pursued [the requested] discovery within the discovery period, which was over one year long").

The analysis proceeds, then, on the current record.

## III.    Standing

Defendants first assert that plaintiff lacks standing to bring this suit because plaintiff cannot establish a concrete, personalized injury. Mot. Summ. J. 9, ECF 42. The argument appears to be based on the theory that plaintiff has not produced evidence sufficient for defendants to determine whether plaintiff appropriately filed a personal income tax return or paid taxes on the tips and dance fees they received during the relevant time. *Id.* at 10–13. That is a bridge too far. All that standing requires is for plaintiff to show that "(1) [plaintiff] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed

by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). It is undisputed that plaintiff did in fact perform at defendants' club. *See* Mot. Summ. J. 4–6, ECF 42. It is undisputed that defendants did not pay plaintiff minimum wage for the hours plaintiff performed there. *Id.* at 5. If plaintiff was an "employee" under the FLSA, then defendants are required to pay a minimum wage. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages[.]"). Thus, plaintiff has done enough here to establish constitutional standing.

Defendants cite no case holding that potential tax implications have any relevance to the issue of a plaintiff's standing to bring an FLSA wage claim against a purported employer. *See* Mot. Summ. J. 10–13, ECF 42. Defendants' position would require a plaintiff in an FLSA suit to prove that the plaintiff was current on federal tax obligations in order to sue for failing to pay a minimum wage. Taken to its furthest extremes, defendants' view of standing would potentially exclude a plaintiff with any debt larger than the prayer for damages from suing in federal court. Defendants cite no case to support such a strained reading of standing jurisprudence. Whatever issues plaintiff may have with the Internal Revenue Service or other tax collecting agency— which are, of course, not parties to this suit—as a result of plaintiff's past earnings and tax filings, or that may result from any recovery from defendants in this case, defendants have not adequately shown the relevance of those issues for determining constitutional standing to sue in this context. *See Beltran v. Maxfield's, LLC*, No. 2:13-cv-01043-LA, 2014 WL 7139808, at *2 (E.D. Wis. Dec. 12, 2014) (rejecting argument that FLSA plaintiffs lacked standing because they "would have taken home less . . . had [the defendant] paid minimum wage and withheld the appropriate taxes").

It may be true that tax implications would at some point in this litigation become relevant. The court is fully aware that, in the event plaintiff is deemed to be an employee of defendants, the parties will likely vigorously dispute the extent to which any recovery by plaintiff should be limited to avoid any windfall. *See* Mot. Summ. J. 10, ECF 42 ("Plaintiff's FLSA Wage and Hour Claims attempt to enlist the Court to support their unambiguous fraud against both Sassy's and the government."). But none of the authorities cited by defendants establish that plaintiff lacks the constitutional right to bring an FLSA claim in federal court because defendants are not satisfied with the evidence produced in discovery regarding plaintiff's federal tax reporting or payment history.

## IV.    FLSA Statute of Limitations

Defendants next assert that plaintiff's FLSA wage-related claims are time-barred because plaintiff filed this action on June 28, 2021, "more than two years after last performing at Sassy's on March 3, 2019." Mot. Summ. J. 24, ECF 42. Plaintiff does not dispute the March 3, 2019 cut-off date, but instead relies on the theory that the defendants' FLSA violations were "willful," which would extend the statute of limitations period to three years. Opp. Mot. Summ. J. 1, ECF 45.

Under the FLSA, claims must be commenced within "two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years[.]" 29 U.S.C. § 255(a); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908–09 (9th Cir. 2003), *aff'd,* 546 U.S. 21 (2005) (internal quotation marks and citation omitted). "A violation is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016) (simplified) (citing *Chao v. A–One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003)). "An

employer need not violate the statute knowingly for its violation to be considered willful under §

255(a), although 'merely negligent' conduct will not suffice[.]" *Id.* (simplified) (citing *Alvarez*,

339 F.3d at 908; *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "The three-year

statute of limitations may be applied where an employer disregarded the very possibility that it

was violating the statute, although a court will not presume that conduct was willful in the

absence of evidence." *Id.* (simplified) (citing *Alvarez*, 339 F.3d at 908–09). The plaintiff bears

the burden of establishing willfulness for statute of limitations purposes. *Taylor v. AutoZone,*

*Inc.*, No. 3:10-cv-08125-PCT-FJM, 2011 WL 13120815, at *1 (D. Ariz. Oct. 26, 2011) (citing

*McLaughlin*, 486 U.S. at 135); *Acosta v. Hoa Salon Roosevelt, Inc.*, No. 2:17-cv-00961-JLR,

2019 WL 330197, at *6 (W.D. Wash. Jan. 25, 2019).

Plaintiff first asserts that defendants failed to adequately respond to "written discovery

targeting the steps defendants took to (1) ascertain the dictates of the FLSA and (2) take active

steps to comply with the FLSA[.]" Opp. Mot. Summ. J. 28, ECF 45. Defendants responded to

those discovery requests by stating as follows: "Like most small businesses, [the club] does not

have a dedicated staff member in charge of FLSA compliance. Nonetheless, the FLSA was

complied with and all factors of the economic realities test were met with respect to plaintiff's

work as a performer at this venue." *Id.*; *see also* Martinez Decl., Ex. 3 at 6, ECF 47-3. Plaintiff's

counsel characterizes this response as "word salad," and describes some initial efforts to meet

and confer with opposing counsel regarding the sufficiency of the response. Opp. Mot. Summ. J.

28, ECF 45. On the current record, defendants' response does not provide any evidentiary

support for the proposition that defendants "showed reckless disregard for," or failed to take

"affirmative action to assure compliance with," its FLSA obligations. *Flores*, 824 F.3d at 906.

Plaintiff argues that further clarity on defendants' discovery response is "one of the issues for

which defendants' depositions are necessary." Opp. Mot. Summ. J. 28, ECF 45. However, as explained above, plaintiff failed to conduct the requested depositions before the deadline to do so expired.

Plaintiff next asserts that defendants' willfulness can be shown by their lack of a good faith belief that plaintiff was an independent contractor and not an employee. *Id.* The issue of "good faith" under the FLSA arises in the context of determining what damages to award for an employer's violation of the statute: "An employer who violates the FLSA 'shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.' " *Flores*, 824 F.3d at 904–05 (quoting 29 U.S.C. § 216(b)). "However, if the employer shows that it acted in 'good faith' and that it had 'reasonable grounds' to believe that its actions did not violate the Act, 'the court may, in its sound discretion, award no liquidated damages[.]' " *Id.* (quoting 29 U.S.C. § 260). The employer bears the burden to establish good faith by showing it "had an honest intention to ascertain and follow the dictates of the Act and that it had reasonable grounds for believing that its conduct complied with the Act." *Id.* at 905 (simplified).

It is true that the issues of "good faith" and "willfulness" are necessarily intertwined. *See Chao*, 346 F.3d at 920 ("Of course, a finding of good faith is plainly inconsistent with a finding of willfulness.") (citing *Bothell v. Phase Metrics, Inc.,* 299 F.3d 1120, 1130 (9th Cir. 2002) (noting the contrapositive, that a finding of good faith precludes a finding of willfulness)). But that does not mean the two concepts are interchangeable. *See Alvarez*, 339 F.3d at 9110 ("Even a finding that the employer did not act willfully does not preclude an award of liquidated damages.") (simplified) (quoting *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 357 (5th Cir. 1990)). For one, the plaintiff bears the burden to establish willfulness, while the employer bears

the burden to establish good cause—thus the "double damages" based on an employer's lack of good faith is "the norm," while the three-year statute of limitations for a willful violation is "not the norm." *Tumulty v. FedEx Ground Package Sys., Inc.*, No. 2:04-cv-01425-MJP, 2005 WL 1979104, at *7 (W.D. Wash. Aug. 16, 2005) (explaining "[t]here is a distinct difference between the double damages determination and the willfulness determination").

Here, plaintiff has failed to produce evidence sufficient to raise a question of fact as to defendants' willfulness. At the hearing on the current motion, plaintiff's counsel argued that willfulness can be shown by (1) defendants' use of an "Independent Contractor Agreement" that designated plaintiff as an independent contractor and not an employee of the club, and (2) the existence of many federal court decisions from around the country that, according to plaintiff, have "summarily rejected" arguments from "exotic dance clubs" that the entertainers who worked in the clubs should be classified as independent contractors instead of employees. *See also* Opp. Mot. Summ. J. 29–30, ECF 45; Mot. Summ. J. 4–5, ECF 42 (citing Answer, Ex. A at 1, ECF 20-1 (Independent Contractor Agreement)).

But plaintiff has not explained or otherwise cited to any authority to support the proposition that defendants' use of a written independent contractor agreement, standing alone, is indicative of their "reckless disregard" for the requirements under the FLSA. Plaintiff cites to some two dozen cases, and states that defendants could not have in good faith believed that they were complying with the FLSA in the face of this "overwhelming federal authority that dancers are employees[.]" Opp. Mot. Summ. J. 29–31, ECF 45. But only one of the cited cases is from a court in the Ninth Circuit, and in that case the question whether the entertainers were independent contractors or employees for FLSA purposes was not at issue. *See Thornton v. Crazy Horse, Inc.*, No. 3:06-cv-00251-TMB, 2012 WL 2175753, at *1 (D. Alaska June 14, 2012)

11 – FINDINGS AND RECOMMENDATIONS

(analyzing FLSA claims on behalf of plaintiffs who were "formerly employed" by defendants). Plaintiff has not cited any case from the Ninth Circuit establishing that entertainers such as plaintiff are properly classified as "employees," and has offered no authority or analysis explaining why defendants should have relied on these out-of-circuit cases to make changes to their business practices. *See Carlino v. CHG Med. Staffing, Inc.*, 460 F. Supp. 3d 959, 971 (E.D. Cal. 2020) (denying plaintiff's motion for summary judgment on the issue of willfulness in part because "there is no Ninth Circuit authority addressing the specific issue of whether per diems that vary with the amount of hours worked in a week are part of an employee's regular rate").

Moreover, there are other cases not cited by plaintiff where the entertainers were properly classified as independent contractors based on their individualized facts. *Hilborn v. Prime Time Club, Inc.*, No. 4:11-cv-00197-BSM, 2012 WL 9187581, at *1 (E.D. Ark. July 12, 2012) (ruling on summary judgment that entertainers were not employees of defendant-club under FLSA); *Nelson v. Texas Sugars, Inc.*, 838 F. App'x 39, 43 (5th Cir. 2020) (affirming jury verdict that entertainers were not employees under FLSA); *State ex rel. Roberts v. Acropolis McLoughlin, Inc.*, 150 Or. App. 180, 192–93 (1997) (affirming ruling that entertainers were not employees of the club under Oregon law after a certain date). Thus, even assuming a majority of cases have found that entertainers were employees under the FLSA, there is some conflict in the case law that supports defendants' position. *See Carlino*, 460 F. Supp. 3d at 971 (ruling that the two-year statute of limitation applied to an FLSA action in part because the defendant "adopted a position that was supported by [a] district court's decision" and thus was not a willful FLSA violation, even though the position was "inconsistent with that taken by other circuits and has since been rejected by other district courts in California who have been called upon to consider it"). This split in authority is understandable given the "fact-intensive" analysis required to determine

whether an individual is properly classified as an independent contractor or employee. *See Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d 1234, 1242 (D. Or. 2014) (explaining that "[c]ourts consider the facts as a whole and rely on six factors to analyze the economic realities of the relationship" in determining whether individual is an employee under the FLSA).

Finally, plaintiff offers no evidence showing that defendants failed to take any affirmative action in light of what the cases cited by plaintiff purportedly required them to do. *See In re City of Redondo Beach FLSA Litig.*, No. 2:17-cv-09097-ODW-SKX, 2019 WL 6310264, at *10 (C.D. Cal. Nov. 25, 2019) (finding plaintiffs failed to establish willfulness because they "cite[d] to absolutely no factual or evidentiary support" showing that the defendant "took no affirmative action in light of" new case law); *cf. Acosta v. Senvoy, LLC*, No. 3:16-cv-2293-PK, 2018 WL 3722210, at *10 (D. Or. July 31, 2018) (finding willful violation where undisputed evidence showed that defendant was aware of new decisions from the Ninth Circuit and the Oregon Employment Department, "but did not seek legal advice on how these rulings might affect Defendants' compliance with the FLSA").

In sum, there are simply no facts in the record to support a finding that defendants' conduct was willful here, and thus the two-year statute of limitations applies. *See Hoa Salon*, 2019 WL 330197 at *7 ("[M]erely negligent conduct will not suffice [to establish willfulness], and a court will not presume that conduct is willful in the absence of evidence[.]") (internal quotation marks omitted) (citing *McLaughlin*, 486 U.S. at 133; *Alvarez*, 339 F.3d at 909) (internal citation omitted); *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016) ("An employer need not violate the statute knowingly for its violation to be considered 'willful' under [the FLSA], although 'merely negligent' conduct will not suffice.") (internal citations omitted). Plaintiff last performed at defendants' club in March of 2019, and plaintiff commenced this

action on June 28, 2021. Plaintiff's FLSA claims, which include plaintiff's first through fifth

claims for relief, are therefore barred as untimely. *See* First Am. Compl. ¶¶ 99–136, ECF 16.

## V.    Retaliation Claims

Defendants also seek summary judgment on plaintiff's retaliation claims under the FLSA,

Oregon state law, and Oregon public policy. Mot. Summ. J. 25, ECF 42. Plaintiff asserts these

retaliation claims solely against individual defendant Faillace, who is a joint owner of Sassy's

(the primary club at which plaintiff performed between 2018 and 2019) and Dante's (another

club in Portland where plaintiff performed twice in the summer of 2021). *See* First Am. Compl.

¶¶ 132–136, ECF 16; Faillace Decl. ¶¶ 2–3, ECF 44; Ridgeway Decl., Ex. D (Hollis Dep.)

75:20–25, ECF 43-4; Hollis Decl. ¶¶ 3, 52, ECF 46. Sometime around June of 2021, plaintiff

was "invited" to perform at Dante's Sinferno Cabaret show, a weekly event that has been

running for over twenty years, and which features a variety of acts including "fire shows,

burlesque performances, contortion, juggling," pole dancing, and more. Faillace Decl. ¶ 3, ECF

44; Hollis Dep. 76:4-14, ECF 43-4; Martinez Decl., Ex. 22 at 2–3, ECF 47-22.

On June 28, 2021, plaintiff filed the initial complaint in this lawsuit, which named only

Sassy's and two of the managers of that club—Mayhood and Hannigan. *See* Compl. ¶¶ 10–14,

ECF 1. On July 19, 2021, Faillace emailed plaintiff to say that plaintiff could no longer perform

at Dante's because of the lawsuit against Sassy's:

> I have been dreading writing this to you, and our attorney has cautioned against it,
> but you and I have had a good working relationship over the last year, and out of
> respect for that I thought it best that I write you directly.
>
> As you may or may not remember, I am one of the partners in Sassy's. A few
> days ago we were served papers there for a class action lawsuit, of which you are
> the primary plaintiff.
>
> That makes things complicated. Especially since it is regarding the claim of being
> an employee versus an independent contractor as stated in the contract with

> Sassy's. Since you would be performing at Dante's as an independent contractor, that puts another business that I'm a partner in at risk for a lawsuit. Therefore, we have been strongly advised to not have you perform at Dante's.

Martinez Decl., Ex. 21 at 1, ECF 47-21 (excerpted). On August 24, 2021, plaintiff filed a First Amended Complaint that added Faillace as a defendant and asserted the FLSA and state law retaliation claims, as well as other FLSA wage claims, against him. First Am. Compl. ¶¶ 132–150, ECF 16.

Because of the close temporal proximity between Faillace's email and plaintiff's filing of the First Amended Complaint, the FLSA retaliation claim is not subject to the same analysis regarding timeliness as plaintiff's FLSA wage-related claims. But even assuming, without deciding, that plaintiff's FLSA retaliation claim against Faillace is independently viable after plaintiff's other FLSA wage-related claims are dismissed as untimely, s*ee* Pl. Supp. Br. 2, ECF 116, defendants are entitled to summary judgment on plaintiff's FLSA retaliation claim because plaintiff was not an employee of Dante's or Faillace's at the time of the alleged retaliation.

The FLSA's anti-retaliation provision provides that it "shall be unlawful for any person . . . to discharge or in any other manner discriminate against *any employee* because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3) (emphasis added); *see also Arias v. Raimondo*, 860 F.3d 1185, 1189 (9th Cir. 2017). Plaintiff seems to argue that, despite the plain language of the statute prohibiting retaliation "against any employee," it is not necessary to analyze whether plaintiff was an employee of Faillace or Dante's in 2021 at the time of the alleged retaliatory conduct. Opp. Mot. Summ. J. 32, ECF 45. Plaintiff relies on *Arias*, in which the Ninth Circuit held that the term "any person" in the FLSA anti-retaliation provision "reach[es] beyond actual employers" to cover individuals like the defendant in that case, who was an attorney working on behalf of the client-employer. *Arias*, 860

F.3d at 1191–92. But in *Arias*, there was no dispute that an employment relationship existed between the plaintiff and the dairy company where plaintiff worked. *Id.* at 1186–87. Thus, the case simply has no relevance here because the key question posed by the pending motion is whether plaintiff was an "employee" at the time of the alleged retaliation.

The undisputed evidence in the record shows that plaintiff was not an employee of Faillace or Dante's at the time of Faillace's email in July of 2021. The Ninth Circuit uses the "economic realities test" to determine employment status under the FLSA. *Perez*, 68 F. Supp. 3d at 1242 (citing *Boucher v. Shaw,* 572 F.3d 1087, 1091 (9th Cir. 2009)) (additional citations omitted). There are six factors to consider:

1) The degree of the alleged employer's right to control the manner in which the work is to be performed;
2) The alleged employee's opportunity for profit or loss depending upon his managerial skill;
3) The alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
4) Whether the service rendered requires a special skill;
5) The degree of permanence of the working relationship; and
6) Whether the service rendered is an integral part of the alleged employer's business.

*Id.* (citing *Donovan v. Sureway Cleaners,* 656 F.2d 1368, 1370 (9th Cir. 1981)). "The presence of any individual factor is not dispositive of whether an employee/employer relationship exists." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). Instead, the determination depends "upon the circumstances of the whole activity." *Id.* (citation omitted); *see also Olson v. United States by & through Dep't of Energy & Bonneville Power Admin.*, No. 3:15-cv-02216-HZ, 2018 WL 2090604, at *6 (D. Or. Apr. 30, 2018).

It is undisputed that Dante's is a "a live performance venue hosting a broad range of shows, including live music, karaoke with a live band, and cabaret shows, which include many unique acts such as fire performances, pole dances, DJs, circus acts, and burlesque." Faillace

Decl. ¶ 2, ECF 44. It is also undisputed that sometime in 2021, plaintiff was invited to perform at Dante's weekly cabaret show based in part on their skills as a pole dancer. Hollis Dep. 86:22–87:7, ECF 43-4. According to Faillace, "Dante's invites only the most skilled and talented performers to perform at Sinfemo Cabaret and allows the performers to perform how they wish, as it is their art on display, after all." Faillace Decl. ¶ 3, ECF 44. Plaintiff's two performances at the cabaret were "one-off events," for which plaintiff spent "a bunch of time . . . planning what the routine would be" because it was "choreographed." Hollis Dep. 78:13–16, 103:4–7. ECF 43-4. Plaintiff thought the work at Dante's was different than the work at Sassy's because of the preparation and choreography that was involved. *Id.* at 102:25–103:7.[5]

The working relationship between plaintiff and Dante's was temporary, and plaintiff's performances were not "integral" to Dante's business. The Sinferno Cabaret is a weekly event that has been running for over twenty years; plaintiff performed there just two times, and the performance was for one song, a small part of an overall show that lasted more than two hours and featured at least nine other performances. *Id.* at 75:23–78:2; *see also* Faillace Decl. ¶ 3, ECF 44; Martinez Decl., Ex. 22 at 3, ECF 47-22. Plaintiff asserts that Dante's had "rules, policies, and requirements" to follow, and that Dante's determined how much to charge customers. Opp. Mot. Summ. J. 33, ECF 45. But it is undisputed that plaintiff had full artistic control over their performances at Dante's. Faillace Decl. ¶ 3, ECF 44. And the fact that the Sinferno Cabaret was a ticketed event whereby Dante's controlled customer access or made money from ticket sales

---

[5] The court affords little weight to plaintiff's assertions in their post-deposition declaration that the "only difference" between their work at Sassy's and Dante's was that their performance "was for a specific time and not recurring throughout the night as in Sassy's." Hollis Decl. ¶ 55, ECF 46; *see Brewer v. Gen. Nutrition Corp.*, No. 4:11-cv-3587-YGR, 2014 WL 5877695, at *12 (N.D. Cal. Nov. 12, 2014) (explaining that declarations "carr[y] less weight than spontaneous statements made [in] depositions, particularly where the deposition testimony is at odds with the declaration").

simply reflects the club's business model as a live performance venue, and does not transform plaintiff's two-time, five-minute performances into an employment relationship with Dante's. *See Boucher*, 572 F.3d at 1091 ("The determination of whether an employer-employee relationship exists does not depend on isolated factors but rather upon the circumstances of the whole activity.") (citation and quotation marks omitted). Thus, while Faillace's email may have been misguided, unwise, or even malicious, it does not run afoul of the FLSA's prohibition on retaliating against "an employee." 29 U.S.C. § 215(a)(3).

Having determined that plaintiff's FLSA wage-related claims are barred as untimely and plaintiff's FLSA retaliation claim against Faillace fails as a matter of law, the last task is to evaluate plaintiff's remaining claims against Faillace for state law retaliation under O.R.S. 659A.230 and common law wrongful termination in violation of public policy. *See* First Am. Compl. ¶¶ 137–50, ECF 16. Faillace asserts that these state law claims are subject to the same analysis as plaintiff's FLSA retaliation claims—in other words, that these claims also fail as a matter of law because there is no employment relationship between plaintiff and Faillace or Dante's. Mot. Summ. J. 25–28, ECF 42. Neither party has fully explored the contours of these state law claims or whether the same FLSA factors are used in determining whether an employment relationship exists in the context of these state law claims. *See id.*; Opp. Mot. Summ. J. 32–34, ECF 45; Reply 31–32. ECF 51. And while defendants' position has some facial appeal, defendants' briefing is short on citations to applicable authority and the court's own research has not revealed a clear answer for exactly how to proceed. *See, e.g.*, *Dinicola v. State*, 280 Or. App. 488, 506 (2016) (examining meaning of "employee" in various Oregon statutes and distinguishing from FLSA definition of "employee" in certain circumstances).

The court, recognizing the potential that its subject matter jurisdiction may be implicated if plaintiff's federal claims fell away, asked the parties to submit additional briefing on the question of "whether the court should exercise supplemental jurisdiction over plaintiff's state law claims if summary judgment is granted in defendant's favor on plaintiff's FLSA claims." Order (Sept. 21, 2023), ECF 115; *see also Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 280 (9th Cir. 1974) ("It has long been held that a judge can dismiss sua sponte for lack of jurisdiction."); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Both sides filed supplemental briefing. In plaintiff's supplemental briefing, plaintiff reasserted the merits of their willfulness argument and argued that the retaliation claim remained viable even if the court found that the FLSA wage-related claims were untimely. Pl. Supp. Br., ECF 116. The defense provided some additional argument for why the state law claims require an employee relationship, and argued, alternatively, that the court should decline to exercise supplemental jurisdiction if the federal claims are dismissed.

Again, as detailed above, all of plaintiff's federal law claims are barred as untimely or otherwise fail as a matter of law, and given there is a lack of clarity on how to evaluate plaintiff's state law claims at this juncture, it is appropriate to decline to exercise supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c)(3); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.' ") (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)); *Fichman v. Media Ctr.*, 512 F.3d 1157, 1162–63 (9th Cir. 2008) ("Having granted judgment on the federal claims,

the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state claims.").

## RECOMMENDATIONS

Defendants' motion for summary judgment, ECF 42, and renewed motion for summary judgment, ECF 98, should be granted in part and denied in part. Summary judgment should be granted as to plaintiff's FLSA wage-related claims because those claims were not filed within the two-year statute of limitations and there is no evidence that defendants acted willfully for purposes of extending the limitations period to three years. Summary judgment should be granted as to plaintiff's FLSA retaliation claim against defendant Faillace because the undisputed evidence shows that plaintiff was not an employee of Faillace or Dante's at the time of the alleged retaliation. Where all of plaintiff's federal claims are dismissed, supplemental jurisdiction should be declined as to plaintiff's remaining state law claims, which should be dismissed without prejudice.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Thursday, November 16, 2023.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

//

//

//

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED November 2, 2023.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge